## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

      Plaintiff,

vs.                                No. CR 10-1534 JB

EDWARD CHRISTY,

      Defendant.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on the United States' Appeal of Order Setting Conditions of Release Pursuant to 18 U.S.C. § 3145 (Doc. 8), filed June 4, 2010 (Doc. 9).  The Court held an evidentiary hearing on June 15, 2010.  The primary issue is whether the Court should detain Defendant Edward Christy pending disposition of the case.  Because Plaintiff United States of America has uncovered some information about Christy that was not available -- at least in its evidentiary robustness -- to Honorable Richard L. Puglisi, Chief United States Magistrate Judge for the District of New Mexico, when he released Christy, and because some of the information that the Court has was not available to the United States Probation Office when it made its release recommendation to Judge Puglisi, the Court will vacate Judge Puglisi's order and order Christy detained pending his trial.

## FACTUAL BACKGROUND

Christy is currently charged with one count of violating 18 U.S.C. § 2423(a) -- Transportation with Intent to Engage in Criminal Sexual Activity -- and three counts of violating 18 U.S.C. §§ 2252(a)(4)(b), 2252(b)(2), and 2256 -- Possession of a Matter Containing Visual Depictions of Minors Engaged in Sexually Explicit Conduct.  See Indictment at 1-3, filed

May 26, 2010 (Doc. 2).  Christy is a fifty-eight year old man with a degree in electrical engineering from the University of New Mexico.  See Transcript of Hearing at 58:6-21 (taken June 15, 2009) ("Tr.")(McMillian, Williams)[1]; Pretrial Services Report at 1 (completed June 3, 2010).  Christy has nine brothers and sisters, and nine step-brothers and step-sisters.  See Tr. at 57:4-5 (Williams).  He has twenty-seven nieces and nephews, and forty-three grand-nieces and grand-nephews.  See id. at 57:6-11 (McMillian, Williams).  Christy's sister, brother-in-law, one niece, one nephew, and three grand-nieces and grand-nephews live in Albuquerque, New Mexico.  See Defendant's Response to United States' Appeal of Order Setting Conditions of Release Pursuant to 18 U.S.C. § 3145 at 5, filed June 11, 2010 (Doc. 18); Tr. at 57:12-15 (McMillian, Williams).  Alice Williams, Christy's sister who lives in Albuquerque, testified that she believes that Christy has been a good uncle to her children and grandchildren.  See Tr. at 59:13-16 (McMillian, Williams).  Christy has lived in Albuquerque continuously since 1981, and on and off since 1961.  See id. at 57:16-20 (McMillian, Williams); Pretrial Services Report at 1.  He was employed as an electrical engineer for EG&G Technical Services in Albuquerque from April 1996 until his arrest in November 2009. See Pretrial Services Report at 1.  Christy had no criminal history before his arrest for the charges arising from the incident now at issue in this case.  See Pretrial Services Report at 2.

In November of 2009, the Bernalillo County Sheriff's Department received a report that a sixteen-year-old juvenile female ("Jane Doe") was missing from Westminster, California, outside of Los Angeles.  See Tr. at 5:11-13 (Proctor).  According to Bernalillo County Sheriff's Special Victims Detective Weyland Proctor, Jane Doe's parents informed the Westminster police that they found some electronic-mail messages on Jane Doe's computer.  See Tr. at 5:13-15 (Proctor).  The

---

[1] The Court's citations to the transcript refer to the court reporter's original, unedited version. The final transcript may contain slightly different page and/or line numbers.

Westminster police were able to forensically link the electronic-mail messages on Jane Doe's computer to Christy, and they obtained Christy's telephone number and his address, located in the South Valley of Albuquerque.  See id. at 5:17-21 (Proctor).

On November 9, 2009, the Westminster police asked the Bernalillo County Sheriff's Department to conduct a welfare check on Christy's Albuquerque residence to see if Jane Doe was there.  See id. at 5:22-25 (Proctor).  Bernalillo County Sheriff's Deputies responded to Christy's residence.  See id. at 5:25-6:1 (Proctor).  They looked through the windows of Christy's residence and observed a young female matching the description of Jane Doe that the Westminster police provided.  See id. at 6:2-4 (Proctor).  She was tied up[2] and the deputies observed flashes in the room, which appeared to them to be the flashes from a camera.  See Tr. at 6:4-6 (Proctor).  Believing that the young woman was in peril, justifying an exigent-circumstances entry, the deputies forced their way into Christy's residence and made contact with the young female and Christy.  See id. at 6:7-9 (Proctor).  The deputies confirmed the young female was the missing Jane Doe.  See id. at 6:10-13 (Rees, Proctor).

Proctor interviewed Christy at the law-enforcement detention facility on November 9, 2009. See id. at 6:19-7:1 (Rees, Proctor).  After being advised of his Miranda[3] rights, Christy told Proctor that he met Jane Doe on a dating website -- agematch.com -- that pairs younger women with older men.  See id. at 7:16-19 (Proctor).  Christy told Proctor that he developed a rapport with Jane Doe, and learned that she was having a difficult time with her family and had attempted suicide in the past.  See Tr. at 7:20-8:1 (Proctor).  He told Proctor that he started web-chats with Jane Doe, and

---

[2] The United States, in its brief, asserts that the deputies witnessed Jane Doe "tied by her wrists and neck, naked and hanging from the ceiling rafters."  Motion ¶4, at 2.

[3] Miranda v. Arizona, 384 U.S. 436 (1966).

that she told Christy that she was going to either kill herself or run away from home and make her way from California to New Mexico to Christy's residence.  See id. at 8:6-11 (Proctor).  Christy told Proctor that he felt compelled to go to California to get Jane Doe.  See id. at 8:14-17 (Rees, Proctor).

Christy admitted to Proctor that he and Jane Doe drove from California to New Mexico, stopping at a hotel in Needles, California, where, Christy further admitted, he had sexual relations with Jane Doe.  See id. at 8:17-20 (Christy).  Christy also admitted that, as soon as he and Jane Doe reached his residence, he had more sexual relations with Jane Doe.  See id. at 8:23-9:4 (Proctor). Sexual relations included Jane Doe's hand making contact with Christy's genitals, oral sexual relations, and vaginal sexual relations.  See id. at 8:25-9:9 (Rees, Proctor).

Proctor asked Christy about his knowledge of Jane Doe's age, and Christy told Proctor that he believed Jane Doe was eighteen-years old because that was the minimum age to participate in the agematch.com website.  See Tr. at 9:10-14 (Rees, Proctor).  Proctor confronted Christy on his knowledge that Jane Doe was sixteen and not eighteen, and although Christy originally denied knowledge that Jane Doe was sixteen, he then admitted that he knew her real age.  See id. at 9:17-22 (Proctor).  Proctor presented Christy with an electronic-mail message Christy sent to Jane Doe, which confirmed that Christy knew Jane Doe was sixteen before he went to California to retrieve her.  See id. at 9:23-10:4 (Proctor).

Federal Bureau of Investigation ("FBI") agents interviewed Jane Doe on November 9, 2009. See id. at 10:9-12 (Rees, Proctor).  She corroborated that she first met Christy on agematch.com, and she informed the agents that she had told Christy she was sixteen, not eighteen, and that she and Christy planned their trip from California to New Mexico so that Christy and Jane Doe could live with one another and have a sexual relationship.  See id. at 10:15-21 (Proctor).  Jane Doe also confirmed that she and Christy had sexual relations at a hotel on the way from California to New

Mexico and also had sexual relations at Christy's residence.  <u>See</u> Tr. at 10:22-11:1 (Rees, Proctor).

Jane Doe also stated that part of the plan she and Christy made was for Christy to remove the battery

from Jane Doe's cellular telephone so that Christy's and Jane Doe's whereabouts could not be

traced.  <u>See</u> <u>id.</u> at 11:2-10 (Rees, Proctor).

Pursuant to search warrants, the Bernalillo County Sheriff's Department conducted a search

of Christy's residence and vehicle.  <u>See</u>  <u>id.</u> at 11:18-19 (Rees, Proctor).  The deputies recovered

Jane Doe's cellular telephone, without a battery, which was located on a dresser in Christy's

residence.  They also recovered a cellular telephone battery, which was located in the cup-holder

of Christy's vehicle.  <u>See</u>  <u>id.</u> at 11:11-17 (Rees, Proctor).  In Christy's residence, the deputies

located sexual toys and used condoms.  <u>See</u> <u>id.</u> at 11:21-12:9 (Rees, Proctor).  A forensic examiner

took samples of DNA from these items, and the outside of the condom tested positive for Jane Doe's

DNA and other DNA samples tested positive for Christy's DNA.  <u>See</u> <u>id.</u> at 12:10-16 (Proctor).  A

forensic examination of Christy's residence located approximately 700 images of child pornography,

at least ten videos portraying child pornography, naked pictures of Jane Doe, and a number of

internet chat transcripts.  <u>See</u> Tr. at 11:23-12:-21 (Rees, Proctor).  The forensic examiner also found

what appeared to be instructions to Jane Doe, which gave her ways to avoid detection -- blocking

a telephone number, cancelling her agematch.com account, and removing the hard drive from her

computer -- and justifications for Christy taking her from her home in California -- threatening

suicide or running away.  <u>See</u> United States' Exhibit 1.

The voluminous chat transcripts the forensic examiner recovered include sexual

conversations between Christy and others, including some identifying themselves as minors.

<u>See</u> United States' Exhibits 2 through 8.  In the chat transcripts, Christy makes statements about his

sexual interest in children.  For example, in a chat transcript from July 2009 to a self-identifying

twelve-year old, Christy discussed sexual matters and that he was "not really far away by airplane." United States' Exhibit 2.  In the same conversation, Christy admitted that he had a "neighborhood girl" that had turned twelve-years old that month as his "playmate," but her grandfather did not know.  Christy stated: "[A]nd I'm better for her than some 15 year old banging her in the backseat of a car."  United States' Exhibit 2.[4]  Also in this chat transcript Christy admitted that he liked younger than twelve, and would go after "9 to 10 year olds."  United States' Exhibit 2.  In another chat transcript from July 23, 2009, Christy stated that, if his chat-partner was his wife and they had a daughter, "when we go to bed, both of you would be my lovers."  United States' Exhibit 3.

In an August 23, 2009 chat transcript, Christy stated:  "I'd always thought when my daughter first fed from her mother that I would masterbate and put some cum on her nipple so I could nourish my girl too. . . . [S]he should taste her daddy's milk from the first day of her life."  United States' Exhibit 6.  In the same chat, Christy stated: "I'd want us all to sleep in one bed with no barriers.  Daddy's cock should be pacifying to his kids.  They should feel safe and secure and loved sucking him, fall to sleep with his cock in their mouth."  United States' Exhibit 6.  In a chat from August 24, 2009, Christy admitted that he is "drawn to open sex in his own family" and stated that, "even though he is more drawn to girls, his sons would know him sexually too."  United States' Exhibit 7.  In the same chat transcript, he spoke about a family reunion, noting: "It wasn't easy.  I had a bunch of 10 year old grand nieces hanging on me too. :) . . . Somehow I got picked as the favorite uncle.  lol.  But I enjoy it for a number of reasons. :p ."  United States' Exhibit 7.  In a chat dated August 26, 2009, Christy admitted to having sexual relations with a twelve-year old boy within the

---

[4] The United States represents to the Court that it has tried to have a safe-house interview with the child to whom it believes Christy refers, but the family will not make the child available.  See Motion at 4 n.2.

last few months and with a fourteen-year old girl "a few years ago."  United States' Exhibit 8.  The United States represents that it has interviewed the boy, believed to be the one of whom Christy spoke, but the boy did not disclose.  See Motion at 4 n.3.  The boy described, however, how he would go on overnight scuba-diving trips with Christy, how Christy provided him movies to watch and gave him gifts, and how Christy provided him with wireless internet access.  See Tr. at 26:2-7 (Proctor); Motion at 4 n.3.  Proctor testified that behavior, like that which the boy described, is consistent with grooming behavior.  See Tr. at 26:8-10 (Rees, Proctor).[5]  Also in the chat dated August 26, 2009, Christy stated: "There is a 12 year old girl down the street who has a bit of a crush on me. [S]o I'm letting that just move at its own pace."  United States' Exhibit 8.

In the course of their investigation, Bernalillo County Sheriff's deputies arranged a safe-house interview of a nine-year old girl who formally was a neighbor of Christy's and with whom Christy had contact.  This child described that, a few years ago, Christy touched her vaginal area through her clothing when she was at Christy's residence sitting in front of his computer.  See Tr. at 28:6-25 (Rees, Proctor).  The child's fourteen-year old sister and fourteen-year old cousin were also safe-house interviewed, and, according to Proctor, described conduct by Christy that was consistent with grooming behavior.  See id. at 29:4-29 (Rees, Proctor).  Specifically, Christy would regularly invite them over to swim in his hot tub, and take them on outings to the Hinkle Family Fun Center or to the McDonalds playground.  They stated that Christy would kiss them on the lips, that he would pick them up in such a way that he would place his hands on their breasts, and that he would allow their legs to straddle him while he touched their buttocks.  See Tr. at 29:14-21

---

[5] "Grooming," is behavior aimed at gaining a child's trust and desensitizing the child to sexual acts.  Proctor testified that such behavior includes giving a child gifts and being emotionally available to a vulnerable child, such as a child in a single-parent home.  See Tr. at 4:5-16 (Rees, Proctor).

(Proctor).

The State of New Mexico filed criminal charges based upon the facts related to the juvenile from California.  Christy's sister was not aware that her brother drove across state lines to pick up Jane Doe without her parent's permission and had sexual relations with Jane Doe until she saw a report in the newspaper.  See Tr. at 61:15-62:1 (Rees, Williams).

## PROCEDURAL BACKGROUND

A federal grand jury indicted Christy with one count of Transportation With Intent to Engage in Criminal Sexual Activity, in violation of 18 U.S.C. § 2423(a), and three counts of Possession Of A Matter Containing Visual Depictions of Minors Engaged in Sexually Explicit Conduct, in violation of 18 U.S.C. §§ 2252(a)(4)(b), 2252(b)(2), and 2256.  Before the federal charges were filed, the State of New Mexico filed criminal charges based upon the facts related to Christy's actions with Jane Doe and a state-court judge ordered Christy into custody pending resolution of the state charges.  See Motion at 5.  The State of New Mexico recently dismissed its criminal charges after the federal charges in the incident were filed.  See Motion at 5-6.  On June 1, 2010, FBI Agent Mary Atkins and Proctor transferred Christy from state custody to federal custody.  See Tr. at 30:3-7 (Rees, Proctor).  During the transport, Christy made unelicited statements that he did not feel he is a danger to the community and shared his opinion that he does not believe it is fair for the justice system to punish a former combat engineer and veteran.  See Tr. at 30:8-23 (Rees, Proctor).

Judge Puglisi held a detention hearing on June 3, 2010.  See Clerk's Minutes of Detention/Arraignment, filed June 3, 2010.  In its Pretrial Services Report and at the hearing, Pretrial Services recommended Christy's release to La Posada Halfway House.  Pretrial Services did not have any information regarding the underlying facts of this case.  The United States objected to Pretrial Services' recommendation and argued that, given the underlying facts of the case, Christy

should be detained based upon his risk of danger to the community and his risk of flight.  The United States did not present any witnesses, and the entire hearing lasted three minutes.  Christy argued at the detention hearing that he has no criminal history, and has never been charged with or convicted of any violent offense, which would negate any suggestion of danger to the community.  Judge Puglisi found that Christy presents a risk of non-appearance because of his lack of ties to the community.  He also found that Christy is a danger to the community based upon the allegations against Christy.  Pursuant to 18 U.S.C. § 3145, Judge Puglisi entered an order setting conditions of release.  The United States appeals Judge Puglisi's order setting conditions of release.  See Doc. 8.

At the hearing, Assistant United States Attorney Charlyn Rees argued that Judge Puglisi did not have the benefit at the June 3, 2010 hearing of knowing the details of the specific statements Christy made in the chat transcripts recovered from his residence.  See Tr. at 70:3-14 (Rees).  Ms. Rees also explained that, because the case began as a state investigation and information was obtained through state-secured search warrants, at the federal level, Pretrial Services did not have documents from which they could ascertain the facts of the case when they made their recommendation to Judge Puglisi.  See Tr. at 71:25-72:11 (Court, Rees).  She also explained that the information about the cellular telephone battery, the internet chats, and the child pornography would not have been included in the search-warrant affidavits, because that information was learned when the search was executed.  See Tr. at 72:12-24 (Rees).  Ms. Rees argued that the information presented to the Court shows that Christy has gone beyond fantasies in internet chats; he is willing to act on his sexual interest in children and acted on a fantasy when he picked took Jane Doe from California to New Mexico.  See Tr. at 75:8-11 (Rees).  Lee McMillian, Christy's attorney, argued that Christy is on "24-hour lockdown" at La Posada and electronic-monitoring, and the Court could order tighter restrictions on his conditions at the halfway house instead of ordering him into the

custody of the Marshals.  <u>See</u> Tr. at 82:2-24 (McMillian).

## LAW REGARDING PRE-TRIAL DETENTION

Section 3145(a) of Title 18 of the United States Code provides that, if a United States magistrate judge orders a defendant to be released from detention, the attorney for the United States may file a motion for revocation of the order or amendment of the conditions of release with the court having original jurisdiction.  <u>See</u> 18 U.S.C. § 3145(a)(1).  The court having original jurisdiction is the district judge assigned to the case.  <u>See</u> <u>United States v. Cisneros</u>, 328 F.3d 610, 615-16 (10th Cir. 2003)("The motion should be considered and ruled upon in the first instance by a district judge in the court of original jurisdiction.").  In <u>United States v. Cisneros</u>, the United States Court of Appeals for the Tenth Circuit noted that "§ 3145 does not require that new information be available before a release or detention order can be reconsidered and revoked."  328 F.3d at 614.

Under the Bail Reform Act, a defendant may be detained pending trial only if a judicial officer finds "that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community."  18 U.S.C. § 3142(e).  The district court may make such a finding only after holding a hearing according to the procedures specified in § 3142(f), and the United States bears the burden of proof at that hearing. The United States must prove risk of flight by a preponderance of the evidence, and it must prove dangerousness to any other person or to the community by clear-and-convincing evidence. <u>See</u> <u>United States v. Cisneros</u>, 328 F.3d at 616; 18 U.S.C. § 3142(f).  The Tenth Circuit also set forth factors to consider when deciding whether an individual should be released or detained:

> [I]n determining whether there are conditions of release that will reasonably assure the appearance of the person as required and the safety of any other person and the community, the judicial officer must consider:

> (1) The nature and circumstances of the offense charged, including whether

-10-

the offense is a crime of violence or involves a narcotic drug;

(2) the weight of the evidence against the person;

(3) the history and characteristics of the person, including--

> (A) the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and

> (B) whether, at the time of the current offense or arrest, the person was on probation, on parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State, or local law; and

(4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release.

United States v. Cisneros, 328 F.3d 610, 617 (10th Cir. 2003)(citing 18 U.S.C. § 3142(g)). "If, after the hearing and consideration of the above factors, a judicial officer orders that a defendant be detained, the order must 'include written findings of fact and a written statement of the reasons for the detention.'" United States v. Cisneros, 328 F.3d at 617 (quoting 18 § 3142(i)(1)). "The standard of review for the district court's review of a magistrate judge's detention or release order under § 3145(a) is de novo." United States v. Cisneros, 328 F.3d at 616 n.1.

## ANALYSIS

The United States appeals Judge Puglisi's order releasing Christy to the La Posada Halfway House under electronic monitoring, arguing that Christy is a flight risk and a danger to the community, especially to children. The United States contends that the condition imposed on Christy do not guarantee that he will not entice or sexually abuse other children, and does not ensure his future appearances. See Motion at 8. Section 3142(e)(3)(E) of Title 18 establishes a rebuttable presumption "that no condition or combination of conditions will reasonably assure the appearance

of the person as required and the safety of the community if . . . there is probable cause to believe

that the person committed" any of several offenses, including "an offense involving a minor victim

under section . . . § 2423" of Title 18.  18 U.S.C. § 3142(e)(3)(E).  Christy falls within the scope of

this presumption.  Beyond the presumption, however, there are specific factors indicating that the

Court cannot fashion appropriate conditions of release.  Considering the factors, the Court finds that

"no condition or combination of conditions will reasonably assure the appearance of [Christy] as

required and the safety of any other person and the community."  18 U.S.C. § 3142(e)(1).

## I.   CHRISTY IS A DANGER TO THIS COMMUNITY, AND THERE IS NO CONDITION OR COMBINATION OF CONDITIONS THAT WILL PROTECT THE COMMUNITY, ESPECIALLY CHILDREN.

While there is a presumption of detention in a case involving the 18 U.S.C. § 2423 charge,

the burden remains on the United States to show that Christy is a danger to the community or a flight

risk.  See United States v. Villapudua-Quintero, 308 Fed. Appx. 273 ("Once [a] presumption is

invoked, the burden of production shifts to the defendant," but "the burden of persuasion regarding

risk-of-flight and danger to the community always remains with the government.").  In determining

whether there are conditions of release that will reasonably assure Christy's appearance and the

safety of the community, the Court weighs four factors: (i) the nature and circumstances of the

offense, including whether the offense involves a minor victim; (ii) the weight of the evidence

against Christy; (iii) Christy's history and characteristics, including his character, family ties,

employment, financial resources, length of residence, and criminal history; and (iv) the nature and

seriousness of the danger to any person or the community that Christy's release from detention

would pose.  See 18 U.S.C. § 3142(g).

Both the first and second factor weigh heavily in favor of detention.  The nature and

circumstances of Christy's offenses are serious.  Moreover, the evidence against him is strong.  One

of the crimes charged involves a minor victim, which is something of which the detention statute instructs the Court to take notice. Furthermore, the circumstances of the offense with Jane Doe are particularly troubling to the Court. The evidence against Christy, if admissible, strongly supports a finding of guilt. Both Christy and Jane Doe admit that Christy drove her from her home in California to his home in New Mexico, that they engaged in sexual intercourse both during the journey and when they reached Christy's home, and that Christy knew that Jane Doe was sixteen years old. The evidence presented to the Court demonstrates that Christy planned his sexual interaction with Jane Doe, and instructed her how to cover their actions and Christy's knowledge of her age. See United States' Exhibit 1. The Bernalillo County Sheriff's deputies found Jane Doe tied up and Christy photographing her.    The search pursuant to a search warrant executed on Christy's home also produced over 700 images of child pornography.

The fourth factor also weighs in favor of detention. The Court believes that the United States has shown by clear-and-convincing evidence that Christy is a danger to the community, especially to other vulnerable children like Jane Doe. The Court believes that Christy's actions with Jane Doe, alone, support a finding that Christy is a danger to the community. The evidence presented shows that he went to great lengths to hide the whereabouts of Jane Doe. Specifically, Christy sent her a list of instructions on how to avoid detection and removed her cellular telephone battery so their location could not be traced. Christy's calculated behavior and effort to avoid detection in planning and engaging in illegal activity demonstrates his degree of dangerousness.

Moreover, the evidence the United States presented -- both the evidence of Christy's actions with Jane Doe and his internet chats -- show that Christy is a person who has an ongoing sexual interest in children and is willing to act on such interest. The degree of harm and the length of time over which Christy has engaged in such behavior renders him a danger to the community. By his

admission, Christy has engaged in multiple acts of hands-on victimization of children.  In the internet chat from August 26, 2009, Christy stated that he had sexual relations with a twelve-year old boy within the last few months and contains statements suggesting he was grooming a twelve-year old girl down the street "who has a bit of a crush on [him]."  United States Exhibit 8.  Christy's admissions cause the Court great concern about the degree of harm he is capable of causing to the community.  Christy suggests that much of his chat involves fantasy.  That characterization may be fair for some statements, but he has not denied that he has had sex with multiple under-aged children.  In the face of these unretracted and uncontested admissions, the Court concludes that the record shows, by clear-and-convincing evidence, that Christy poses a threat of continuing to groom and molest children.

To some degree, the third factor weighs against detention.  Christy has no criminal history and has some family ties to the community.  Since his arrest, however, he has lost his employment. He has no wife or children and his sister, who testified on his behalf, had no knowledge of Christy's actions until she read about them in a newspaper.  While the Court recognizes that Christy has no criminal history, the seized evidence indicates that Christy has a history of enticing children, and has no criminal history only because he has avoided being caught.  Christy is an intelligent man, with a degree in engineering, and his actions indicate that he is a calculating and manipulative man. He carefully planned his actions with Jane Doe, instructed her on how not to be detected, and concocted a cover story of a suicide attempt for her to use.

Christy's statements in Proctor's presence during his transport from state to federal custody also cause the Court concern that Christy lacks an appreciation that his conduct was unlawful, and lacks remorse for his actions.  That Christy does not recognize the severity of his conduct, which involved taking a sixteen-year-old juvenile across state lines, away from the safety and security of

her family, for purposes of sexual activity, is problematic.  The Court believes that his inability to fully recognize his wrongdoing makes him an ongoing danger to the community, especially children. His refusal to recognize the severity of his conduct suggests Christy may be more likely than others to repeat such behavior in the future.  The Court does not believe that Christy's current release conditions sufficiently mitigate his risk of danger to the community.  Christy is an intelligent man and a trained electrical engineer, and the evidence demonstrates that he has strong sexual urges and is willing to act on them.  The Court has a great concern that electronic monitoring at the halfway house does not provide sufficient reasonable protection to the community and that he may be able to outsmart the system before Probation and the Marshals could re-arrest him.  Sometimes the alleged crimes committed are so great it seems that even the possibility of repetition outweighs substantially the possibility conditions can reduce the risk to acceptable levels.  This case is such a situation.  What Christy appears to have done in the past, with the under-age Jane Doe and with other children, is so serious that the Court cannot reasonably risk him doing it again, even if some conditions reduce the risk; they do not eliminate or reduce the risk to acceptable levels.

## II.     CHRISTY IS ALSO A FLIGHT RISK.

The risk that Christy might flee from the La Posada Halfway House also concerns the Court. The Court does not believe that Christy's current release conditions mitigate his risk of danger to the community or adequately ensure his appearance.  Christy is an intelligent man and a trained electrical engineer, and the evidence demonstrates that he has strong sexual urges and is willing to act on them.  The Court has a great concern that electronic monitoring at the halfway house does not provide sufficient reasonable protection to the community.  Moreover, federal prosecution carries a greater terms of imprisonment than state prosecution for the same conduct.  This enhanced penalty, to which Christy now is exposed, could encourage him to flee.  While electronic monitoring

mitigates the flight risk some, realistically, Christy could be long gone before Pretrial Services or the United States Marshals realize he has fled.  While Christy has some family ties in Albuquerque, the Court has doubts about how deep they run, especially given the nature of the charges Christy faces.

In sum, the Court believes that there is no condition or combination of conditions of release that will reasonably assure the appearance of Christy and assure the protection of the community, especially children.  In addition to the weight of the § 3142(g) factors weighing heavily in favor of detention, the Tenth Circuit has advised that, even when the presumption in favor of detention is rebutted, the presumption "remains a factor for consideration by the district court in determining whether to release or detain."  United States v. Villapudua-Quintero, 308 Fed. Appx. at 273.  The Court cannot take the risk that Christy will repeat his actions with another child, and the Court finds that the evidence supports vacating Judge Puglisi's order and detaining Christy pending his trial.

**IT IS ORDERED** that the United States' Appeal of Order Setting Conditions of Release Pursuant to 18 U.S.C. § 3145 is granted.  The Order Setting Conditions of Release (Doc. 8) is vacated and Christy is ordered into the custody of the United States Marshals pending trial.

_____
UNITED STATES DISTRICT JUDGE

*Counsel:*

Kenneth J. Gonzales
 United States Attorney
Charlyn E. Rees
 Assistant United States Attorney
Albuquerque, New Mexico

*Attorneys for the Plaintiff*

-16-

Robert L. Cole
Law Offices of Robert L. Cole
Albuquerque, New Mexico

-- and--

Lee P. McMillian
Law Offices of Lee McMillian, P.C.
South Houston, Texas

      *Attorneys for the Defendant*