**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF NEW MEXICO**

UNITED STATES OF AMERICA,

      Plaintiff,

vs.                                                                    No. CR 10-1534 JB

EDWARD CHRISTY,

      Defendant.

**MEMORANDUM OPINION AND ORDER**

      **THIS MATTER** comes before the Court on the United States's Motion for Court Hearing to Depose Witness Before Her 18th Birthday, filed August 8, 2011 (Doc. 164)("Motion"). The Court held a hearing on September 8, 2011. The primary issue is whether the Court should permit Plaintiff United States of America to depose Jane Doe, the alleged victim, and to record this deposition so as to preserve such testimony before Doe's eighteenth birthday on September 29, 2011[1] pursuant to rule 15(a) of the Federal Rules of Criminal Procedure. The Court will grant the Motion in part and deny it in part. With respect to whether the Court will permit the taking of a deposition of Jane Doe, the Motion is granted. The Court will deny the Motion to the extent that the United States of America seeks to take the deposition before Doe's eighteenth birthday and will instead allow the United States to conduct the videotaped deposition on or about September 30, 2011, shortly after her birthday. Additionally, the Court will allow Christy to engage in some level of discovery before the deposition following an in camera review of the evidence. The scope of the

---

      [1]In its motion, Plaintiff United States of America stated: "The United States of America respectfully moves this Court to schedule a hearing prior to September 19, 2011 to depose Jane Doe and record this deposition . . . ." Motion at 1. At the hearing, the parties clarified that Doe's birthday is on September 29 and that the United States incorrectly stated her birthday in its Motion.

discovery will include: (i) all Doe's treatment records from a period of two months before and two months after the incident involved in this case; (ii) her medication history for the same period of time; and (iii) information on each time Doe has discussed this case with any person in a treatment capacity or in law enforcement. The Court will restrict the discovery material to attorneys' and Christy's expert's eyes only pursuant to Christy's agreement at the hearing.

## FACTUAL BACKGROUND

The United States alleges that Doe has a history of running away. See Motion ¶ 6, at 3. Christy contends that Doe's original stated reason for leaving home with Christy was to avoid being detained, medicated, and subjected to behavior modification techniques. See Edward Christy's Response in Opposition to United States' Motion for Court Hearing to Depose Witness Before Her 18th Birthday, filed August 30, 2011 (Doc. 170)("Response"). On November 8, 2009, Doe's father allegedly made a report regarding a missing juvenile, his daughter Doe, to the Westminster Police Department in Westminster, California. See Transcript of Hearing at 65:16-25 (taken April 21, 2011)(Doc. 129)("Apr. 21, 2011 Tr.")(Rees, Carvo). The report stated that Doe's parents saw her the previous night, on November 7, 2009, and that when they woke up on November 8, 2009, they found a note from her saying that she had run away and that she would contact them later. See Apr. 21, 2011 Tr. at 66:1-7 (Rees, Carvo). The report stated that Doe had previously run away, had previously attempted suicide, and that Doe's father believed that she was going to see, or was running away with, a boyfriend, who lived in Orange County, California. See Apr. 21, 2011 Tr. at 66:9-13 (Carvo). The report also stated that Doe's father had returned to the Westminster Police Department on the afternoon of November 8, 2009, after he spoke with one of Doe's friends and found out that Doe had been in contact with an adult male on the internet. See Apr. 21, 2011 Tr. at 67:8-11 (Carvo). Following an investigation, Bernalillo County Sheriff's Deputies David Littlefield

and Justin McKinney received a dispatch at approximately 6:18 p.m. on November 9, 2009, to investigate Christy's residence and to conduct a welfare check for Doe, because law enforcement believed that she would be at Christy's residence.  See Apr. 21, 2011 Tr. at 12:16-13:16 (Kastrin, Littlefield); Bernalillo County Sheriff's Department Computer Aided Dispatch Report at 1 (dated November 9, 2009)(Government's Exhibit H)("CAD Report").  These officers then entered Christy's residence, found Doe, and arrested Christy.  See Apr. 21, 2011 Tr. at 25:4-32:6 (Kastrin, Littlefield, Court).

## PROCEDURAL BACKGROUND

Doe came to Albuquerque for the grand jury presentment.  A federal grand jury indicted Christy on a superceding indictment with: (i) one count of Transportation with Intent to Engage in Criminal Sexual Activity, in violation of 18 U.S.C. § 2423(a); and (ii) three counts of Possession of a Matter Containing Visual Depictions of Minors Engaged in Sexually Explicit Conduct, in violation of 18 U.S.C. §§ 2252(a)(4)(b), 2252(b)(2), and 2256.  See Indictment, filed May 26, 2010 (Doc. 2).  On February 15, 2011, Christy filed a Motion to Suppress Evidence and Statements.  See (Doc. 41).  On February 28, 2011, the United States filed a Response to Defendant's Motion to Suppress.  See (Doc. 54).  On April 1, 2011, Christy filed Defendant's Amended Brief in Support of Motion to Suppress Evidence and Statements.  See (Doc. 66).  On April 6, 2011, the United States filed a Response to Defendant's Amended Brief in Support.  See (Doc. 80).

The Court held a hearing on these motions on April 21, 2011, and on April 22, 2011.  On May 18, 2011, the Court issued a Memorandum Opinion and Order granting the Defendant's Motion to Suppress Evidence and Statements, which included suppression of all evidence acquired from the search warrants and Christy's recorded admissions.  See (Doc. 120).

On June 9, 2011, the United States filed a Motion to Reconsider Suppression Hearing and

Reopen Suppression Hearing.  <u>See</u> (Doc. 133).  On July 8, 2011, the Court held a hearing on the United States' Motion to Reconsider Suppression Order and Reopen Suppression Hearing.  <u>See</u> (Doc. 133).  The Court granted the United States' motion to reopen the suppression hearing, and scheduled a hearing for August 3-4, 2011, where the United States and Christy could present additional testimony.  <u>See</u> (Doc. 149).  After hearing the witnesses' testimony and counsels' argument, the Court indicated its need to render an opinion on the United States' Motion to Reconsider Suppression Order and Reopen Suppression Hearing.  The United States contacted Christy's attorney, Lee McMillan, on August 8, 2011, to ascertain his position regarding this motion.  Mr. McMillan advised that he is opposed to this request.

On August 8, 2011, the United States filed this Motion to depose Doe.  <u>See</u> Motion.  The United States seeks to depose and video record Doe's deposition to preserve her testimony for trial.  <u>See</u> Motion ¶ 4, at 2.  The United States contends that Doe is an emotionally troubled seventeen year-old, who is currently in a secured educational facility.  <u>See</u> Motion ¶ 6, at 3.  The United States asserts that as time has progressed, Doe's recollection of specific details of this incident has faded.  <u>See</u> Motion ¶ 6, at 3.  The United States contends that Doe has expressed to others her eagerness to move forward in her life upon turning eighteen, which includes moving beyond this incident and prosecution.  <u>See</u> Motion ¶ 6, at 3.

Doe will turn eighteen years of age in late September 2011 and will complete her residency at the secured educational facility.  <u>See</u> Motion ¶ 6, at 3.  Doe's parents indicate that she may run away again once she leaves the educational facility.  <u>See</u> Motion ¶ 6, at 3.  Accordingly, the United States believes that there is a substantial chance that, upon turning eighteen, Doe will abscond and become unavailable as a witness.  <u>See</u> Motion ¶ 6, at 3.  The United States requests that the Court entered an order scheduling Doe's videotaped deposition before her eighteenth birthday.

On August 30, 2011, Christy submitted Edward Christy's Response in Opposition to United States' Motion for Court Hearing to Depose Witness Before Her 18th Birthday. See Response. In his Response, Christy contends that what might be exceptional about this case is that Doe has been held in a lock-down "educational" facility and, very likely, has been so held since the inception of this case almost two years ago. See Response ¶ 4, at 2. Christy maintains that Doe has very likely been under the influence of psychoactive medication, which she has no ability to refuse. See Response ¶ 4, at 2. Christy contends that each occasion in which she has given statements or testimony preceded and followed detention with medication and modification techniques. See Response ¶¶ 6-7, at 2-3. Christy also contends that each of Doe's statements were made in the presence of people with the ability to impose further detention upon her. See Response ¶¶ 6-7, at 2-3. Christy specifically refers to: (i) the armed police who entered his house on November 9, 2009, while Doe was unclothed; Christy maintains that the police invaded her privacy; (ii) an agent of the Federal Bureau of Investigation, who questioned her after the police took her to the station; (iii) her parents and police in the California police station where she made her second statement a few days later; and (iv) the grand-jury presentment six months later. See Response ¶¶ 7, at 2-3.

On September 2, 2011, the Court issued its Memorandum Opinion and Order granting in part and denying in the United States' motion to reconsider. While the Court continued to believe that the local police had violated Christy's Fourth Amendment rights to be free from unreasonable searches and seizure, the Court did not to suppress the evidence, because the California investigator would inevitably have discovered constitutionally the same evidence.

Because the United States has not elaborated on the nature of the facility in which Doe lives, the Court requested that Doe be brought to the hearing on September 8, 2011. The Court also asked Doe's parents to attend the hearing. Before the hearing, the parties and the Court agreed that Doe's

mother did not have to attend, because she takes care of Doe's younger sister.

Trial is currently scheduled on a trailing trial docket for October 17, 2011. At the hearing, Doe's father testified that his daughter has had a number of problems, including severe depression, several suicide attempts, and resulting hospitalizations. See Transcript of Hearing at 10:25-11:8 (taken September 8, 2011)("Sept. 8, 2011 Tr.")(Court, Doe's father).[2] He stated that her last suicide attempt was in late 2009. See Sept. 8, 2011 Tr. at 11:16 (Doe's father). Doe's father told the Court that earlier this year he was concerned that his daughter would run away from the educational facilities she was in and that she had attempted to leave every facility in which they had put her. See Sept. 8, 2011 Tr. at 11:25-12:2 (Doe's father). He then testified that, when his daughter turns eighteen, she will go from being highly supervised to on her own. See Sept. 8, 2011 Tr. at 12:5-7 (Doe's father). He said that in discussions with his daughter, she had affirmed that she would be cooperative when she left the current educational facility. See Sept. 8, 2011 Tr. at 12:11 (Doe's father). She also stated to him, however, that she was thinking about moving away. See Sept. 8, 2011 Tr. at 12:14-15 (Doe's father). He said she was not financially able to move away, but that this factor would not necessarily stop her from leaving, as in previous incidents where she ran away. See Sept. 8, 2011 Tr. at 12:17-20, 17:18-20 (Court, Doe's father, Rees). Doe's father said that she had run away three times in the past other than the situation involved in this case. See Sept. 8, 2011 Tr. at 13:4-7 (Court, Doe's father). In the first incident, she traveled to another county for a few days without telling any family member. See Sept. 8, 2011 Tr. at 13:10-22 (Court, Doe).

Doe's father stated that as for the second incident where Doe left home, she escaped from a facility in California that was a low-supervision place, but she came back within a day. See Sept.

---

[2]The Court's citations to the transcript of the hearing refers to the court reporter's original, unedited version. Any final transcript may contain slightly different page and/or line numbers.

8, 2011 Tr. at 14:3-4 (Doe's father).  During the third incident, Doe escaped from the same facility located in Oak Grove, California for a few days and made it all the way down to San Diego, California, roughly sixty miles away, where the police there found her panhandling.  See Sept. 8, 2011 Tr. at 14:14-24, 17:13-14 (Court, Doe's father, Rees).  Doe's father stated that he lives in Orange County.  See Sept. 8, 2011 Tr. at 15:1 (Doe's father).  With respect to the third incident, Doe's father said he did not know if his daughter would have returned had the police not picked her up.  See Sept. 8, 2011 Tr. at 17:15-17 (Doe's father, Rees).  Doe's father testified that he has a good relationship with his daughter and that she usually tells the truth, but that she did not tell him the truth regarding these incidents.  See Sept. 8, 2011 Tr. at 15:14-17 (Doe's father).  He said that she has made a lot of progress in the past six months and that a good part of him believes her, but that he and his wife have been fooled before today.  See Sept. 8, 2011 Tr. at 15:19-23 (Doe's father).  He said he thinks her judgment has improved.  See Sept. 8, 2011 Tr. at 21:20-22:1 (Doe's father).  He testified that she has about $1000.00 in a checking account that she could access when she is eighteen years old.  See Sept. 8, 2011 Tr. at 23:18-23:24 (Doe's father, McMillian).  He testified that he believes his daughter understands that the Court has the power to compel her attendance.  See Sept. 8, 2011 Tr. at 24:3-5 (Doe's father, McMillian).  Lastly, he testified that his daughter has expressed a desire to leave California at some point and move to Massachusetts.  See Sept. 8, 2011 Tr. at 27:4-11 (Doe's father, Rees).

Doe testified that she had run away from home more than once before the incident in this case and that she did not tell her parents where she would be.  See Sept. 8, 2011 Tr. at 31:21-32:7 (Doe, Rees).  She said that she had promised her parents she would not run away again, but that she did run away again.  See Sept. 8, 2011 Tr. at 32:8-12 (Doe, Rees).  She stated that she understood a subpoena's effect and that she intended to testify truthfully.  See Sept. 8, 2011 Tr. at 33:11-23

-7-

(Doe). She told the Court that she intended to enroll at a university in Orange County after she left the educational facility. See Sept. 8, 2011 Tr. at 34:17-35:6 (Court, Doe). She stated that she plans, between her enrollment in the spring and now, to stay with her parents. See Sept. 8, 2011 Tr. at 35:7-10 (Court, Doe).

With respect to discovery, Christy stated that he needed a videotape of Doe's interview with the police in Westminster. See Sept. 8, 2011 Tr. at 38:1-4 (McMillian). The Court and Christy's attorney discussed drafting a protective order with respect to Doe's medical and psychiatric records that would be restricted to attorneys' and Christy's expert's eyes only. See Sept. 8, 2011 Tr. at 38:25-39:10 (Court, McMillian). Christy agreed with the limitation that these records be restricted to attorneys' and Christy's expert's eyes only. See Sept. 8, 2011 Tr. at 39:8-10 (Court, McMillian). Christy stated that the scope of the request would be: (i) all treatment records after 2009; (ii) Doe's medication history before the incident for a reasonable period of time of roughly six months; and (iii) information on each time she had discussed this case with any person in a treatment capacity or in law enforcement. See Sept. 8, 2011 Tr. at 39:13-17 (McMillian). The United States opposed this request as unnecessary and stated that any request for medical records before the time of the charges sweeps too broadly. See Sept. 8, 2011 Tr. at 40:15-25, 41:12-22 (Rees). Doe's father stated that he was not sure at the time of the hearing if he would be willing to allow access to the records. See Sept. 8, 2011 Tr. at 44:7-9 (Court, Doe's father). Reiterating the same arguments raised in the Response, Christy stated that his preference was that the deposition take place after Doe's eighteenth birthday, because of the potentially coercive force with respect to her deposition testimony that her parents could play while she is still a minor. See Sept. 8, 2011 Tr. at 45:1-15 (McMillian). The United States then suggested that, while it opposes any discovery from the alleged victim, following the Court's in camera review of the medical and psychiatric records, discovery relating to the period

two months before the event and two months after the event would be appropriate if any is allowed. See Sept. 8, 2011 Tr. at 45:20-46:6 (Court, Rees, McMillian). Christy agreed to this discovery period. Sept. 8, 2011 Tr. at 46:4-6 (Court, McMillian). The parties also agreed that a date shortly after September 29, 2011, Doe's birthday, would be an appropriate time for the deposition. See Sept. 8, 2011 Tr. at 47:17-20 (Rees).

## LAW REGARDING RULE 15

Rule 15 of the Federal Rules of Criminal Procedure states that a party "may move that a prospective witness be deposed in order to preserve testimony for trial." Fed. R. Crim. P. 15. "The court may grant the motion [to take a deposition] because of exceptional circumstances and in the interests of justice." Fed. R. Crim. P. 15. Rule 15 does not contemplate use of depositions of adverse witnesses as discovery tools in criminal cases. See United States v. Edwards, 69 F.3d 419, 437 (10th Cir. 1995). Instead, rule 15 requires the district judge to determine whether a deposition should be taken under the particular circumstances presented. See United States v. Edwards, 69 F.3d at 437.

Determining whether a deposition should be taken under the particular circumstances of a case is within the district court's discretion. See United States v. Edwards, 69 F.3d at 437. While rule 15 "neither defines nor elucidates 'exceptional circumstances,' and 'interest of justice' standards," the advisory committee's note to rule 15 provides three factors that courts use for guidance in these determinations. United States v. Hajbeh, 284 F. Supp. 2d 380, 382 (E.D. Va. 2006). While not dispositive, courts often look to the following three factors to determine whether exceptional circumstances exist to warrant a rule 15 deposition: (i) whether the desired witness is unavailable to testify; (ii) whether the witness' testimony is material to the United States' case; and (iii) whether taking the deposition is necessary to prevent an injustice from occurring. See United

States v. Fuentes-Galindo, 929 F.2d 1507, 1510 (10th Cir. 1991); United States v. Hajbeh, 284 F. Supp. 2d at 382.  See also United States v. Martinez, 198 Fed. App'x 704, 711 (10th Cir. 2006)(unpublished)(stating that, "[a]lthough a district court may consider unavailability in deciding whether to allow a deposition, the rule speaks in terms of exceptional circumstances" and "the interest of justice").  Because the materiality of a witness' testimony does not alone qualify as exceptional circumstances, the United States must make "some showing upon the record that the witness' attendance could not be obtained by subpoena" to justify a deposition under rule 15. United States v. Fuentes-Galindo, 929 F.2d at 1510 (citing United States v. Lopez-Cervantes, 918 F.2d 111, 113 (10th Cir. 1990)).

Even after a deposition is taken, to protect the defendant's confrontation rights, the government must make a showing of unavailability by demonstrating a good-faith effort to procure a witness' attendance at trial before using a deposition at trial.  See Barber v. Page, 390 U.S. 719, 724-25 (1968).  Otherwise, the government may not offer the deposition into evidence at trial even if the criminal defendant had the ability to cross examine the witness earlier.  See Crawford v. Washington, 541 U.S. 36, 53-54 (2004); Barber v. Page, 390 U.S. at 725.  Merely because a witness will be out of the jurisdiction is not a sufficient reason to dispense with important confrontation rights.  See Barber v. Page, 390 U.S. at 723.  These requirement remain basically unchanged after the Supreme Court's Crawford v. Washington decision.  See Crawford v. Washington, 541 U.S. at 53-54; United States v. Tirado-Tirado, 563 F.3d 117, 123 (5th Cir. 2009); United States v. Cannon, 539 F.3d 601, 603-04 (7th Cir. 2008); United States v. Martinez, 198 Fed. App'x at 711.

## ANALYSIS

There is something exceptional about this case's circumstances.  The United States' fears that its complaining witness may become recalcitrant have support in the record.  Thus, the Court

-10-

will allow the deposition, but under conditions that are fair to Christy.

## I. EXTRAORDINARY CIRCUMSTANCES EXIST WARRANTING DOE'S DEPOSITION.

Doe's testimony is material to the United States' case. The United States maintains that, other than Christy, Doe is the only material witness who has first-hand knowledge of the circumstances surrounding the alleged Transportation with Intent to Engage in Criminal Sexual Activity. See Motion ¶ 7, at 3-4. Accordingly, the United States argues, Doe's testimony is important, if not essential, to most, if not all, of the necessary elements that the United States must prove to convict Christy under that offense. See Motion ¶ 7, at 3-4.

The United States seeks to depose Doe in light of the possibility of the delay of the trial in this matter based upon a ruling on the Motion to Reconsider and Reopen the Suppression Hearing, and/or an appeal. See Motion ¶ 4, at 2. Doe is currently available. Given Doe's history of running away over the last few years, the Court finds that there is a moderate to strong risk that she will become unavailable before or during the trial. See Motion ¶ 6, at 3. While the United States indicates that she is recalcitrant, see Motion ¶ 6, at 3, the Court is inclined to think that she is more youthful than recalcitrant; she intends to cooperate, but is not particularly excited about the prospect. The reality, however, is that Doe may become unavailable and has the natural desire of any person involved in a federal prosecution to put the incident behind her. See Motion ¶ 6, at 3. At the hearing, Doe's father testified that Doe has run away from home on several prior occasions without informing her parents where she would be. He further testified that she had run away from home without the financial resources to support herself and that he was not sure she would have returned from San Diego during one of the incidents where she ran away without police involvement. On that occasion, police found Doe panhandling in San Diego. Both Doe's father and Doe testified that

-11-

there was a good relationship between Doe and her parents. Doe's father said, however, that based on the past incidents where she has lied to her parents and left home without permission, he could not necessarily believe everything she tells him. Doe also admitted having run away on several previous occasions and that she had lied to her parents about her location. Based on this evidence, the United States has provided a reason why she might not cooperate and that reason makes this case's circumstances exceptional. It has made "some showing upon the record that the witness' attendance could not be obtained by subpoena" sufficient to justify a deposition under rule 15. United States v. Fuentes-Galindo, 929 F.2d at 1510. Not only might Doe leave the state where her parents live, as the United States has alleged occurred in this case, she has in the past not told her parents any information about where she will be, i.e., the incident where she ran away to San Diego. Such a situation would make it highly difficult to subpoena Doe.

It is true that there is nothing exceptional about the circumstances in which a witness may become unexcited about testifying. Experience and common sense both indicate that a witness getting tired of a case is not exceptional. The key distinguishing factor in this case is that the Court has some track record here; the potential exists that Doe may abscond before the trial based on her past history of running away on several different occasions. The Court also takes into account that the alleged prior relationship between Doe and Christy could increase the likelihood that she would become unwilling to cooperate with the United States.

Taking Doe's deposition is necessary to mitigate the risk of, if not prevent, a failure of justice. If Doe absconds, refuses to cooperate, or in the less likely case she is unable to recall the incident's pertinent details, the United States may be unable to sustain its burden at trial. Given the important if not essential nature of Doe's testimony, and the significant potential that she will abscond or not testify, justice will best be served by preserving her testimony before trial.

In opposition to holding the deposition, Christy offers several arguments. He maintains that what the United States "stands to lose by allowing [Doe] to attend and to testify in this matter in the ordinary course of events, enforced . . . by the full power of the Federal Government to compel attendance of this vulnerable and impressionable witness, is the sheer, coercive leverage that comes from locking up a person, and allowing her to testify only under the tacit threat of continued caption if the testimony is not what is desired." See Response ¶ 5, at 2 (emphasis omitted). Christy argues that few, if any, young people in this or in any other country would have the will to freely and truthfully recount the circumstances of this case when faced with the weight of massive authority and absolute ability to detain, medicate, and subject him or her to the myriad behavior modification techniques available in most psychiatric facilities. See Response ¶ 6, at 2. Christy maintains that the Court now has the opportunity, if no deposition takes place, to hear Doe's testimony without the coercive influences that have always been present, or in at least a less coercive form. See Response ¶ 8, at 3. Christy argues that, unless Doe's testimony is a free and uncoerced act, his Fifth and Sixth Amendment rights to call witnesses on his own behalf will be abridged. See Response ¶ 11, at 3. Alternatively, Christy has argued that the deposition should take place after Doe's eighteenth birthday, and that the Court should permit him discovery sufficient to apprise him of all Doe's medications, treatments, therapies, and prior interviews by law enforcement, parents, or treatment providers. See Response ¶ 12-13, at 3-4.

Based on these concerns Christy raised at the hearing and in his response to the United States' Motion, the Court will require that the deposition take place after Doe's eighteenth birthday. While the United States is eager to depose Doe as soon as possible, the United States agreed to this condition. This timing will mitigate any coercive elements to the deposition while Doe is a minor under her parents' control, and in a lock-down facility. The Court will also permit some limited

discovery.

While the United States has persuasively argued that the circumstances justify taking Doe's deposition, it is desirable, if not necessary, to balance the countervailing concerns that Christy has raised. As Christy argued at the hearing, it is possible that Doe may be less willing to provide accurate testimony before her eighteenth birthday because she will not have status as an adult and consequently could be subject to punishment by her parents based on their reaction to her testimony. Doe's father conceded that he wants Christy prosecuted. Contrary to the United States' argument, it is not likely that this minor delay would result in Doe losing her recollection of any specific details. See Motion ¶ 6, at 3. There may be a risk that Doe will abscond once she reaches eighteen, but that risk must be balanced with the concerns Christy has raised. Also, given that the trial is not until October 17, 2011, and given that she has never been gone for more than a couple days, the United States will have sufficient time to locate her before then.

Few rights are more fundamental than that of an accused to present witnesses in his own defense. See Chambers v. Mississippi, 410 U.S. 284, 302 (1973). A defendant's right to a fair trial includes at a minimum the following rights, the last three of which are aspects of the first two rights: (i) reasonable notice of a charge against him; (ii) an opportunity to be heard in his defense, in other words a right to his day in court; (iii) a right to examine the witnesses against him; (iv) to offer testimony; and (v) to be represented by counsel. See Chambers v. Mississippi, 410 U.S. at 294. A defendant also has the right "to have compulsory process for obtaining witnesses in his favor." U.S. Const. amend VI. Christy does not cite to any specific authority or demonstrate in any specific way what aspect of these rights the deposition would violate. Nor does the Court allowing a deposition in any way limit Christy's ability to call or subpoena Doe as a witness or anyone else as a witness. In compliance with Christy's right to a fair trial, Christy may attend the deposition, which may

necessitate that the deposition take place here at the courthouse. See United States v. Gifford, 892 F.2d 263, 264-65 (3d Cir. 1989).

Christy states that another factor the Court should consider is that, if the Court allows the proposed deposition and once Doe has been deposed, there is no motivation for the United States to secure Doe's attendance at trial. See Response ¶ 9, at 3. Christy states that, once the proposed deposition has taken place, there will exist an affirmative motivation for the United States and Doe's family to subtly discourage Doe's attendance, to make it more likely that she will be unavailable for trial. See Response ¶ 9, at 3. Christy further argues that, if Doe is compelled to testify in these circumstances, his Sixth Amendment right of confrontation will be abridged. See Response ¶ 10, at 3.

The Court recognizes Christy's concern given his Confrontation Clause rights. This ruling does not, however, decide in any way whether the deposition is admissible. The United States still must make all the showings of unavailability to make the deposition admissible. If the United States does not make a showing of unavailability by demonstrating its good-faith effort to procure Doe's attendance at the trial, it may not use her deposition at trial. See Barber v. Page, 390 U.S. at 724-25. It cannot use the deposition in that situation even if Christy had the ability to cross examine the witness earlier at the deposition. See Crawford v. Washington, 541 U.S. 36, 53-54 (2004); Barber v. Page, 390 U.S. at 725. Furthermore, merely because Doe may be out of the jurisdiction at some point is not a sufficient reason to dispense with important confrontation rights. See Barber v. Page, 390 U.S. at 723.

## II.     THE COURT WILL ALLOW CHRISTY DISCOVERY ABOUT DOE.

Christy contends that, should the Court allow Doe to be deposed before her eighteenth birthday, and especially if Christy is not provided with discovery sufficient to apprise him of all

Doe's medications, treatments, therapies, prior interviews by law enforcement, parents or treatment providers, there will be no genuine chance that the defense can effectively cross-examine Doe or for the fact finder to properly gauge the reliability of this witness' testimony. See Response ¶ 12, at 3-4. Additionally, Christy argues that allowing the deposition to take place will violate his Fifth and Sixth Amendment rights to due process, attendance of witnesses, confrontation, cross-examination, effective assistance of counsel, and all of those rights attendant to a fair trial. See Response ¶ 12, at 3-4. Given that the Court will authorize the deposition, the Court finds it appropriate to authorize discovery consistent with the scope to which the parties agreed at the hearing[3] regarding: (i) all Doe's treatment records from a period of two months before and two months after the incident involved in this case; (ii) her medication history for the same period of time; and (iii) information on each time Doe had discussed this case with any person in a treatment capacity or in law enforcement. Doe's parents will provide a release. The Court will first conduct an in camera review of the evidence before releasing it to Christy's attorney. The discovery material will be restricted to attorneys' and Christy's expert's eyes only pursuant to Christy's agreement at the hearing. The Court encourages the parties to provide it with guidance on the parameters of the in camera review.

**IT IS ORDERED** that a videotaped deposition of Doe will be held in the courthouse on or about September 30, 2011. Additionally, following an in camera review of the evidence, the Court will permit Christy to discover: (i) all Doe's treatment records from a period of two months before

---

[3]The Court appreciates that the United States wants no discovery and Christy wants much broader discovery. The Court facilitated a settlement of these issues by indicating that it was reluctant to allow a deposition on short notice to Christy without the option to subpoena documents. Also, in a separate Memorandum Opinion, the Court has noted the probable relevance of evidence of Doe's mental health. See Memorandum Opinion and Order at 14-18, filed September 21, 2011 (Doc. 188).

and two months after the incident involved in this case; (ii) her medication history for the same period of time; and (iii) information on each time Doe discussed this case with any person in a treatment capacity or in law enforcement.  The discovery material will be restricted to attorneys' and Christy's expert's eyes only pursuant to Christy's agreement at the hearing.  The Court encourages the parties to provide it with guidance on the parameters of the in camera review.

　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　
　　　　　　　　　　　　　　　　　　　UNITED STATES DISTRICT JUDGE

*Counsel:*

Kenneth J. Gonzales
　United States Attorney
Charlyn E. Rees
Holland S. Kastrin
　Assistant United States Attorneys
Albuquerque, New Mexico

　　　*Attorneys for the Plaintiff*

Lee P. McMillian
Law Offices of Lee McMillian, P.C.
South Houston, Texas

　　　*Attorney for the Defendant*