# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

       Plaintiff,

vs.                                                                              No. CR 10-1534 JB

EDWARD CHRISTY,

       Defendant.

## <u>MEMORANDUM OPINION AND ORDER</u>

**THIS MATTER** comes before the Court on the Letter from Edward Christy to the Court (dated June 26, 2012), filed June 26, 2012 (Doc. 217)("Letter").  The primary issues are: (i) whether the Court should conduct a judicial inquiry into the alleged prosecutorial misconduct that Defendant Edward Christy asserts occurred in his case; (ii) whether Christy may obtain a new trial under rule 33 of the Federal Rules of Criminal Procedure; (iii) whether Christy may seek a reduction in his sentence; (iv) whether Christy may pursue a civil action in this lawsuit; and (v) whether the Court should sustain objections Christy has raised to the Re-Disclosed Presentence Investigation Report, disclosed February 8, 2012 ("Re-Disclosed PSR").  The Court will not conduct a judicial inquiry into the alleged prosecutorial misconduct.  To the extent that Christy seeks a new trial under rule 33, relief is not available to him under that rule, because he has pled guilty.  To the extent that Christy seeks a reduction of his sentence, the Court does not have authority to reduce Christy's sentence.  Christy's appropriate vehicle may be to seek a reduction of his sentence through a direct appeal to the United States Court of Appeals to the Tenth Circuit and/or a petition under 28 U.S.C. § 2255.  To the extent that Christy seeks damages from state or federal officials for prosecutorial misconduct, a civil lawsuit under 42 U.S.C. § 1983, under the state equivalent of that statute, or

through a cause of action for malicious prosecution may be the appropriate vehicle for him to seek damages. The Court will not permit any such civil action to proceed in this case, and Christy must file a separate civil lawsuit if he intends to seek damages. To the extent that Christy has not already raised the objections to the Re-Disclosed PSR which he has now raised in his Letter, those objections are untimely. Pursuant to Christy's request, the Court will file Christy's Letter on the District of New Mexico's Case Management/Electronic Case Filing ("CM/ECF") system.

## PROCEDURAL BACKGROUND

A federal grand jury indicted Christy on a superceding indictment with: (i) one count of Transportation with Intent to Engage in Criminal Sexual Activity, in violation of 18 U.S.C. § 2423(a); and (ii) three counts of Possession of a Matter Containing Visual Depictions of Minors Engaged in Sexually Explicit Conduct, in violation of 18 U.S.C. §§ 2252(a)(4)(b), 2252(b)(2), and 2256. See Superseding Indictment at 1-3, filed April 26, 2011 (Doc. 93). On September 30, 2011, Christy pled guilty to Counts 1 and 2 in the Information, filed September 30, 2011 (Doc. 193), charging him in Count 1 with a violation of 18 U.S.C. § 2422(a), that being coercion and enticement, and in Count 2 with a violation of 18 U.S.C. §§ 2252(a)(4)(b), 2252(b)(2), and 2256, that being possession of matter containing visual depictions of minors engaged in sexually explicit conduct. See Plea Agreement ¶ 3, at 2 (Doc. 195). The Plea Agreement stipulates, under rule 11(c)(1)(C) of the Federal Rules of Criminal Procedure, to a "term of imprisonment of 9 years (108 months)." Plea Agreement ¶ 9, at 5. "Both parties agree that neither a request for an upward departure nor a request for a downward departure is permitted by either of the parties." Plea Agreement ¶ 9, at 5. Christy "agrees not to seek a downward departure or variance from the stipulated sentence of 9 years imprisonment." Plea Agreement ¶ 12, at 11. Christy agrees to waive "the right to appeal [his] convictions and any sentence that is consistent with the sentence agreed to by the parties in" the Plea

Agreement, "as well as any fine and/or restitution ordered by the Court." Plea Agreement ¶ 22, at 14-15.

The United States Probation Office ("USPO") disclosed a Presentence Investigation Report ("PSR") for Christy on December 13, 2011. The USPO re-disclosed the PSR on February 8, 2012, to address some concerns that the United States had raised. In the Re-Disclosed PSR, the USPO does not group Counts 1 and 2 pursuant to application note 2 to U.S.S.G. § 3D1.2. See Re-Disclosed PSR ¶ 58, at 18. For Count 1, the USPO calculates Christy's base offense level to be 24. See PSR ¶ 50, at 17. The Re-Disclosed PSR includes a 2-level upward adjustment for Count 1 under U.S.S.G. § 2G1.3(b)(2)(B), because Christy exercised undue influence over Jane Doe. See Re-Disclosed PSR ¶ 51, at 17-18. The Re-Disclosed PSR includes a 2-level upward adjustment for Count 1 under U.S.S.G. § 2G1.3(b)(3), because "the offense involved the use of a computer or an interactive computer service" to "communicate directly with Jane Doe." Re-Disclosed PSR ¶ 52, at 18. The Re-Disclosed PSR includes a 2-level upward adjustment for Count 1 under U.S.S.G. § 2G1.3(b)(4), because "the offense involved the commission of a sex act or sexual contact." Re-Disclosed PSR ¶ 53, at 18.

For Count 2, the USPO calculates a base offense level of 18 pursuant to U.S.S.G. § 2G2.2(a)(1). See Re-Disclosed PSR ¶ 59, at 18. The USPO applies a 2-level enhancement for Count 2 under U.S.S.G. § 2G2.2(b)(2), because some of the material found in Christy's possession "involved a prepubescent minor or a minor who had not attained the age of 12 years." Re-Disclosed PSR ¶ 60, at 19. The USPO applies a 4-level enhancement for Count 2 under U.S.S.G. § 2G2.2(b)(4), because "the offense involved material that portrays sadistic or masochistic conduct or other depictions of violence." Re-Disclosed PSR ¶ 61, at 19. The USPO relates that "the defendant possessed one image of a prepubescent minor with an adult penis in her mouth" on one

of his computers.  Re-Disclosed PSR ¶ 61, at 19.  The USPO asserts that the "image appears to be sadistic as pain and humiliation is caused to this child."  Re-Disclosed PSR ¶ 61, at 19.  The USPO notes that the image represents "conduct sufficiently likely to involve pain to support a finding that it is inherently 'sadistic or violent.'" Re-Disclosed PSR ¶ 61, at 19.  The USPO applies a 5-level enhancement for Count 2 under U.S.S.G. § 2G2.2(b)(5), because Christy "engaged in a pattern of activity involving the sexual abuse or exploitation of a minor."  Re-Disclosed PSR ¶ 62, at 19.  The USPO applies a 2-level enhancement for Count 2 under U.S.S.G. § 2G2.2(b)(6), because "the offense involved the use of a computer or an interactive computer service for the possession, transmission, receipt, or distribution of the" pornographic material.  Re-Disclosed PSR ¶ 62, at 19. The USPO applies a 5-level enhancement for Count 2 under U.S.S.G. § 2G2.2(b)(7)(D), because "the offense involved more than 600 images."  Re-Disclosed PSR ¶ 64, at 20.  The PSR calculates an adjusted offense level of 36 for Count 2.  See Re-Disclosed PSR ¶ 68, at 20.

After making an adjustment for the multiple counts under U.S.S.G. § 3D1.4, the USPO calculates a combined adjusted offense level of 37.  See Re-Disclosed PSR ¶¶ 69-75, at 20.  The Re-Disclosed PSR includes a 3-level reduction under U.S.S.G. § 3E1.1 based on Christy's acceptance of responsibility.  See Re-Disclosed PSR ¶ 76, at 20.  The Re-Disclosed PSR calculates a total offense level of 34.  See Re-Disclosed PSR ¶ 77, at 20.  The Re-Disclosed PSR lists his criminal history category as I, based on 0 criminal history points.  See Re-Disclosed PSR ¶ 80, at 21.  The Re-Disclosed PSR calculates that an offense level of 34 and a criminal history category of I results in a guideline imprisonment range of 151 to 188 months.  See Re-Disclosed PSR ¶ 107, at 27.

The Court held a sentencing hearing on May 23, 2012.  The Court accepted the parties' plea agreement under rule 11(c)(1)(C) of the Federal Rules of Criminal Procedure and sentenced Christy to 108-months imprisonment.  The Court imposed a term of lifetime supervised release.  The Court

has not yet entered a judgment and commitment order for Christy.

On June 26, 2012, Christy sent his Letter to the Court.  <u>See</u> Doc. 217.  He asks the Court to "open a judicial investigation into prosecutorial misconduct" regarding "unethical and criminal activity" in which "both federal and state Executive Branch entities" allegedly engaged.  Letter at 1.  Christy relates:

> While prosecutorial actions were most egregious in my case, in that they involve false charges and withholding of material evidence from the state grand jury, collaboration to use state prosecutorial authority to unethically advantage federal prosecutors has been employed in cases other than mine.  I was charged by the State of New Mexico with two counts of criminal sexual penetration in the second degree, and with four counts of producing child pornography.  At the time of the indictment, prosecutors had affirmative evidence that the alleged crimes had not even happened; not merely a case of insufficient evidence to support the allegations.  These charges were brought in collaboration with AUSA Charlyn Rees to justify an unreasonably high $200,000 cash bond.  This denied me liberty, due process of law and irreperably [sic] prejudiced my defense against subsequent federal charges.

Letter at 1.  Christy states that, "[i]f the Court determines that a judicial inquiry is not warranted, I ask that this petition, and the enclosed articles be entered into the record for use in any subsequent judicial actions."  Letter at 2.  Christy contends that the two state charges for "criminal sexual penetration" brought against him "were both baseless, and obtained as a result of criminal misconduct in that prosecutors withheld exculpatory material evidence from the grand jury."  Letter at 3.  Christy argues that, "[h]ad state and federal prosecutors acted truthfully, ethically, and within the law to only bring charges for which evidence existed, this case would have been concluded long ago."  Letter at 4.  Christy asserts that, "[b]y conspiring to deny my 5th, 6th and 8th Amendment rights, the prosecution virtually assured that the truth of this case could never be recovered."  Letter at 5.  Christy contends that Assistant United States Attorney Charlyn E. Rees improperly represented to the Court that Christy had been "meeting minors online for sex" and "trad[ing] child pornography" without evidence to support those conclusions.  Letter at 6.  Christy states that he is

"neither confirming nor denying the element of intent as specified in the charges to which I pled."

Letter at 9.  Christy argues that Jane Doe, the minor involved in the charges to which Christy pled

guilty, was the one who initiated sexual intercourse with him.  <u>See</u> Letter at 9-10.  Christy relates

that Jane Doe had a difficult home life and that he was trying to help her.  <u>See</u> Letter at 10-11.

Christy objects to what he refers to as several "small inaccuracies" in the Re-Disclosed PSR.  Letter

at 13-14.  Christy does not specify the relief he requests, specifically whether he requests a reduction

of his sentence, damages, or some other remedy.

## LAW REGARDING RULE 33

Rule 33 provides:

(a)     **Defendant's Motion.**  Upon the defendant's motion, the court may vacate any judgment and grant a new trial if the interest of justice so requires.  If the case was tried without a jury, the court may take additional testimony and enter a new judgment.

(b)     **Time to File.**

(1)     **Newly Discovered Evidence.**  Any motion for a new trial grounded on newly discovered evidence must be filed within 3 years after the verdict or finding of guilty.  If an appeal is pending, the court may not grant a motion for a new trial until the appellate court remands the case.

(2)     **Other Grounds.**  Any motion for a new trial grounded on any reason other than newly discovered evidence must be filed within 14 days after the verdict or finding of guilty.

Fed. R. Crim. P. 33.  "A motion for a new trial is not regarded with favor and is only issued with

great caution."  <u>United States v. Herrera</u>, 481 F.3d 1266, 1269-70 (10th Cir. 2007)(citing <u>United

States v. Trujillo</u>, 136 F.3d 1388, 1394 (10th Cir. 1998)).  Ordinarily, a district court's denial of a

motion for a new trial is reviewed for abuse of discretion.  <u>See</u> <u>United States v. Herrera</u>, 481 F.3d

at 1270 (citing <u>United States v. Quintanilla</u>, 193 F.3d 1139, 1146 (10th Cir. 1999)).

The Tenth Circuit has concluded that a defendant may not invoke rule 33 when he or she has pled guilty:

> Rule 33 of the Federal Rules of Criminal Procedure, which authorizes motions for new trial, applies only to cases in which a <u>trial</u>, either to the court or to a jury, has taken place. Here defendant pleaded guilty; there was no trial. Case law on this point, although not plentiful, supports counsel's conclusion that "the validity of a guilty plea cannot be questioned by way of a motion for new trial." Counsel's Brief at 5. <u>See</u> <u>United States v. Prince</u>, 533 F.2d 205, 208 (5th Cir. 1976); <u>Williams v. United States</u>, 290 F.2d 217 (5th Cir. 1961)(per curiam). It follows that it was not error to deny appellant's motion for a new trial.

<u>United States v. Lambert</u>, 603 F.2d 808, 809 (10th Cir. 1979)(emphasis in original). <u>Accord</u> <u>United States v. Graciani</u>, 61 F.3d 70, 78 (1st Cir. 1995)(citing <u>United States v. Lambert</u>, 603 F.2d at 809)("By its express terms, Rule 33 is confined to those situations in which a trial has been had. . . . [A]ppellant <u>admitted</u> his guilt, abjuring a trial. A defendant who enters a guilty plea cannot thereafter use Rule 33 as a wedge to undo his acknowledgement that he committed the offense." (emphasis in original)). In 2005, the Tenth Circuit restated this same proposition. <u>See</u> <u>United States v. Calabaza</u>, 158 F.App'x 968, 969 (10th Cir. 2005)(unpublished)("The district court correctly ruled that a Rule 33 motion is a legally incorrect vehicle for challenging a guilty plea.").

## RELEVANT LAW ON CORRECTION AND CLARIFICATION OF JUDGMENTS AND THE RECORD IN CRIMINAL CASES

"A district court does not have inherent authority to modify a previously imposed sentence; it may do so only pursuant to statutory authorization." <u>United States v. Mendoza</u>, 118 F.3d 707, 709 (10th Cir. 1997). <u>See</u> <u>United States v. Vigil</u>, No. 05-2051, 2010 WL 2301708, at *3-4 (D.N.M. May 4, 2010)(Browning, J.). As the Tenth Circuit has explained:

> A district court is authorized to modify a Defendant's sentence only in specified instances where Congress has expressly granted the court jurisdiction to do so. Section 3582(c) of Title 18 of the United States Code provides three avenues through which the court may "modify a term of imprisonment once it has been imposed." A court may modify a sentence: (1) in certain circumstances "upon motion of the

> Director of the Bureau of Prisons"; (2) "to the extent otherwise expressly permitted
> by statute or by Rule 35 of the Federal Rules of Criminal Procedure"; or (3) "upon
> motion of the defendant or the Director of the Bureau of Prisons," or on the court's
> own motion in cases where the applicable sentencing range "has subsequently been
> lowered by the Sentencing Commission."

United States v. Blackwell, 81 F.3d 945, 947-48 (10th Cir. 1996)(footnote omitted)(citation omitted).[1]  Rule 35 authorizes a district court to reduce or correct a sentence in certain situations. See Fed. R. Crim. P. 35.  "'[S]entencing' means the oral announcement of the sentence."  Fed. R. Crim. P. 35(c).  Under rule 35(a), "[w]ithin 14 days after sentencing, the court may correct a sentence that resulted from arithmetical, technical, or other clear error."[2]  Fed. R. Crim. P. 35(a). The Tenth Circuit has referred to the term sentence as meaning "the punishment imposed."  United States v. Wittig, 206 F.App'x 763, 769 (10th Cir. 2006)(unpublished).  "A sentence is formally imposed at the point when the district court announces it from the bench, and not at the point when the written judgment of order and commitment is entered -- meaning that Rule 35's seven-day period runs from the oral imposition of the sentence."  United States v. Mendoza, 543 F.3d 1186, 1195 n.7 (10th Cir. 2008)(emphasis in original).  Under subsection (b), a court may reduce a sentence for substantial assistance in certain situations "[u]pon the government's motion."  Fed. R. Crim. P. 35(b).

Rule 36 allows a court, at any time, to "correct a clerical error in a judgment, order, or other part of the record, or correct an error in the record arising from oversight or omission."  Fed. R. Crim. P. 36.  The Tenth Circuit has held that rule 36 "allows correction of only non-substantive

---

[1]Congress twice amended 18 U.S.C. § 3582, in 1996 and in 2004, since the Tenth Circuit's decision in United States v. Blackwell; however, neither of these amendment substantively affects the Tenth Circuit's analysis.

[2]Amendments that took effect on December 1, 2009, extended the period of time in which a court can correct these "clear" errors from seven days to fourteen days.

errors, and does not 'give the court authority to substantially modify a Defendant's sentence.'"

United States v. Lonjose, 663 F.3d 1292, 1299 n.7 (10th Cir. 2011).  The United States Court of

Appeals for the Third Circuit has similarly stated: "[C]ourts and commentators are thus unanimous

that Rule 36 may not be used to amend a sentence to include an additional term of imprisonment,

fine, or imposition of costs."  United States v. Bennett, 423 F.3d at 278.  The United States Court

of Appeals for the Fifth Circuit has stated that "Rule 36 [is] the appropriate mechanism for

amendments that do not substantively alter the sentence announced orally but rather correct errors

in written judgments."  United States v. Spencer, 513 F.3d 490, 491 (5th Cir. 2008).  The United

States Court of Appeals for the Second Circuit has stated that "Rule 36 covers only minor,

uncontroversial errors."  United States v. Werber, 51 F.3d 342, 347 (2d Cir. 1995).

> The Third Circuit has explained how rule 36 operates:

> > While Rule 36 allows a court to correct clerical errors or errors of oversight
> > or omission "in the record," it only allows correction of clerical errors in the
> > judgment or order.  This difference in language is important.  While Rule 36
> > provides a broad mandate to correct a variety of errors in ancillary parts of the record
> > -- the dates of documents, the indictment, etc. -- it provides only a strictly limited
> > authority to correct the court's judgment or order.  The judgment of a court, unlike
> > the rest of the court's record, has legal effect; substantive changes to the judgment
> > may normally be made only by appellate review or similar procedures.

United States v. Bennett, 423 F.3d 271, 278 (3d Cir. 2005)(quoting 26 J. Moore, Moore's Federal

Practice ¶ 636.02[3] (3d ed. 2005)).  The Tenth Circuit has similarly stated that rule 36 permits the

correction of "clerical-type errors" in a judgment.  United States v. Blackwell, 81 F.3d at 948.

Accord United States v. Vaughan, 119 F.App'x 227, 230 (10th Cir. 2004)(unpublished)("When a

judgment and commitment order contains a clerical error, we may remand for correction.").

> The Third Circuit has provided the following definition for a clerical error: "[A] clerical error

must not be one of judgment or even of misidentification, but merely of recitation, of the sort that

a clerk or amanuensis[3] might commit, mechanical in nature." United States v. Guevremont, 829 F.2d 423, 426 (3d Cir. 1987)(quoting Dura-Wood Treating Co. v. Century Forest Indus., 694 F.2d 112, 114 (5th Cir. 1982)).  The Fifth Circuit has stated, in an unpublished opinion, that, "[w]hile there may be circumstances where the line between clerical error and judicial error is unclear, we have generally found that correction of a clerical error occurs when the modification neither affects a party's substantive rights nor contradicts the court's and the parties' intentions as to the judgment." United States v. Crawley, Nos. 11-60061, 11-60065, 2012 WL 715068, at *2 (5th Cir. Mar. 6, 2012)(unpublished)(citing United States v. Spencer, 513 F.3d at 491).

     In United States v. Blackwell, the Tenth Circuit reversed the district court's re-sentencing of a co-defendant seventy-two days after the original sentencing. See 81 F.3d at 946.  In that case, the defendant, who received an initial sentence of 15 months imprisonment, moved the court for a re-sentencing, because, "three days prior to his sentencing, Defendant's supplier pleaded guilty to distributing fifty-five ounces of cocaine and the United States District Court for the District of Utah sentenced her to probation." Id.  The district court held a re-sentencing hearing seventy-two days after the original sentencing, and, at that hearing, reduced the defendant's sentence to "three-years probation, with six-months home detention." Id. at 947.  In explaining its authority to modify the defendant's sentence, the district court relied on "two alternative sources of authority . . . : (1) the court's 'inherent jurisdiction' to right injustices, and (2) Fed. R. Crim. P. 35." Id.

     The Tenth Circuit rejected the district court's reliance on rule 35, rule 36, and its "inherent authority," and concluded that "the court lacked jurisdiction to resentence Defendant." United

---

     [3]An amanuensis is "a literary or artistic assistant, in particular one who takes dictation or copies manuscripts." New Oxford American Dictionary 48 (A. Stevenson & C. Lindberg eds., 3d ed. 2010).

States v. Blackwell, 81 F.3d at 949.  The Tenth Circuit concluded that rule 35(a) did not apply, "because the court did not correct Defendant's sentence within seven days after the original sentence was imposed, but resentenced Defendant seventy-two days later."  Id. (discussing then rule 35(c)).[4] The Tenth Circuit also held that rule 35(b) did not apply: "Because subsection (b) applies only to motions made by the government, a defendant cannot invoke Rule 35(b) and empower the court to reduce his sentence."  Id.

## ANALYSIS

The Court will not conduct a judicial inquiry into the alleged prosecutorial misconduct.  To the extent that Christy seeks a new trial under rule 33, relief is not available to him under that rule, because he has pled guilty.  To the extent that Christy seeks a reduction of his sentence, the Court does not have authority to reduce Christy's sentence.  Christy's appropriate vehicle may be to seek a reduction of his sentence through a direct appeal and/or a petition under 28 U.S.C. § 2255.  To the extent that Christy seeks damages from state or federal officials for prosecutorial misconduct, a civil lawsuit under 42 U.S.C. § 1983, under the state equivalent of that statute, or through a cause of action for malicious prosecution may be the appropriate vehicle for him to seek damages.  The Court will not permit any such civil action to proceed in this case, and Christy should file a separate civil lawsuit if he intends to seek damages.  To the extent that Christy has not already raised the objections to the Re-Disclosed PSR which he has now raised in his Letter, those objections are untimely.  Pursuant to Christy's request, the Court will file Christy's Letter on CM/ECF.

---

[4]"Former Rule 35(c), which addressed the authority of the court to correct certain errors in the sentence, is now located in Rule 35(a)."  Fed. R. Crim. P. 35 advisory committee's note to 2002 amendments.

I.       **BECAUSE CHRISTY PLED GUILTY, RELIEF UNDER RULE 33 IS NOT AVAILABLE TO HIM.**

It is not clear whether Christy seeks a new trial under rule 33.  Construing his pro se Letter

liberally, the Court will address whether relief under rule 33 is appropriate.  Rule 33 provides:

> (a)      **Defendant's Motion.**  Upon the defendant's motion, the court may vacate any judgment and grant a new trial if the interest of justice so requires.  If the case was tried without a jury, the court may take additional testimony and enter a new judgment.
>
> (b)      **Time to File.**
>
>> (1)      **Newly Discovered Evidence.**  Any motion for a new trial grounded on newly discovered evidence must be filed within 3 years after the verdict or finding of guilty.  If an appeal is pending, the court may not grant a motion for a new trial until the appellate court remands the case.
>>
>> (2)      **Other Grounds.**  Any motion for a new trial grounded on any reason other than newly discovered evidence must be filed within 14 days after the verdict or finding of guilty.

Fed. R. Crim. P. 33.  The Tenth Circuit has concluded that a defendant may not invoke rule 33 when

he or she has pled guilty:

> Rule 33 of the Federal Rules of Criminal Procedure, which authorizes motions for new trial, applies only to cases in which a <u>trial</u>, either to the court or to a jury, has taken place.  Here defendant pleaded guilty; there was no trial.  Case law on this point, although not plentiful, supports counsel's conclusion that "the validity of a guilty plea cannot be questioned by way of a motion for new trial."  Counsel's Brief at 5.  <u>See</u> <u>United States v. Prince</u>, 533 F.2d 205, 208 (5th Cir. 1976); <u>Williams v. United States</u>, 290 F.2d 217 (5th Cir. 1961)(per curiam).  It follows that it was not error to deny appellant's motion for a new trial.

<u>United States v. Lambert</u>, 603 F.2d at 809 (emphasis in original).  <u>Accord</u> <u>United States v. Calabaza</u>,

158 F.App'x at 969 ("The district court correctly ruled that a Rule 33 motion is a legally incorrect

vehicle for challenging a guilty plea.").

On September 30, 2011, Christy pled guilty to Counts 1 and 2 in the Information, charging

him in Count 1 with a violation of 18 U.S.C. § 2422(a), that being coercion and enticement, and in

Count 2 with a violation of 18 U.S.C. §§ 2252(a)(4)(b), 2252(b)(2), and 2256, that being possession

of matter containing visual depictions of minors engaged in sexually explicit conduct.  See Plea

Agreement ¶ 3, at 2.  Because Christy has pled guilty to these offenses, relief under rule 33 is not

available to him.  Thus, the Court will not grant him relief under rule 33.

## II. THE COURT DOES NOT HAVE JURISDICTION TO REDUCE CHRISTY'S SENTENCE.

In his Letter, Christy does not specify the relief he requests beyond asking that the Court

conduct an investigation into prosecutorial misconduct.  He does not specify whether he seeks other

relief, such as a reduction of his sentence or damages.  The Court has jurisdiction to reduce Christy's

sentence in only a narrow set of circumstances.  Christy's basis for seeking a reduction in his

sentence does not fall within the narrow set of circumstances that Congress has provided which

enable district courts to reduce sentences for criminal defendants.  Christy's appropriate vehicle to

seek a reduction of his sentence may be through a direct appeal and/or a petition under 28 U.S.C.

§ 2255.

"A district court does not have inherent authority to modify a previously imposed sentence;

it may do so only pursuant to statutory authorization."  United States v. Mendoza, 118 F.3d at 709.

As the Tenth Circuit has explained:

> A district court is authorized to modify a Defendant's sentence only in specified
> instances where Congress has expressly granted the court jurisdiction to do so.
> Section 3582(c) of Title 18 of the United States Code provides three avenues through
> which the court may "modify a term of imprisonment once it has been imposed."  A
> court may modify a sentence: (1) in certain circumstances "upon motion of the
> Director of the Bureau of Prisons"; (2) "to the extent otherwise expressly permitted
> by statute or by Rule 35 of the Federal Rules of Criminal Procedure"; or (3) "upon
> motion of the defendant or the Director of the Bureau of Prisons," or on the court's
> own motion in cases where the applicable sentencing range "has subsequently been
> lowered by the Sentencing Commission."

United States v. Blackwell, 81 F.3d at 947-48 (footnote omitted)(citation omitted).  Rule 35 authorizes a district court to reduce or correct a sentence in certain situations.  See Fed. R. Crim. P. 35.  For purposes of rule 35, "'sentencing' means the oral announcement of the sentence."  Fed. R. Crim. P. 35(c).  Under rule 35(a), "[w]ithin 14 days after sentencing, the court may correct a sentence that resulted from arithmetical, technical, or other clear error."  Fed. R. Crim. P. 35(a).  The Tenth Circuit has referred to the term sentence as meaning "the punishment imposed."  United States v. Wittig, 206 F.App'x at 769.  "A sentence is formally imposed at the point when the district court announces it from the bench, and not at the point when the written judgment of order and commitment is entered-meaning that Rule 35's seven-day period runs from the oral imposition of the sentence."  United States v. Mendoza, 543 F.3d at 1195 n.7 (emphasis in original).  Under subsection (b), a court may reduce a sentence for substantial assistance in certain situations "[u]pon the government's motion."  Fed. R. Crim. P. 35(b).

    The Court has not yet entered a judgment and commitment order for Christy.  Nevertheless, the Court has already sentenced Christy.  It sentenced him on May 23, 2012.  Christy did not file his Letter until June 26, 2012.  Under rule 35(a), "[w]ithin 14 days after sentencing, the court may correct a sentence that resulted from arithmetical, technical, or other clear error."  For purposes of rule 35, "'sentencing' means the oral announcement of the sentence."  Fed. R. Crim. P. 35(c).  The Court sentenced Christy over fourteen days ago, and Christy did not file his Letter until approximately thirty days after the Court orally pronounced his sentence.  Thus, the Court does not have authority under rule 35(a) to reduce Christy's sentence.

    Under rule 35(b), "[u]pon the government's motion made within one year of sentencing, the court may reduce a sentence if the defendant, after sentencing, provided substantial assistance in investigating or prosecuting another person."  Fed. R. Crim. P. 35(b).  Christy has made no argument

-14-

that he has provided substantial assistance to the United States.  The Court cannot reduce Christy's sentence under rule 35(b).

A court can also reduce a defendant's sentence "upon motion of the defendant or the Director of the Bureau of Prisons," or on the court's own motion in cases where the applicable sentencing range "has subsequently been lowered by the Sentencing Commission."  United States v. Blackwell, 81 F.3d at 947-48.  Christy has made no argument that the United States Sentencing Commission has lowered his sentencing range.  Thus, the Court has no grounds to reduce his sentence on this basis.

Lastly, Christy is not alleging that there was a clerical error in his sentencing process.  Rule 36 allows a court, at any time, to "correct a clerical error in a judgment, order, or other part of the record, or correct an error in the record arising from oversight or omission."  Fed. R. Crim. P. 36. The Tenth Circuit has held that rule 36 "allows correction of only non-substantive errors, and does not 'give the court authority to substantially modify a Defendant's sentence.'"  United States v. Lonjose, 663 F.3d at 1299 n.7.  Christy is asking the Court to conduct a full-scale investigation into prosecutorial misconduct.  He is not seeking to correct a clerical error such that rule 36 would permit any relief.

The Court concludes that Christy's basis for seeking a reduction in his sentence does not fall within the narrow set of circumstances which Congress has provided for courts to reduce sentences of criminal defendants.  Christy's appropriate vehicle to seek a reduction of his sentence may be through a direct appeal and/or a petition under 28 U.S.C. § 2255.

## III.    IF CHRISTY SEEKS DAMAGES, HE SHOULD FILE A CIVIL LAWSUIT.

To the extent that Christy seeks damages, he should file a separate civil lawsuit.  While it is clear that Christy wants the Court to investigate prosecutorial misconduct, it is not clear whether

he seeks damages.  Additionally, he complains of conduct of state officials who are not parties to this criminal proceeding.  Those considerations counsel against entertaining any request for damages he seeks, to the extent he seeks any, in this proceeding.

While there is not an absolute bar against a criminal defendant seeking relief that could be afforded in a civil suit as part of a criminal proceeding, see In re Special Grand Jury 89-2, 450 F.3d 1159, 1167 (10th Cir. 2006)(stating that "a motion for return of property under Fed.R.Crim.P. 41(g) is civil rather than criminal"), it is an unusual practice that can be highly disruptive and that courts generally discourage.  The United States Court of Appeals for the Seventh Circuit illustrates the principle that a civil suit a criminal defendant brings in a criminal case can be disruptive to the litigation process:

> Because Antonelli filed his "motion" under the district-court cause number of his 25-year-old criminal case and even captioned the United States as the plaintiff, the district court understandably appears to have viewed the filing as an additional motion in that long-finished proceeding.  When determining the character of a pro se filing, however, courts should look to the substance of the filing rather than its label.  Gleash v. Yuswak, 308 F.3d 758, 761 (7th Cir. 2002); Godoski v. United States, 304 F.3d 761, 763 (7th Cir. 2002).  And what Antonelli filed is not a motion in the 1978 criminal case but in actuality a separate, unrelated civil action raising a facial challenge to a BOP policy.  See United States v. Campbell, 294 F.3d 824, 826-27 (7th Cir. 2002)(per curiam)(recognizing that motion seeking access to grand jury transcripts was civil action even though filed under old criminal case number because motion had independent jurisdictional basis); Smith v. United States Dist. Ct. Officers, 203 F.3d 440, 441 (7th Cir. 2000)(claim for access to judicial court records not writ of mandamus but civil action under federal question jurisdiction).  That distinction leads us to the real problem in this appeal.

> Because Antonelli's filing is appropriately seen as an attempt to commence a new civil suit, the PLRA subjected him to significant procedural constraints and potential consequences that he in effect evaded by using his old criminal case number.  See United States v. Howell, 354 F.3d 693, 695 (7th Cir. 2004); Moran v. Sondalle, 218 F.3d 647, 649 (7th Cir. 2000)(per curiam).  The PLRA first mandates that inmates exhaust their administrative remedies before bringing a civil action challenging prison conditions, which is what Antonelli's "motion" does.  See 42 U.S.C. § 1997e(a); Massey v. Wheeler, 221 F.3d 1030, 1034 (7th Cir. 2000). Furthermore, had Antonelli properly designated his filing as a civil action that bears

no relation to his 1978 criminal case, the district court would have initially screened his claim to determine whether it was frivolous, malicious, or failed to state a claim before putting the defendant to the burden of responding. See 28 U.S.C. § 1915A(b); Zimmerman v. Tribble, 226 F.3d 568, 571 (7th Cir. 2000). Antonelli thus also avoided the risk of incurring a strike should the district court have screened and dismissed the suit; after three such strikes, inmates cannot proceed in forma pauperis unless under imminent danger of serious physical injury. 28 U.S.C. § 1915(g); Pischke v. Litscher, 178 F.3d 497, 500 (7th Cir. 1999); Evans v. Ill. Dept. of Corr., 150 F.3d 810, 811 (7th Cir. 1998). In addition, even when granting in forma pauperis status, the district court assesses an initial partial filing fee that a prisoner must prepay, and the entire filing fee will eventually be deducted from the inmate's prison trust account. See 28 U.S.C. § 1915(b); Hains v. Washington, 131 F.3d 1248, 1250 (7th Cir. 1997)(per curiam). In this instance, the processing of Antonelli's submission as if it were a motion in his old criminal case enabled Antonelli to escape paying up front at least part the $150 filing fee for civil cases, as well as his responsibility for paying the entire fee over time from his prison trust account. See Moran, 218 F.3d at 649. The same is true with the appellate fees in this court. Had Antonelli been required to adhere to limitations imposed by the PLRA, he may have decided not to risk the consequences attached to filing a civil suit, or to pursuing it on appeal after it had been lost. See Pischke, 178 F.3d at 500 (recognizing that prisoners when thwarted from improperly disguising civil action as petition for habeas corpus may decide to drop claim rather than risk consequences associated with PLRA). Finally, we note that once a district court has granted in forma pauperis status and screened a prisoner complaint under § 1915A, it will direct the United States Marshals Service to ensure that proper service is effected on the defendant, which might have provided the BOP with a better understanding of, and realistic opportunity to defend against, Antonelli's claim (as opposed to Antonelli's effort, which resulted in his "motion" being routed to the criminal division of the United States Attorney's Office for the Northern District of Illinois). See 28 U.S.C. § 1915(d); Fed.R.Civ.P. 4(c)(2); Graham v. Satkoski, 51 F.3d 710, 712 (7th Cir. 1995)(Marshals Service is required to serve process on behalf of individuals proceeding in forma pauperis); see also Fed.R.Civ.P. 4(I)(1) (civil action challenging action of administrative agency must be served on the U.S. Attorney in the appropriate district; a copy of the complaint and summons must also be sent to the Attorney General and the agency).

United States v. Antonelli, 371 F.3d 360, 361-62 (7th Cir. 2004)(per curiam)(emphasis in original).

The Third Circuit has stated that a district court has discretion to permit what may be civil proceedings to proceed in a criminal case depending on the circumstances of the case:

We hold that the refusal of the district court to reopen the criminal proceeding for the requested purpose was proper. Rule 48(a) authorizes a United States Attorney to dismiss a prosecution not yet brought to trial, subject only to the

qualification that he shall obtain leave of court.  Only after trial shall have begun is the consent of the defendant required.   United States v. Chase, 4th Cir. 1967, 372 F.2d 453.  Rule 48(a) expressly stipulates that when a formal 'dismissal' is thus filed, 'the prosecution shall thereupon terminate.'  After the Gerardo prosecution had duly terminated, the court had no obligation to reopen and enlarge the criminal case in order to deal with the collateral matter of the proper future use of evidence never introduced in that case, though originally obtained in contemplation of such use.  These issues can as well and more appropriately be raised in the anticipated new criminal proceeding, or even in a civil action for injunctive relief such as the present appellants have filed.

 The separate civil suit to restrain federal investigating officers from making the fruits of their investigation and search available for use in any state prosecution is patterned after the model provided by Rea v. United States, 1956, 350 U.S. 214, . . . , where the Supreme Court sanctioned the enjoining of federal agents from surrendering to the state authorities evidence which they had obtained by use of an invalid search warrant.  However, the Rea case exhibits several distinguishing features.  The search warrant was 'insufficient on its face, no probable cause existed, and the affidavit was based on unsworn statements.'  350 U.S. at 214-215 . . . .  Accordingly, in the original federal criminal proceeding the district court had entertained and granted a motion to suppress the evidence in question.  Thus, the injunction applied only to the evidence obtained through an already established violation of the Federal Rules of Criminal Procedure.  In the court's view, 'to enjoin the federal agent from testifying is merely to enforce the federal Rules against those owing obedience to them. * * * That policy is defeated if the federal agent can flout them and use the fruits of his unlawful act either in federal or state proceedings.' 350 U.S. at 217-218 . . . .

United States v. Boiardo, 408 F.2d 112, 113 (3d Cir. 1969)(alteration in original).

Sometimes, it is more efficient to permit a criminal defendant to seek civil relief in a criminal case, such as when a prisoner seeks the return of property seized from him under rule 41 of the Federal Rules of Criminal Procedure.  See Fed. R. Crim. P. 41(g) ("A person aggrieved by an unlawful search and seizure of property or by the deprivation of property may move for the property's return.").  The Seventh Circuit has elaborated on this scenario in the context of rule 41(g) motion:

 A final obstacle to all of Norwood's potential remedies, but not necessarily an insuperable one in the peculiar circumstances of this case, is that a motion in a criminal case is not a proper method of commencing a civil suit.  He was proceeding

pro se, and "when a district court conducting a Rule 41(e) [now 41(g)] proceeding learns that the government no longer possesses property that is the subject of the motion to return, the court should grant the movant (particularly a movant proceeding pro se . . . ) an opportunity to assert an alternative claim for money damages." "[A] pro se Rule 41(g) motion should be liberally construed to allow the assertion of alternative claims."

Norwood asked for monetary relief in a separate motion after his Rule 41(g) motion was denied.  He would have to pay a filing fee in order to convert the motion into a proper civil suit, and if he wanted to make a <u>Bivens</u> claim he would have to join the officers in their individual capacities as defendants and serve them.  But the <u>Hall</u>, <u>Albinson</u>, and <u>Peña</u> decisions that we've cited would (and <u>Jackson</u> might) permit such a conversion when the movant was pro se; and we are not aware of any contrary authority.

This is not to say, and these decisions do not say, that a district judge must always, or indeed usually, convert a motion for civil relief in a criminal case into a civil complaint.  The denial of relief under Rule 41(g) is not with prejudice against the movant's filing a civil suit for the value of property taken from him and then lost.  Indeed the denial clears the deck for his filing a civil suit and is normally preferable to contorting a motion filed under the criminal rules into a civil pleading.  The wrinkle here is the statute of limitations.  Not the statute of limitations for filing a claim with the Attorney General under 31 U.S.C. § 3724.  That statute has expired for good, for Norwood never filed anything with the Attorney General.

<u>United States v. Norwood</u>, 602 F.3d 830, 836-37 (7th Cir. 2010)(citations omitted).

It is not clear that Christy seeks to institute a civil suit.  He has not filed a document that resembles a complaint under the Federal Rules of Civil Procedure.  He requests no specific form of relief other than a judicial investigation.  Furthermore, he does not individually name many of the persons whom he asserts have wronged him, such as state officials who played a role in the ultimate prosecution of this federal case.  None of those state officials are a part of this proceeding.  Furthermore, government officials are often entitled to qualified immunity for actions taken in connection with the execution of their duties.  Qualified immunity brings with it the ability for these government officials to limit discovery in a case.  "Qualified immunity protects federal and state officials from liability for discretionary functions, and from 'the unwarranted demands customarily

imposed upon those defending a long drawn-out lawsuit.'" <u>Roybal v. City of Albuquerque</u>, No. 08-0181, 2009 WL 1329834, at *10 (D.N.M. Apr. 28, 2009)(Browning, J.).  Qualified immunity is "an entitlement not to stand trial or face the other burdens of litigation." <u>Mitchell v. Forsyth</u>, 472 U.S. 511, 526 (1985).  Issues of qualified immunity are best resolved at the "earliest possible stage in litigation." <u>Pearson v. Callahan</u>, 555 U.S. at 232.  The Supreme Court has suggested that, to avoid unnecessary exposure to burdensome discovery, the preferred practice is for the government officials to move to dismiss the action based on qualified immunity before discovery is ordered:

> When a plaintiff files a complaint against a public official alleging a claim that requires proof of wrongful motive, the trial court must exercise its discretion in a way that protects the substance of the qualified immunity defense.  It must exercise its discretion so that officials are not subjected to unnecessary and burdensome discovery or trial proceedings.

<u>Crawford-El v. Britton</u>, 523 U.S. 574, 598 (1998).  Furthermore, prosecutors are entitled to absolute immunity from civil liability in a variety of circumstances.  <u>See</u> <u>Mink v. Suthers</u>, 482 F.3d 1244, 1261 (10th Cir. 2007)("[A] prosecutor is entitled to absolute immunity for those actions that cast him in the role of an advocate initiating and presenting the government's case.").  Much like the scenario the Seventh Circuit discussed in <u>United States v. Antonelli</u>, Christy would effectively be circumventing these limitations by seeking to maintain a civil suit in this criminal case.  <u>See</u> <u>United States v. Antonelli</u>, 371 F.3d at 361-62.

In light of these circumstances, the Court believes it is a more appropriate action to deny, to the extent Christy wishes to bring a civil suit, any request Christy is making to institute a civil action.  To the extent that Christy seeks damages from state or federal officials for prosecutorial misconduct, a civil lawsuit under 42 U.S.C. § 1983, under the state equivalent of that statute, or through a cause of action for malicious prosecution is the appropriate vehicle for him to seek damages.  The Court will not permit any such civil action to proceed in this case, and Christy should

file a separate civil lawsuit if he intends to seek damages.

## IV.   TO THE EXTENT CHRISTY OBJECTS TO INFORMATION CONTAINED IN THE RE-DISCLOSED PSR, HE HAS WAIVED ANY OBJECTIONS HE HAS NOT PREVIOUSLY RAISED BY FAILING TO RAISE THEM IN A TIMELY MANNER.

Christy objects to what he refers to as several "small inaccuracies" in the Re-Disclosed PSR. Letter at 13-14.  Rule 32(f) of the Federal Rules of Criminal Procedure requires a defendant to: (i) "[w]ithin 14 days after receiving the presentence report, . . . state in writing any objections, including objections to material information, sentencing guideline ranges, and policy statements contained in or omitted from the report"; and (ii) to "provide a copy of [his or her] objections to the opposing party and to the probation officer."  Fed. R. Crim. P. 32(f).  The Court has already sentenced Christy.  He had a full opportunity to raise any objections to the Re-Disclosed PSR before and at the time of his sentencing.  Counsel represented Christy at the sentencing hearing.  He raised many objections to the Re-Disclosed PSR that the Court dealt with at the sentencing hearing and that the Court will address in writing with its memorandum opinion and order addressing the sentencing issues.  Many of these same objections Christy has already raised in his Defendant's Objections to Presentence Report, filed March 15, 2012 (Doc. 203-1), and it is not clear that he is raising any new objections.  There were no obstacles to Christy raising objections to the Re-Disclosed PSR in a timely manner as required under rule 32(f).  To the extent Christy has not already raised the objections to the Re-Disclosed PSR that he has now raised in his Letter, those objections are untimely.  The Court has already sentenced Christy.  Christy maintains that he has "no direct memory of sexual activity" with Jane Doe and asserts that he "repeatedly denied any memory of such actions," Letter at 10, 13, but he admits in his Plea Agreement that he "had sexual intercourse with Jane Doe at a motel in Needles, California and my Albuquerque, New Mexico residence," Plea Agreement ¶ 10, at 7.  When a defendant admits to facts in a plea agreement, a court can properly

rely on those admissions to conclude that, by a preponderance of the evidence, a given fact occurred. See United States v. Sanders, 990 F.2d 582, 585 (10th Cir. 1993)("The district court could properly have found by a preponderance of the evidence that defendant possessed the guns in connection with his drug trafficking as he admitted in his written plea statement."), overruled on other grounds by United States v. Gomez-Arellano, 5 F.3d 464, 466-67 (10th Cir. 1993).  Thus, the Court will overrule these objections.

**V.    GIVEN THAT THE COURT IS NOT ENTERTAINING A HABEAS ACTION OR A CIVIL SUIT, THE COURT WILL NOT CONDUCT A JUDICIAL INQUIRY INTO ALLEGED PROSECUTORIAL MISCONDUCT.**

The Court does not believe, particularly in light of Christy's lack of request for any specific relief, that it is appropriate to conduct a judicial inquiry into any alleged prosecutorial misconduct. As the Court has already discussed, government officials have a variety of protections from the burdens of a civil suit in the form of qualified immunity.  Prosecutors also have absolute immunity from civil liability in some instances.  If the Court conducted a freewheeling inquiry into prosecutorial misconduct, it would be circumventing some of these protections.  Additionally, any information the Court discovers would not benefit Christy in terms of his sentence, at least in this suit, because the Court does not have jurisdiction to reduce Christy's sentence based on alleged prosecutorial misconduct.  If Christy had raised this issue of prosecutorial misconduct before sentencing, the Court would be more inclined to conduct some form of inquiry and grant appropriate relief if any prosecutorial misconduct had occurred.  There is little relief that the Court can grant Christy at this point.  If Christy seeks to file a habeas suit, he may do so.  He may be able to obtain some of this information in those proceedings.  He may also file a direct appeal to the extent he has not waived his right to do so.

American federal courts are not independent, free-standing investigative entities. See Price

v. Wallette, No. 11-30894, 2012 WL 686996, at *1 (5th Cir. Mar. 2, 2012)(unpublished)(per curiam)("Federal courts are given only limited authority. They cannot investigate complaints by citizens who think they have been mistreated."). Rather, they decide cases and disputes that the parties bring to them. In the course of litigation, parties conduct discovery and private investigations, but most of that is self-executing, with courts resolving disputes that arise, rather than conducting the investigation itself. State disciplinary associations and the United States Department of Justice's internal disciplinary checks largely regulate the professional conduct of the lawyers who appear in federal court. While courts have the power to prevent discovery abuse and unethical conduct that occurs in cases, once a criminal case is closed, there is not much for a court to do. It must wait for the next case. In summary, courts are not well equipped to "investigate"; they are best equipped to resolve disputes that arise in litigation. Grand juries, which do investigate, are unique entities, and United States District Judges have limited involvement in the grand jury process. A district judge does not -- indeed, no judge -- presides over the grand jury. The United States Attorney and his or her assistants help the grand jury investigate. Rarely does a district judge know what the grand jury is investigating. Other than charging the grand jury, picking the jurors, selecting the foreperson, and resolving some disputes that arise, the district judge has little direct involvement. Thus, if Christy wants a grand jury to investigate, he will need to contact the United States Attorney's Office.

## VI.    THE COURT WILL FILE CHRISTY'S LETTER ON CM/ECF.

Christy states that, "[i]f the Court determines that a judicial inquiry is not warranted, I ask that this petition, and the enclosed articles be entered into the record for use in any subsequent judicial actions." Letter at 2. The Court will file Christy's Letter on CM/ECF, pursuant to Christy's request that the Court do so. The Court generally files letters it receives from the parties on the

docket to protect the parties' rights and to maintain a proper record of the proceedings.  The Court

sees no reason to deviate from that practice in this instance.

        **IT IS ORDERED** that the requests for relief contained in the Letter from Edward Christy

to the Court (dated June 26, 2012), filed June 26, 2012 (Doc. 217), are granted in part and denied

in part.  The Court will file Defendant Edward Christy's Letter on CM/ECF.  The Court will deny

all other relief Christy has requested.

                                            _____
                                            UNITED STATES DISTRICT JUDGE



*Counsel:*

Kenneth J.  Gonzales
   United States Attorney
Charlyn E. Rees
Holland S. Kastrin
   Assistant United States Attorneys
Albuquerque, New Mexico

        *Attorneys for the Plaintiff*

Lee P. McMillian
Law Offices of Lee McMillian, P.C.
South Houston, Texas

        *Attorney for the Defendant*

-24-