**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF NEW MEXICO**

UNITED STATES OF AMERICA,

      Plaintiff,

vs.                                                              No. CR 10-1534 JB

EDWARD CHRISTY,

      Defendant.

**MEMORANDUM OPINION AND ORDER**

**THIS MATTER** comes before the Court on: (i) the United States' Sentencing Memorandum and Recommendation, filed January 20, 2012 (Doc. 200)("USA Sentencing Memorandum"); and (ii) the Defendant's Objections to Presentence Report, filed March 15, 2012 (Doc. 203-1)("Objections"). The Court held a sentencing hearing on May 23, 2012. The primary issues are: (i) whether the Court should sustain Defendant Edward Christy's objections to various factual statements in the Re-Disclosed Presentence Investigation Report, disclosed February 8, 2012 ("Re-Disclosed PSR"); (ii) whether a 2-level enhancement under U.S.S.G. § 2G1.3(b)(2) for the exercise of undue influence over a minor to engage in prohibited sexual conduct is appropriate; (iii) whether a 2-level enhancement under U.S.S.G. § 2G1.3(b)(4) for the commission of a sex act or sexual contact is appropriate; (iv) whether a 4-level enhancement under U.S.S.G. § 2G2.2(b)(4) for possession of an image that portrays sadistic or masochistic conduct is appropriate; (v) whether a 5-level enhancement under U.S.S.G. § 2G2.2(b)(5) for engaging in a pattern of activity involving the sexual abuse or exploitation of a minor is appropriate; (vi) what amount, if any, in restitution should the Court award to one of the individuals -- "Vicky" -- who appears in some child

pornography photographs found in Christy's possession; (vii) whether the Court should vary downward to a sentence of 108-months imprisonment in light of the parties' rule 11(c)(1)(c) plea agreement; and (viii) whether the Court should impose a lifetime sentence of supervised release for Christy. The Court will overrule many of Christy's objections to the Re-Disclosed PSR on the basis that: (i) the United States Probation Office ("USPO") has corrected information in the Re-Disclosed PSR to account for his objections; (ii) the parties reached a compromise at the sentencing hearing regarding some of the statements Christy found objectionable; and (iii) there is sufficient evidence to support a finding by a preponderance of the evidence that certain facts Christy finds objectionable have occurred. Furthermore, Christy did not pursue many of his factual objections at the sentencing hearing, and, rather than ruling on those objections, the Court will disregard certain facts he finds objectionable when arriving at his sentence. The Court concludes that a 2-level enhancement under U.S.S.G. § 2G1.3(b)(2) is appropriate, given that Christy has not presented evidence to rebut the rebuttable presumption of undue influence that applies to this case. The Court finds that a 2-level enhancement under U.S.S.G. § 2G1.3(b)(4) is appropriate, because Christy engaged in sexual contact with Jane Doe -- a victim of the offense -- within the meaning of U.S.S.G. § 2G1.3(b)(4). The Court concludes that a 4-level enhancement under U.S.S.G. § 2G2.2(b)(4) is not appropriate, given that the child pornography image in question is not sadistic or masochistic. The Court concludes that a 5-level enhancement under U.S.S.G. § 2G2.2(b)(5) is appropriate given that Christy engaged in a pattern of activity involving the sexual abuse or exploitation of a minor. While the Court concludes that no amount of restitution is appropriate for Vicky given the lack of causation and lack of proof of her damages, the parties' stipulation to $500.00 in restitution relieves Plaintiff United States of America of the burden of proving that this restitution amount is appropriate. The Court sentences Christy, as to Counts 1 and 2, to 108-months imprisonment and a lifetime term of

supervised release, because that sentence best reflects the factors contained in 18 U.S.C. § 3553(a).

## FACTUAL BACKGROUND

Christy "was born on June 8, 1952," and his "father passed away in 1965 from emphysema." Re-Disclosed PSR ¶ 83, at 22.  Christy "described his childhood as normal as his basic needs were met, and absent of any abuse."  Re-Disclosed PSR ¶ 83, at 22.  Christy related that his first sexual experience was when "he was approximately 15 years old after receiving a call from a female friend who asked him to come over to her house as her parents were out of town."  Re-Disclosed PSR ¶ 91, at 24.  Christy states that "he has never been a victim of sexual abuse."  Re-Disclosed PSR ¶ 91, at 24.  Christy asserts "that he always becomes emotionally involved in" relationships, because "he is a protector by nature."  Re-Disclosed PSR ¶ 92, at 24.  Christy has been employed as an engineer from approximately 1986 to 2009.  See Re-Disclosed PSR ¶¶ 98-100, at 25.  "[F]rom 1986 to 1992, he was employed at Honeywell Incorporated in Albuquerque, New Mexico as an engineer . . . ."  Re-Disclosed PSR ¶ 100, at 25.  "[F]rom 1996 to November of 2009, he was employed at EG&G Technical Services in Albuquerque, New Mexico, as a senior engineer . . . ."  Re-Disclosed PSR ¶ 98, at 25.  Christy spent approximately six years "in the United States Army Reserve, being honorably discharged in 1980."  Re-Disclosed PSR ¶ 101, at 26.

"On November 8, 2009, Jane Doe's (juvenile female) father allegedly made a report regarding a missing juvenile, his daughter, to the Westminster Police Department in Westminster, California."  Re-Disclosed PSR ¶ 10, at 7.  "Jane Doe's . . . father advised that when [he and his wife] awoke on November 8, 2009, they found a note from Jane Doe . . . stating she had run away."  Re-Disclosed PSR ¶ 10, at 7.  "On November 8, 2009, Jane Doe's . . . father returned to the Westminster Police Department to report he had learned from a friend of Jane Doe . . . that Jane Doe . . . had been in contact with an adult male on the internet."  Re-Disclosed PSR ¶ 10, at 7.  After

-3-

obtaining some nude photographs of Christy from Doe's father, an officer with the Westminster Police Department was able to locate an online profile for Christy for an account with which Doe had been communicating.  See Re-Disclosed PSR ¶ 11, at 7.

Shortly afterwards, "an investigator for the Orange County District Attorney's Office was contacted to report she was investigating a missing juvenile whom she believed left the state with an adult male."  Re-Disclosed PSR ¶ 12, at 7.  Investigators obtained contact information for Doe and Christy from Doe's cellular telephone and electronic mail records.  See Re-Disclosed PSR ¶ 12, at 7.  From a review of cellular telephone records, investigators learned that Christy and Doe had traveled from California to Arizona, and then to Albuquerque, New Mexico.  See Re-Disclosed PSR ¶ 13, at 8.

"In the evening of November 9, 2009, the investigators in California contacted the Bernalillo County Sheriff's Office . . . in Albuquerque, New Mexico, requesting they respond to Mr. Christy's address to perform a welfare check in reference to a missing juvenile from Orange County, California."  Re-Disclosed PSR ¶ 15, at 8.  "Upon arriving at Mr. Christy's residence, deputies looked through a window, noticing what appeared to be a young female who matched the description of the missing juvenile."  Re-Disclosed PSR ¶ 9, at 6.  "During questioning, both Mr. Christy and Jane Doe . . . admitted to having sexual intercourse on two separate occasions."  Re-Disclosed PSR ¶ 9, at 6.  "Mr. Christy stated he believed Jane Doe . . . to be 18 years old and had asked her to send him naked photographs of herself, of which Mr. Christy received two."  Re-Disclosed PSR ¶ 17, at 9.  "Mr. Christy further stated that, on or about November 6, 2009, Jane Doe . . . told him if she could not leave her home and stay with him, Jane Doe . . . was going to kill herself."  Re-Disclosed PSR ¶ 18, at 9.  "Jane Doe . . . mentioned that Mr. Christy insisted on using a cover story in case they were caught, stating that Mr. Christy had rescued her from her abusive

father."  Re-Disclosed PSR ¶ 21, at 10.

"A subsequent search of Mr. Christy's residence revealed multiple images of child pornography and hundreds of chats involving minor children (9 to 15 years old), several of which were sexual in nature."  Re-Disclosed PSR ¶ 9, at 6.  On one computer in Christy's possession, officers found "310 possible child pornography images, including 32 possible images of Jane Doe." Re-Disclosed PSR ¶ 27, at 11.  Officers also found "10 possible cartoon child pornography images; 4 images appearing to be Mr. Christy; and [images of] 112 underage girls in sexually suggestive positions who were half-clothed, known to be child erotica."  Re-Disclosed PSR ¶ 27, at 11-12. "One of the images found on the Hewlett Packard HDX laptop" in Christy's possession "had an image titled 'JPEG_5796074.jpg.' . . . which depicted an image of a young child with an adult penis in her mouth."  Re-Disclosed PSR ¶ 27, at 12.

The USPO relates:

Deputies . . . located drawings made with crayon that appeared to have been made by a young child and [that] appeared to be addressed, in a child's writing, stating "to Ed from Re Re."  A note was also located, which appeared to be made by a teenage girl, who stated she was upset with her parents for making plans to move to Nova Scotia.  The note also stated the girl wanted to run away from her parents, and go camping with Mr. Christy again.  Further investigation revealed that Mr. Christy was the Kung Fu instructor for this particular girl (14 or 15 years old at the time) for approximately three years in Tijeras, New Mexico.  The information discovered correlates to a note found in Mr. Christy's residence.

Re-Disclosed PSR ¶ 32, at 13.  "During the investigation by the FBI, they learned several past allegations were made [against Christy], including one in which Mr. Christy molested a young girl, and one in which Mr. Christy was in the process of 'grooming'[1] two other girls."  Re-Disclosed PSR

---

[1]"'Grooming,' is behavior aimed at gaining a child's trust and desensitizing the child to sexual acts."  United States v. Christy, No. 10-1534, 2010 WL 2977610, at *4 n.5 (D.N.M. June 28, 2010)(Browning, J.).  Grooming can include behavior such as "giving a child gifts and being emotionally available to a vulnerable child, such as a child in a single-parent home."  United States

¶ 33, at 13.

"The officers also uncovered hundreds of internet chats, including sexual conversations between Mr. Christy and minors."  Re-Disclosed PSR ¶ 33, at 13.  The USPO provides examples of "only the most egregious" of the chats, including the following:

> In July 2009, Mr. Christy discussed sexual matters with a 12 year old, stating he was "not far away by plane."  During the same conversation, Mr. Christy admitted he had a 'neighborhood girl' as his "playmate," claiming her grandfather didn't know.  Mr. Christy further admitted he liked younger than 12 and would go "9 to 10 year olds."  In a chat from July 23, 2009, the Defendant discussed being "lovers" with his wife and daughter, if he had one.  In this same chat, Mr. Christy discusses with someone that if he lived with her and her child, he (Mr. Christy) would [be] able to teach her baby, specifically stating "you have a fresh daughter."  In another, dated on August 23, 2009, Mr. Christy stated "I'd always thought when my daughter first fed from her mother that I would masturbate and put cum on her nipple so I could nourish my girl too."  He further states "I'd want us all to sleep in one bed with no barriers.  Daddy's cock should be pacifying to his kids.  They should feel safe and secure and loved sucking him fall to sleep with his cock in their mouth."  Additionally, in a chat from August 24, 2009, the Defendant admitted he is "drawn to open sex in his own family," and added that children who have sexual relationships in their own families are "more balanced than most."  Mr. Christy also acknowledged that "even though he is more drawn to girls, his sons would know him sexually too."  In a chat dated August 26, 2009, Mr. Christy admitted to performing sex on a 12 year old neighborhood boy within the last three months, and a 14 year old girl a few years ago.

Re-Disclosed PSR ¶ 34, at 13-14.  "Investigators noted Mr. Christy's chat logs revealed he dedicated a lot of his time in internet chat looking for other adolescent girls in which to cultivate a sexual relationship."  Re-Disclosed PSR ¶ 35, at 14.  "After speaking to surrounding neighbors, deputies also learned Mr. Christy would often interact with kids in the neighborhood," and would invite them to "breakfast and to use his Jacuzzi hot tub."  Re-Disclosed PSR ¶ 35, at 14.  "Additionally, the forensic examiners, also uncovered large amounts of internet search activity searching for child pornographic images on the internet, as well as countless amounts of chats illustrating Mr. Christy's

_____

v. Christy, 2010 WL 2977610, at *4.

sexual interest in young females, including have 'cybersex' with a web cam." Re-Disclosed PSR ¶ 39, at 15. "Examiners discovered his searches revealed him seeking out younger females, 15 years old or younger, by using 'older_for_young1,' and screening for girls with younger profiles." Re-Disclosed PSR ¶ 39, at 15. "Mr. Christy would join chats with titles such as 'horny teens 4 old dirty men' and 'father and daughter romance.'" Re-Disclosed PSR ¶ 39, at 15.

On November 9, 2009, New Mexico officers arrested Christy for the underlying criminal conduct at issue in this case. See Re-Disclosed PSR ¶ 81, at 21. The State of New Mexico charged Christy with various counts, including: (i) two counts of criminal sexual penetration; (ii) one count of criminal sexual conduct; (iii) four counts of sexual exploitation of children; (iv) one count of contributing to a delinquency of a minor; and (v) one count of custodial interference. See Re-Disclosed PSR ¶ 81, at 21. The state court dismissed those charges on speedy trial grounds. See Re-Disclosed PSR ¶ 81, at 21.

Christy possessed some child pornography images from a series of images attributable to an individual named Vicky. See Re-Disclosed PSR ¶¶ 42-46, at 15-16. There "is a national restitution claim pending by the victim of the 'Vicky' series." Re-Disclosed PSR ¶ 45, at 16. Although Vicky has an attorney representing her case, the USPO was not able to contact her attorney. See Re-Disclosed PSR ¶ 45, at 16. "As of June 10, 2011, the attorney for the victim identified in the 'Vicky' series advised the full amount of 'Vicky's' document economic losses are $1,224,697.04." Re-Disclosed PSR ¶ 45, at 16. "As of June 10, 2011, the victim of the 'Vicky' series has received $248,279.40 in restitution payments," bringing the amount of restitution she is allegedly entitled to receive "to $976,417.64." Re-Disclosed PSR ¶ 46, at 16. "As of the latest information, there are more than 40 judgment nationwide" in Vicky's favor, totaling $2,638,291.82. Re-Disclosed PSR ¶ 46, at 16.

## PROCEDURAL BACKGROUND

A federal grand jury indicted Christy on a superceding indictment with: (i) one count of Transportation with Intent to Engage in Criminal Sexual Activity, in violation of 18 U.S.C. § 2423(a); and (ii) three counts of Possession of a Matter Containing Visual Depictions of Minors Engaged in Sexually Explicit Conduct, in violation of 18 U.S.C. §§ 2252(a)(4)(b), 2252(b)(2), and 2256.  See Superseding Indictment at 1-3, filed April 26, 2011 (Doc. 93).  On September 30, 2011, Christy pled guilty to Counts 1 and 2 in the Information, filed September 30, 2011 (Doc. 193), charging him in Count 1 with a violation of 18 U.S.C. § 2422(a), that being coercion and enticement, and in Count 2 with a violation of 18 U.S.C. §§ 2252(a)(4)(b), 2252(b)(2), and 2256, that being possession of matter containing visual depictions of minors engaged in sexually explicit conduct. See Plea Agreement ¶ 3, at 2.  The Plea Agreement stipulates, under rule 11(c)(1)(c) of the Federal Rules of Criminal Procedure, to a "term of imprisonment of 9 years (108 months)."  Plea Agreement ¶ 9, at 5.  "Both parties agree that neither a request for an upward departure nor a request for a downward departure is permitted by either of the parties."  Plea Agreement ¶ 9, at 5.  Christy "agrees not to seek a downward departure or variance from the stipulated sentence of 9 years imprisonment."  Plea Agreement ¶ 12, at 11.  "The parties agree that, as part of the Defendant's sentence, the Court will enter an order of restitution pursuant to the Mandatory Victim's Restitution Act, 18 U.S.C. § 3663A."  Plea Agreement ¶ 7, at 4.  The parties agree that Christy will pay Vicky, one of the females depicted in some of the child pornography images found in Christy's possession, $500.00 in restitution.  See Plea Agreement ¶ 7, at 4.  Christy "reserves the right to have a hearing on any restitution sought or ordered as related to Count 1, after completion of the presentence report in this case."  Plea Agreement ¶ 7, at 4.  Christy stipulates: "I engaged in sexual conversations with Jane Doe, a person I knew to be 16 years of age.  These sexual conversations between Jane Doe and

myself included the exchange of sexually explicit images of each other and discussions about sexual activities between the two of us." Plea Agreement ¶ 10, at 6. Christy stipulates that, "[d]uring the course of" his travels with Doe, he "had sexual intercourse with Jane Doe at a motel in Needles, California and my Albuquerque, New Mexico residence." Plea Agreement ¶ 10, at 6-7. He stipulates that he "knew Jane Doe was 16 years old at the time of this sexual activity." Plea Agreement ¶ 10, at 6-7. Christy stipulates that, "[b]y planning to take and ultimately taking Jane Doe from her home without her parents' permission, [he] caused and encouraged Jane Doe to refuse to obey the reasonable and lawful commands or direction of her parents, who had lawful authority over her." Plea Agreement ¶ 10, at 7. Christy agrees to waive "the right to appeal [his] convictions and any sentence that is consistent with the sentence agreed to by the parties in" the Plea Agreement, "as well as any fine and/or restitution ordered by the Court." Plea Agreement ¶ 22, at 14-15.

      1.    **Contents of the Re-Disclosed PSR.**

The USPO disclosed a Presentence Investigation Report ("PSR") for Christy on December 13, 2011. The USPO re-disclosed the PSR on February 8, 2012, to address some concerns the United States had raised regarding the number of child pornography images attributable to Christy. In the Re-Disclosed PSR, the USPO does not group Counts 1 and 2 pursuant to application note 2 to U.S.S.G. § 3D1.2. See Re-Disclosed PSR ¶ 58, at 18. For Count 1, the USPO calculates Christy's base offense level to be 24. See Re-Disclosed PSR ¶ 50, at 17. The Re-Disclosed PSR includes a 2-level enhancement for Count 1 under U.S.S.G. § 2G1.3(b)(2)(B), because Christy exercised undue influence over Doe. See Re-Disclosed PSR ¶ 51, at 17-18. The Re-Disclosed PSR includes a 2-level enhancement for Count 1 under U.S.S.G. § 2G1.3(b)(3), because "the offense involved the use of a computer or an interactive computer service" to "communicate directly with Jane Doe." Re-Disclosed PSR ¶ 52, at 18. The Re-Disclosed PSR includes a 2-level enhancement

for Count 1 under U.S.S.G. § 2G1.3(b)(4), because "the offense involved the commission of a sex act or sexual contact." Re-Disclosed PSR ¶ 53, at 18. The USPO relates that a 2-level enhancement is appropriate under U.S.S.G. § 2G1.3(b)(4), because "the defendant admitted to having sexual intercourse with Jane Doe . . . , once in a motel, and another time upon arriving at his residence in Albuquerque, New Mexico." Re-Disclosed PSR ¶ 53, at 18. The Re-Disclosed PSR calculates an adjusted offense level of 30 for Count 1. See Re-Disclosed PSR ¶ 57, at 18.

For Count 2, the USPO calculates a base offense level of 18 pursuant to U.S.S.G. § 2G2.2(a)(1). See Re-Disclosed PSR ¶ 59, at 18. The USPO applies a 2-level enhancement for Count 2 under U.S.S.G. § 2G2.2(b)(2), because some of the material found in Christy's possession "involved a prepubescent minor or a minor who had not attained the age of 12 years." Re-Disclosed PSR ¶ 60, at 19. The USPO applies a 4-level enhancement for Count 2 under U.S.S.G. § 2G2.2(b)(4), because "the offense involved material that portrays sadistic or masochistic conduct or other depictions of violence." Re-Disclosed PSR ¶ 61, at 19. The USPO relates that "the defendant possessed one image of a prepubescent minor with an adult penis in her mouth" on one of his computers. Re-Disclosed PSR ¶ 61, at 19. The USPO asserts that the "image appears to be sadistic as pain and humiliation is caused to this child." Re-Disclosed PSR ¶ 61, at 19. The USPO notes that the image represents "conduct sufficiently likely to involve pain to support a finding that it is inherently 'sadistic or violent.'" Re-Disclosed PSR ¶ 61, at 19. The USPO applies a 5-level enhancement for Count 2 under U.S.S.G. § 2G2.2(b)(5), because Christy "engaged in a pattern of activity involving the sexual abuse or exploitation of a minor." Re-Disclosed PSR ¶ 62, at 19. The USPO applies a 2-level enhancement for Count 2 under U.S.S.G. § 2G2.2(b)(6), because "the offense involved the use of a computer or an interactive computer service for the possession, transmission, receipt, or distribution of the" pornographic material. Re-Disclosed PSR ¶ 62, at 19.

The USPO applies a 5-level enhancement for Count 2 under U.S.S.G. § 2G2.2(b)(7)(D), because "the offense involved more than 600 images." Re-Disclosed PSR ¶ 64, at 20. The Re-Disclosed PSR calculates an adjusted offense level of 36 for Count 2. See Re-Disclosed PSR ¶ 68, at 20.

After making an adjustment for the multiple counts under U.S.S.G. § 3D1.4, the USPO calculates a combined adjusted offense level of 37. See Re-Disclosed PSR ¶¶ 69-75, at 20. The Re-Disclosed PSR includes a 3-level reduction under U.S.S.G. § 3E1.1 based on Christy's acceptance of responsibility. See Re-Disclosed PSR ¶ 76, at 20. The Re-Disclosed PSR calculates a total offense level of 34. See Re-Disclosed PSR ¶ 77, at 20. The Re-Disclosed PSR lists his criminal history category as I, based on 0 criminal history points. See Re-Disclosed PSR ¶ 80, at 21. The Re-Disclosed PSR calculates that an offense level of 34 and a criminal history category of I results in a guideline imprisonment range of 151 to 188 months. See Re-Disclosed PSR ¶ 107, at 27.

The USPO relates that 18 U.S.C. § 3583(k) permits a term of supervised release of "not less than 5 years to life." Re-Disclosed PSR ¶ 109, at 27. The USPO relates that U.S.S.G. § 5D1.1(b) prescribes a term of supervised release of "not less than 5 years to life." Re-Disclosed PSR ¶ 110, at 27. The USPO states that "[t]he Mandatory Restitution for Sexual Exploitation of Children Act" is applicable to this case. Re-Disclosed PSR ¶ 119, at 29. The USPO notes that "[r]estitution is outstanding and due in the amount of $976,417.64 to the victim of the 'Vicky' series of child pornography." Re-Disclosed PSR ¶ 120, at 29. Nevertheless, the USPO follows the parties' stipulation that Christy will pay Vicky $500.00. See Re-Disclosed PSR ¶ 120, at 29.

## 2.     The Parties' Objections to the PSR and Arguments for an Appropriate Sentence.

On January 20, 2012, the United States filed its USA Sentencing Memorandum. See Doc. 200. The United States asserts that, consistent with the Plea Agreement, the Court should impose a sentence of nine-years imprisonment. See USA Sentencing Memorandum at 7-8. The United

States asserts that a 4-level enhancement under U.S.S.G. § 2G2.2(b)(4) is not appropriate, because, "[t]ypically, courts in this district have imposed this enhancement if the [child pornography] images depict bound children," and because Christy "did not possess any images depicting bondage or excessive torture of children." USA Sentencing Memorandum at 6. The United States agrees that a 5-level enhancement under U.S.S.G. § 2G2.2(b)(7)(D) should apply, given that Christy "possessed well over 600 images on his computers and computer-related media," along with "6 known child pornography videos," even though the United States maintains there is a "miscalculation in the PSR." USA Sentencing Memorandum at 7. The United States also requests that the Court impose a lifetime term of supervised release. See USA Sentencing Memorandum at 8. The United States contends that lifetime supervised release is appropriate, because "[t]here is a risk of future recidivism," given that Christy "is an individual who preys upon young and vulnerable children, all in pursuit of his selfish, sexual interests." USA Sentencing Memorandum at 8. The United States asserts that Christy has "exploited numerous children through his collection of child pornography images and videos," and will "go to great lengths to gain access to children with whom he can engage in actual sexual relations." USA Sentencing Memorandum at 9. Relying on an article entitled Re-Offense Rates of Adult Sex Offenders, the United States argues that "there is a higher recidivism rate of contact sex offenders, like the Defendant, over time." USA Sentencing Memorandum at 9-10 (citing Dr. S. Brake & G. Veeder, Re-Offense Rates of Adult Sex Offenders (Doc. 200-1)).

On March 15, 2012, Christy filed his Defendant's Motion for Leave to File out of Time Objections to Presentence Report. See Doc. 203 ("Motion for Leave to Late File").[2] Attached to

---

[2]On August 2, 2012, the Court granted the Motion for Leave to Late File. See Memorandum Opinion and Order at 1 (Doc. 220).

the Motion for Leave to Late File are his Objections.  See Doc. 203-1.  In his Objections, Christy

"objects to the characterization, under the heading 'Custodial Status,' of the first 209 days of

Defendant's confinement as 'state custody,'" on the basis that "this investigation has at all times

been a federal investigation."  Objections at 1.  Christy objects to various statements in the Re-

Disclosed PSR regarding the restitution he owes given that he has already stipulated "to pay the sum

of $500.00 restitution for the alleged victims in Count 2 of the information."  Objections at 1-2, 9.

Christy objects to a statement in paragraph 6 of the Re-Disclosed PSR that he was placed in a

halfway house in Las Cruces, New Mexico.  See Objections at 2.  Christy objects to "the statements

contained in paragraph 8 of the presentence report insofar as it states that emails and pictures

exchanged between Mr. Christy" and Doe were "sexually explicit."  Objections at 2.  Christy

"objects to the suggestion, contained in paragraph 8, that Mr. Christy was aware of the female's true

age at the time the emails and photos were exchanged."  Objections at 2.  Christy "objects to the

statement contained in paragraph 9 that 'Mr. Christy had arranged a meeting with Jane Doe (juvenile

female), in the middle of the night, for Jane Doe (juvenile female) to run away with Mr. Christy,'"

because Doe "threatened to harm herself if Mr. Christy did not come get her."  Objections at 2.

Christy "objects to the statement in paragraph 9 that 'deputies' looked through a window, and

requests that the statement be changed to reflect the actual truth, that only Deputy Littlefield looked

through a crack in the blinds of a window, and no one else."  Objections at 2.  Christy objects to a

similar statement in paragraph 15 of the Re-Disclosed PSR.  See Objections at 3.  Christy "further

objects to the statement in paragraph 9 that the female 'was tied up by her wrist, and neck with

straps, and was hanging from ceiling rafters,'" because this statement does not accurately reflect

what occurred.  Objections at 3.  Christy "objects to the statement in paragraph 9 that he 'had been

actively using the Yahoo chat service since early 2003, to meet young girls and develop a

relationship,'" because the statement "implies that Mr. Christy sought out young girls for improper purposes, when, in fact, Mr. Christy did communicate with numerous persons on the Yahoo chat service, of unknown gender and age, none of which Mr. Christy ever met personally, and none of whose actual identities have been established."  Objections at 3.  Christy "objects to the statement at the end of paragraph 10, which characterizes the photographs and conversations between Mr. Christy and Jane Doe as sexually explicit," because "[a]lthough the pictures depicted nudity, none were sexually explicit, and though the conversations contained discussions of Jane Doe's desire to establish a dominant/submissive relationship with an older man, none described sexual acts." Objections at 3.

Christy "objects to the reference, in paragraph 15, to 'camera-like' flashes, as Deputy Littlefield's testimony was adamant in stating that he had seen camera flashes, in order to support his assertion that child pornography was being produced."  Objections at 3.  Christy objects to references in paragraph 17 of the Re-Disclosed PSR to one of the photographs Doe allegedly sent where she was posing nude, given that they are included "for shock value" and to suggest that he "had something to do with the production of these photos."  Objections at 3-4.  Christy also relates that Doe had already sent these photographs to another person and that Doe's sister took the pictures, such that, "if these statements are to be accurate, they either have to include the whole truth of the matter, or be entirely stricken."  Objections at 4.  Christy "objects to the statements in paragraph 18 where in it is stated that Mr. Christy stated that he had sex with the juvenile female twice, once in Needles, California, and once in Albuquerque, New Mexico," given that "any consensual acts between Mr. Christy and Jane Doe which occurred in the State of New Mexico were legal acts, as the age of consent in New Mexico is 16 years of age."  Objections at 4.  Christy "objects to the statements in paragraph 19 of the PSR which begin with Mr. Christy's admission that

he knew Jane Doe was sixteen years old on November 6, 2009, and concluding with Mr. Christy's alleged statement that 'the emails between him and Jane Doe (juvenile female) were normal,'" because the age of consent in New Mexico is sixteen, making these statements misleading. Objections at 4-5.

Christy "objects to the failure to include the statement by Jane Doe during her interview with the FBI that she took medication for 'delusional thinking' in any of the paragraphs relating to her interview," because this information bears on Doe's credibility.  Objections at 5.  Christy "objects to the inclusion of all statements contained in paragraphs 23 through 26 in the section of the PSR relating to the 'Interview with K.Y.,'" because "all these statements relate to the search of Mr. Christy's residence and subsequent interviews with Jane Doe, and are not properly part of the discussion of the FBI interview with Jane Doe."  Objections at 5.  Christy objects to "the statement in paragraph 23 relating to Mr. Christy's laptop being on his desk, having a web cam positioned so that it was pointing at a harness sex swing . . . approximately six feet from the computer." Objections at 5.  He asserts that this statement "mischaracterizes the evidence, and creates the untruthful impression that Mr. Christy used the web cam for any improper purpose, totally ignoring the fact that no images were ever recovered . . . of any pictures taken with said web cam." Objections at 5.  Christy "objects to the statement in paragraph 23 that there was a wireless router on the desk, and" that this arrangement "was suspicious because no other computer equipment could be located in the residence that would be networked via said router," given that "this statement ignores the obvious fact that the laptop on the desk could be used . . . from any location in the house."  Objections at 6.  Christy "objects to the statements in paragraph 24 wherein it stated that 'Several sex toys which appeared to have been used, along with pornographic comics, were also located in the bedroom,'" because "this describes matters which imply sexual conduct which, in

New Mexico, would not have been criminal." Objections at 6. Christy "further objects to the reference to finding a .45 caliber pistol in a safe, as" this conduct is legal and "is inserted herein only for its unfair prejudicial value." Objections at 6. Christy "objects to the inclusion, in paragraph 26, of the statement that Mr. Christy inserted a 'butt plug' into Ms. Doe's anus, as such statement was contradicted by Doe's own testimony before the grand jury in this case," and because the conduct "would have been legal under New Mexico law." Objections at 6-7. Christy "objects to the inclusion in paragraph 27 of the reference to 'ten possible cartoon child pornography images . . . and 112 underage girls in sexually suggestive positions who were half-clothed, known to be child erotica," because "by definition, cartoons cannot be pornographic," and the "reference to '112 underage girls . . . known to be child erotica' should not be included because the possession of any such images is not a crime and cannot be considered 'relevant conduct' for that reason." Objections at 7.

Christy "further objects to the inclusion in paragraph 27 of any reference to '110109144.jpg' which was a close image of Jane Doe's (juvenile female) vagina," because "said image has not been identified by any means, and because the image, if actually that of 'Jane Doe,' was transmitted to Defendant prior to his finding out 'Jane Doe's' true age." Objections at 7. Christy "objects to the inclusion of any of the matters contained in paragraph 29, as the charges brought by the State of New Mexico were demonstrably untrue," because Doe had told officers that the sex was consensual and "because the sexual acts attributed to the Defendant in the State of New Mexico were not criminal conduct." Objections at 7. Christy further objects that his "alleged statements at the end of paragraph 29 are simply not relevant for any purpose, as they do not constitute a criminal act or indicate criminal intent, but are included simply for prejudicial effect." Objections at 7-8. Christy objects to the statement in paragraph 30 of the PSR that 'In sum, Mr. Christy

communicated with Jane Doe (juvenile female) for two months via email and online chats, knowing she was a minor.", [sic] as this statement is a total fabrication, demonstrably untrue, if one makes a mere cursory examination of the emails exchanged and evidence in this case, i.e., that the sites on which Mr. Christy encountered "Jane Doe" required a registrant to be at least eighteen years of age, that "Jane Doe's" profiles on these sites all listed her age as being at least that old, and that no indication of her true age occurred until November 3, 2009.

Objections at 8. Christy "objects to the entire contents of paragraph 33, as they are simply untrue," and "[n]o allegation of molestation has been made, as referred to, and no 'grooming' behavior occurred." Objections at 8-9. Christy also states that no "minors [have] been actually identified with whom Mr. Christy had sexual conversations on the internet." Objections at 9. Christy objects to the "entire contents of paragraph 34, as all such conversations were 'roll playing,' in which Mr. Christy attempted to identify persons in chat rooms by assuming the rolls that they, themselves led," because "[n]one of this behavior is 'offensive behavior,' as no minor has ever actually been identified as the recipient of any of these communications." Objections at 9. Christy "makes the same objection to paragraph 35, as to paragraph 34, for the same reasons." Objections at 9. Christy "objects to the statement in paragraph 48 of the PSR that he has not made a statement accepting responsibility, as such statement was made orally to the interviewer during the interview in custody and with counsel, before the original disclosure was made." Objections at 9.

> Christy
>
> objects to the application of the 2 level increase in the sentencing level contained in paragraph 51 of the PSR (Undue Influence), and would respectfully show the Court that, while the young lady (Jane Doe) was, indeed, much younger than Mr. Christy, her previous admitted behavior of seeking out older men online by misrepresenting her age was the controlling factor in her own behavior, and the rebuttable presumption of undue influence does not apply to this case.

Objections at 9. Christy "objects to the two level increase in paragraph 53 pursuant to Section 2G1.3(b)(4), as the sexual conduct engaged in by Mr. Christy at his home in Albuquerque, New

Mexico was not prohibited sexual conduct under New Mexico law, and no other sexual conduct has been proven beyond a reasonable doubt." Objections at 9-10. He

> objects to the four level increase in paragraph 61 pursuant to Section 2G2.2(b)(4) because the PSR writer simply presumes from the subject matter of the alleged image that pain and humiliation is inflicted on the child made the subject matter of the image referred to. The image is not inherently sadistic or violent, though it certainly may be found to be disgusting, and so the four level increase in sentencing level should not apply.

Objections at 10. Christy "objects to the five level increase in sentencing level contained in paragraph 62, to the extent that it punishes behavior that was not against the law in the State of New Mexico." Objections at 10. Christy "objects to the inclusion of the charges filed by the State of New Mexico in this case in paragraph 81, Criminal History, Other Arrests, as this is the same case, the agents of the State of New Mexico had no factual or legal basis for the Counts charged," and "had affirmative knowledge that the charged conduct was not criminal under New Mexico law." Objections at 10. Christy "objects to the inclusion of the statement in paragraph 95 that he 'used cocaine on a monthly basis for six months' at the age of 25, and denies any such use or statement." Objections at 10. He "objects to the suggestion, in paragraph 115 and Attachment A, insofar as it suggests that Mr. Christy should in any way be subjected to lifetime supervision, and reserves his right to present evidence at sentencing relating to his lack of future dangerousness and low risk of recidivism." Objections at 10. Christy "objects to any suggestion that he has the ability to pay a fine in any amount, contained in paragraphs 116 and 117." Objections at 10-11. Christy "objects to any suggestion, contained in paragraph 118, that he has any ability whatever to pay the costs of his incarceration or prosecution." Objections at 11.

On April 18, 2012, the USPO disclosed a Second Addendum to the Presentence Report to respond to Christy's objections. The USPO makes some of Christy's requested changes regarding

-18-

how much time he spent in state custody, but maintains that Christy spent time in state custody.  See Second Addendum to PSR at 2.  The USPO does not make any of Christy's requested changes to the sections of the Re-Disclosed PSR discussing restitution, because some of "the information was obtained from the stipulations in the defendant's plea agreement," and the rest of "the information is simply to provide the Court information regarding the national restitution claim pending by the victim of the 'Vicky' series, including the amount of economic losses."  Second Addendum to PSR at 2-4.  The USPO maintains that the statements in paragraph 8 that the photographs exchanged between Christy and Doe were sexually explicit is consistent with the definition of that term in 18 U.S.C. § 2256.  See Second Addendum to PSR at 2.  The USPO asserts that an electronic mail transmission confirms that Christy knew Doe was sixteen as of June 6, 2009, and that Christy admitted that he knew Doe was sixteen when confronted with an electronic mail transmission he sent on November 6, 2009.  See Second Addendum to PSR at 2.  Regarding Christy's objection "to the information contained in paragraphs 9, 10, 15, 17, 18, 19, 23-26, 27, and 29," the USPO asserts that the available discovery supports these statements, including various investigation reports. Second Addendum to PSR at 2-3.  Regarding Christy's objection to paragraph 30 regarding the statements that he instructed Doe to fabricate a story about running away, the USPO state that this paragraph "will remain unchanged as the information was obtained from discovery, the defendant's own admissions, and statements made by the victim."  Second Addendum to PSR at 3.  Regarding Christy's objections "to the information contained in paragraph 32, and paragraphs 33-35" which address alleged conduct involving other minors, the USPO responds that "the information is reliable based on the available discovery," and notes that, "[p]ursuant to 18 U.S.C. § 3661 and U.S.S.G. § 6A1.3, regarding resolution of disputed factors, no limitation should be placed on the information concerning the background, character, and conduct of a person convicted of an offense for the

-19-

purpose of imposing an appropriate sentence." Second Addendum to PSR at 3. The USPO also notes that "[t]he information contained does not enhance the base offense level or any related specific offense characteristics, and is listed under Offense Behavior Not Part of Relevant Conduct." Second Addendum to PSR at 3. The USPO relates that Christy has still not provided a written statement accepting responsibility. See Second Addendum to PSR at 4.

The USPO maintains that a 2-level enhancement under U.S.S.G. § 2G1.3(b)(2)(B) is "correctly applied," given the "41 year difference" between Christy and Doe's age, and the "rebuttable presumption" of undue influence in light of the more than 10-year age difference. Second Addendum to PSR at 4. The USPO states that a 2-level increase under U.S.S.G. § 2G1.3(b)(2)(B) is appropriate, given that "the defendant admitted to having sexual intercourse with Jane Doe . . . , once in a motel, and another time upon arriving at his residence in Albuquerque, New Mexico." Second Addendum to PSR at 5. The USPO asserts that a 4-level enhancement under U.S.S.G. § 2G2.2(b)(4) is appropriate given that "[t]he image" in question "can be interpreted to be sadistic as pain and humiliation is caused to this child." Second Addendum to PSR at 5. The USPO relates that a 5-level increase under U.S.S.G. § 2G2.2(b)(5) is appropriate, because "Christy admitted to engaging in sexual intercourse with Jane Doe (juvenile female) on two separate occasions." Second Addendum to PSR at 5. The USPO states that, regarding Christy's argument that the USPO has recommended lifetime supervised release: "Paragraph 114 will remain unchanged as this paragraph makes no reference to a recommendation for lifetime supervision." Second Addendum to PSR at 6. Regarding the paragraphs related to fines to which Christy objects, the USPO relates that this language "will remain unchanged as it is standard language in the presentence report provided for identifying guideline and statutory provisions available to the Court." Second Addendum to PSR at 6. The USPO states in the Second Addendum to PSR that it makes Christy's

requested changes regarding the halfway house in which he lived and the number of deputies who looked through the window.  See Second Addendum to PSR at 6.

### 3.     The Sentencing Hearing on May 23, 2012.

At the sentencing hearing on May 23, 2012, Christy stated that his main objection is to statements in the Re-Disclosed PSR that characterize his actions as having knowingly corresponded with an underage girl for several months before his arrest.  See Transcript of Hearing at 6:3-7 (taken May 23, 2012)("Tr.")(McMillian).[3]  Christy conceded that, as of November 6, 2009, he knew that Doe was a minor.  See Tr. at 7:20-8:2 (McMillian).  He argued, however, that many of the exchanges between the two, including transferring images, occurred before he acquired that knowledge.  See Tr. at 7:20-8:2 (McMillian).  The United States responded that Christy had stipulated that some of the photographs that he and Doe exchanged were sexually explicit in his Plea Agreement.  See Tr. at 8:9-13 (Kastrin).  The United States noted that there is other evidence available indicating that Christy arranged with Doe to fabricate a story that he did not know Doe was underage.  See Tr. at 9:13-10:6 (Kastrin).  The parties then came to an agreement to modify the Re-Disclosed PSR to state that Christy knew that Doe was sixteen before he left to pick her up in California and to omit any reference to when he specifically became aware of her age.  See Tr. at 13:12-20 (Kastrin, Court, McMillian).

Christy then argued that the 2-level enhancement under U.S.S.G. § 2G1.3(b)(2)(B) for undue influence was inappropriate, but conceded that a rebuttable presumption that the enhancement is appropriate in light of the age difference between Doe and himself.  See Tr. at 13:3-13 (Court, McMillian).  Christy stated that he did not intend to pursue rebutting that presumption and that the

---

[3]The Court's citations to the transcript of the hearing refers to the court reporter's original, unedited version. Any final transcript may contain slightly different page and/or line numbers.

Court could overrule his objection to this 2-level enhancement.  See Tr. at 13:10-21 (McMillian, Court).  The United States argued that Christy's sexual contact in New Mexico with Doe was in furtherance of another crime, specifically custodial interference and contributing to the delinquency of a minor under N.M.S.A. 1978, §§ 30-6-3 and 30-4-4.  See Tr. at 14:15-22 (Rees).  The United States also noted that criminal sexual penetration under N.M.S.A. § 30-9-11 criminalizes sexual perpetration perpetrated during the commission of another felony.  See Tr. at 15:4-11 (Rees).  The United States asserted that New Mexico recognizes that a minor is a person under the age of eighteen years old.  See Tr. at 15:17-21 (Rees).  The United States noted that Christy had pled guilty in Count 1 to having engaged in conduct that could have violated all three of these statutes.  See Tr. at 16:20-17:11 (Court, Rees).  Christy asserted that, in spite of his guilty plea, the United States still cannot show a pattern of conduct for purposes of a 2-level enhancement under U.S.S.G. § 2G1.3(b)(4).  See Tr. at 17:14-17 (McMillian).  The Court and the United States noted that this enhancement does not require a pattern of conduct, but only a sex act or sexual contact.  See Tr. at 17:22-18:3 (Court, Rees).  The Court then overruled Christy's objection to the 2-level enhancement under U.S.S.G. § 2G1.3(b)(4).  See Tr. at 18:6-18 (Court, McMillian).

Christy then argued that a 5-level enhancement was not appropriate under U.S.S.G. § 2G2.2(b)(5), given that his sexual acts in New Mexico were lawful.  See Tr. at 19:2-8 (Court, McMillian).  The United States argued that there is a large amount of evidence indicating that Christy has engaged in a pattern of sexual exploitation of minors, including all the child pornography found in his possession and the individuals with which he chatted online.  See Tr. at 20:13-21:22 (Rees).  Christy asserted that none of the individuals he chatted with have been identified, including whether they are adults or minors, but conceded that the chat conversations have been presented to the Court.  See Tr. at 21:24-22:8 (McMillian).  Christy noted that no one has

proved that he engaged in any sexual acts with children in his neighborhood. See Tr. at 22:9-13 (McMillian). The Court noted that the application note to U.S.S.G. § 2G2.2(b)(5) indicates that it has a low threshold for a pattern of activity, requiring only two or more separate instances of sexual abuse or sexual exploitation of a minor. See Tr. at 22:14-22 (Court). The Court noted that there was sufficient evidence to find that this enhancement applied by a preponderance of the evidence in light of Christy admitting to two sexual acts with Doe on separate occasions, and the Court overruled Christy's objection. See Tr. at 22:14-23:8 (Court). The Court then sustained the parties' objection to the 4-level enhancement under U.S.S.G. § 2G2.2(b)(4) on the basis that, while bondage is not required to support an enhancement under this guideline, the picture did not portray sadistic or masochistic acts. See Tr. at 25:7-31:7 (Court). The Court also concluded that, while awarding restitution to Vicky would not normally be appropriate given that Christy did not cause any of her harm and in light of the lack of evidence regarding her damages, the parties' stipulation to an award of $500.00 in restitution to her relieved the United States of its burden to prove the appropriateness of restitution. See Tr. at 33:22-38:19 (Court). The United States asserted that it was not prepared to put forward any evidence, other than Christy's stipulation, regarding Vicky's damages. See Tr. at 38:20-39:7 (Rees).

The Court then heard testimony from Dr. Carmen Petzold regarding an appropriate term of supervised release for Christy, and, specifically, Christy's risk of recidivism. Dr. Petzold explained her education, training, and experience with sex-related crimes and related issues, including developing a juvenile sex-offender treatment program. See Tr. at 46:3-11 (Petzold). Dr. Petzold testified that she spent approximately sixty hours working on Christy's case and about fourteen hours in diagnostic interviews with him. See Tr. at 50:14-51:1 (McMillian, Petzold). Dr. Petzold then explained the testing and evaluations she conducted with Christy. See Tr. at 51:3-53:1

(McMillian, Petzold).  She asserted that there are no indications Christy suffered abuse as a child, but noted that he had a hard time dealing with his father's death.  See Tr. at 52:16-53:1 (Petzold). Dr. Petzold stated that, based on Christy's history, there were not many indicators suggesting that he would be likely to commit crimes.  See Tr. at 55:22-56:12, 59:12-59:1 (Petzold).  Dr. Petzold related that some of the tests she conducted with Christy indicated that he: (i) is honest about his symptoms; (ii) has feelings of persecution and paranoia; (iii) is naive and optimistic; (iv) is energetic, precarious, and creative; (v) has no signs of a personality disorder or aggressiveness; and (vi) has some signs of predisposition to addictive behavior.  See Tr. at 60:6-61:21 (Petzold).  She stated that a test that focused on his long-term personality traits and behavior indicated that Christy: (i) showed signs of wanting to avoid other people, especially in a group setting; (ii) has the capability to have close relationships with others; and (iii) has a tendency to become isolated. See Tr. at 61:23-62:24 (Petzold).  Dr. Petzold stated a test she performed on Christy regarding his sexual characteristics indicated that: (i) he had sexual desires similar to most adult heterosexual males; (ii) his level of sexual knowledge did not suggest he was likely to commit sex-related offenses; and (iii) he had indicators of sexual obsession consistent with most males.  See Tr. at 65:3-19 (Petzold).  Dr. Petzold said that Christy admitted to having sexual fantasies about post-pubescent, fully developed adolescents, and admitted to using leather whips and handcuffs before in a sexual manner.  See Tr. at 66:14-19 (Petzold).  She related that Christy answered questions in a more straightforward and open manner than most sex offenders she had seen.  See Tr. at 66:20-23 (Petzold).  Dr. Petzold concluded that Christy is not and has not been suffering from any major mental illness.  See Tr. at 70:16-21 (Petzold).

Dr. Petzold concluded that Christy is not a pedophile, because he does not have ongoing sexual fantasies or interest in prepubescent individuals, and because Doe consented to the sexual

acts in question.  See Tr. at 71:1-7 (Petzold).  She related that his characteristics of naivete and emotional immaturity likely contributed to his commission of the offenses to which he pled guilty. See Tr. at 71:8-15 (Petzold).  She stated that Christy has a susceptibility to outside influences, including what Christy described as a false sense of intimacy from interacting on the internet with others.  See Tr. at 71:16-72:1 (Petzold).  She noted that his lack of sleep before having sexual interactions with Doe likely contributed to some of his poor decision making given that he had reported not sleeping for approximately forty hours before picking up Doe.  See Tr. at 72:8-73:9 (Petzold, McMillian).  She stated that Christy's recidivism rate is lower, because of his age, and that, once he reaches the age of sixty, his risk will decrease further.  See Tr. at 74:3-20 (Petzold).  She noted that his lack of prior criminal history also supports a conclusion that he will not recidivate. See Tr. at 75:2-10 (Petzold).  She also stated that it is significant, in terms of Christy's recidivism rate, that he did not commit the offense in a public place or with the use of force.  See Tr. at 75:25-76:15 (Petzold).  She stated that he had no history of anti-social behavior as an adolescent, had stable employment history, and had no pattern of significant drug use.  See Tr. at 76:16-77:3 (Petzold).

Dr. Petzold related that some studies that have concluded that sex offenders have a higher rate of recidivism are unreliable, because they lump too many disparate individuals into one sample group and do not properly account for variations within a larger group.  See Tr. at 83:7-83:25 (Petzold).  She said that treatment for sex offenders has improved since the 1980's and noted that this change has helped lower their risk of recidivism.  See Tr. at 84:4-12 (Petzold).  Dr. Petzold acknowledged that many sex offenders and their victims do not report the crimes, and that sex offenders report only a fraction of their crimes after arrest.  See Tr. at 84:15-85:12 (Petzold).  She related that some sex offenders will be more likely to recidivate than others.  See Tr. at 85:23-86:7

(Petzold).  She stated that, in her history of performing tests to determine a defendant's likelihood of recidivism, she has never seen a defendant score as low for recidivism as Christy.  See Tr. at 87:24-88:1 (McMillian, Petzold).  She recommended that the Court impose a term of 5 years supervised release.  See Tr. at 89:14-22 (Petzold).

Dr. Petzold acknowledged that surveillance of Christy's computer activities would be appropriate while he was on supervised release.  See Tr. at 93:2-9 (Rees, Petzold).  She said that most of the child pornography images she had reviewed that investigators found in Christy's possession appeared to be of older children.  See Tr. at 96:14-18 (Rees, Petzold).  She related that individuals can sometimes become addicted to child pornography and that those individuals would be more likely to relapse into that behavior.  See Tr. at 100:24-101:12 (Rees, Petzold).  She acknowledged that there are limitations to relying on tests that depend upon an individual's self-reported information.  See Tr. at 127:3-14 (Rees, Petzold).  She stated that she did not believe that Christy had withheld information during the interviews she conducted with him.  See Tr. at 128:19-129:3 (Rees, Petzold).  Dr. Petzold noted that, according to the tests she performed, Christy had a 7.62 percent chance of recidivism over the next five years and a 11.21 percent chance of recidivism over the next ten years.  See Tr. at 130:7-9 (Rees, Petzold).  She noted that Christy had told her that there had been accusations against him in relation to improper conduct with other children.  See Tr. at 154:22-24 (Rees, Petzold).

The United States asked, in light of some representations Christy had made that certain chatroom conversations were not attributable to him, that the Court take judicial notice of some of its prior opinions where it had concluded that various chatroom conversations were attributable to Mr. Christy.  See Tr. at 172:8-15 (Rees).  The United States also related that it was willing to have a case agent testify that the child pornography images found in Christy's home were from Christy's

computer media, but suggested that it may be more efficient to have the Court accept that evidence

through a proffer.  See Tr. at 172:16-173:1 (Rees).  Christy did not oppose presenting this evidence

by proffer and stated that he has, through presentation of his expert, conceded that this evidence is

attributable to him.  See Tr. at 173:4-8 (McMillian).

## LAW REGARDING RULE 32

Rule 32 of the Federal Rules of Criminal Procedure provides that a court must, at sentencing,

"for any disputed portion of the presentence report or other controverted matter -- rule on the dispute

or determine that a ruling is unnecessary either because the matter will not affect sentencing, or

because the court will not consider the matter in sentencing."  Fed. R. Crim. P. 32(i)(3)(B).  To

invoke a district court's rule 32 fact-finding obligation, a defendant is required to make "specific

allegations" of factual inaccuracy.  United States v. Rodriguez-Delma, 456 F.3d 1246, 1253 (10th

Cir. 2006).  Accord United States v. Jim, No. 10-2653, 2012 WL 2574807, at *23 (D.N.M. June 22,

2012)(Browning, J.).  Defendants have "an affirmative duty to make a showing that the information

in the PSR was unreliable and articulate the reasons why the facts contained therein [were] untrue

or inaccurate."  United States v. Rodriguez-Delma, 456 F.3d at 1253.  "The fact that a defendant has

objected to the ultimate conclusions drawn by the PSR, however, does not necessarily imply that

a 'controverted matter' exists."  United States v. Rodriguez-Delma, 456 F.3d at 1253 (citing United

States v. Murray, 82 F.3d 361, 363 (10th Cir. 1996)).

## LAW REGARDING U.S.S.G. § 2G1.3

18 U.S.C. § 2423(a) provides:

A person who knowingly transports an individual who has not attained the age of 18
years in interstate or foreign commerce, or in any commonwealth, territory or
possession of the United States, with intent that the individual engage in prostitution,
or in any sexual activity for which any person can be charged with a criminal
offense, shall be fined under this title and imprisoned not less than 10 years or for

life.

18 U.S.C. § 2423(a).  U.S.S.G. § 2G1.3(a)(3) provides a base offense level of 28 "if the defendant was convicted under 18 U.S.C. §§ 2422(b) or 2423(a)."  U.S.S.G. § 2G1.3(a)(3).  U.S.S.G. § 2G1.3(b)(2) provides: "If (A) the offense involved the knowing misrepresentation of a participant's identity to persuade, induce, entice, coerce, or facilitate the travel of, a minor to engage in prohibited sexual conduct; or (B) a participant otherwise unduly influenced a minor to engage in prohibited sexual conduct, increase by 2 levels." U.S.S.G. § 2G1.3(b)(2).  Application note 3(B) to this guideline provides in relevant part:

> In determining whether subsection (b)(2)(B) applies, the court should closely consider the facts of the case to determine whether a participant's influence over the minor compromised the voluntariness of the minor's behavior.  The voluntariness of the minor's behavior may be compromised without prohibited sexual conduct occurring.
>
> . . . .
>
> In a case in which a participant is at least 10 years older than the minor, there shall be a rebuttable presumption that subsection (b)(2)(B) applies.  In such a case, some degree of undue influence can be presumed because of the substantial difference in age between the participant and the minor.

U.S.S.G. § 2G1.3 cmt n. 3(B).

U.S.S.G. § 2G1.3(b)(4) provides: "If (A) the offense involved the commission of a sex act or sexual contact; or (B) subsection (a)(3) or (a)(4) applies and the offense involved a commercial sex act, increase by 2 levels."  U.S.S.G. § 2G1.3(b)(4).  Application note 1 to this guideline provides: "'Sexual act' has the meaning given that term in 18 U.S.C. § 2246(2)."  U.S.S.G. § 2G1.3 cmt. n.1.  18 U.S.C. § 2246(2) provides:

> [T]he term "sexual act" means --
>
> (A)     contact between the penis and the vulva or the penis and the anus, and for purposes of this subparagraph contact involving the penis

occurs upon penetration, however, slight;

(B)     contact between the mouth and the penis, the mouth and the vulva, or the mouth and the anus;

(C)     the penetration, however slight, of the anal or genital opening of another by a hand or finger or by any object, with an intent to abuse, humiliate, harass, degrade, or arouse or gratify the sexual desire of any person; or

(D)     the intentional touching, not through the clothing, of the genitalia of another person who has not attained the age of 16 years with an intent to abuse, humiliate, harass, degrade, or arouse or gratify the sexual desire of any person . . . .

18 U.S.C. § 2246(2).

## LAW REGARDING U.S.S.G. § 2G2.2

For certain child pornography offenses, U.S.S.G. § 2G2.2(b)(4) authorizes a 4-level enhancement to a defendant's base offense level "[i]f the offense involved material that portrays sadistic or masochistic conduct or other depictions of violence."  U.S.S.G. § 2G2.2(b)(4).  The application note to this subsection provides: "Subsection (b)(4) applies if the offense involved material that portrays sadistic or masochistic conduct or other depictions of violence, regardless of whether the defendant specifically intended to possess, access with intent to view, receive, or distribute such materials."  U.S.S.G. § 2G2.2 cmt. n.2.  The New Oxford American Dictionary defines sadistic as "deriving pleasure from inflicting pain, suffering, or humiliation of others."  New Oxford American Dictionary 1537 (A. Stevenson & C. Lindberg eds., 3d ed. 2010).  The New Oxford American Dictionary defines masochism as "the tendency to derive pleasure, esp. sexual gratification, from one's own pain or humiliation."  New Oxford American Dictionary, supra, at 1075.

The United States Court of Appeals for the Tenth Circuit has held that the existence of

images that "depict anal or vaginal penetration of <u>prepubescent</u> children by <u>adults</u>" is normally

sufficient to support a 4-level enhancement under this provision.  <u>United States v. Kimler</u>, 335 F.3d

1132, 1143 (10th Cir. 2003)(emphasis in original).  As support for its conclusion, the Tenth Circuit

quoted a portion of the district court's opinion and "agree[d] with those findings and conclusions

by the [district court]":

> The court concludes that the some [sic] of the images submitted by the Government
> are sufficient to qualify for this enhancement, particularly those showing adults
> engaging in vaginal or anal intercourse with prepubescent minors.  The court
> concludes that one or more such depictions in this case portrays "sadistic conduct"
> within the meaning of the guideline, in that the depictions include and are intended
> to portray the infliction of pain and humiliation on very young minor victims as a
> means of giving sexual gratification to individuals with pedophilic tendencies.

<u>United States v. Kimler</u>, 335 F.3d at 1143 (alteration in original).  The Tenth Circuit also concluded

that expert testimony was not necessary to justify an enhancement under U.S.S.G. § 2G2.2(b)(4) --

then U.S.S.G. § 2G2.2(b)(3):

> Kimler next contends that the district court erred in enhancing his sentence
> for sadism without expert testimony on the matter.  Kimler cites no case in support
> of this argument.  To the contrary, the Fifth and Eleventh Circuits have held that
> expert testimony is not required to justify an enhancement under 2G2.2(b)(3).
> <u>United States v. Lyckman</u>, 235 F.3d 234, 239 n. 22 (5th Cir. 2000)("One hardly
> requires a medical degree to ascertain that vaginal intercourse with an adult male
> would involve pain, both physical and emotional, for a young girl."); <u>United States
> v. Caro</u>, 309 F.3d 1348, 1352 (11th Cir. 2002)("[W]e hold that the district court erred
> in its interpretation that, in order to support a sadistic conduct enhancement, the
> government is required to present expert medical testimony."); <u>see also</u> <u>United States
> v. Delmarle</u>, 99 F.3d 80, 83 (2d Cir. 1996)(holding that "it was within the court's
> discretion to conclude that the subjection of a young child to a sexual act that would
> have to be painful is excessively cruel and hence is sadistic within the meaning of
> 2G2.2(b)(3)").  We agree with those authorities, and conclude that expert testimony
> was not required.

<u>United States v. Kimler</u>, 335 F.3d at 1143-44.  The Tenth Circuit similarly concluded that expert

evidence is not automatically required to determine if the children depicted in images are

prepubescent if "[t]he images themselves provide[] sufficient evidence of prepubescence to support

the sentence enhancement." United States v. Kimler, 335 F.3d at 1144.

In a later unpublished opinion, the Tenth Circuit reiterated some of the principles from

United States v. Kimler:

> In Kimler, we held that an image of an adult sexually penetrating a prepubescent child portrays conduct from which a court can presume that pain and humiliation were inflicted upon the child as a means to give sexual gratification to the viewer of the image and, thus, is inherently sadistic or violent for purposes of § 2G2.2(b)(4). Contrary to Batres's arguments, there is no further burden on the part of the Government to prove that the adult in the image derived sexual pleasure from the act. We also reject Batres's argument that the facial expressions of the child victims or the staging of the photograph to present these heinous acts in a "positive light" is relevant to the inquiry.  Once the district court has found that the images depict the sexual penetration of young children by adults, the enhancement may be properly applied.

United States v. Batres, 284 F.App'x 584, 586 (10th Cir. 2008)(unpublished)(citations omitted).

The Tenth Circuit did not specify in United States v. Batres what form of penetration was involved

in the images in question.  See 284 F.App'x at 284-86.  The United States Court of Appeals for the

Fifth Circuit has held that, in a case involving oral-genital sexual penetration as well as other

penetrations, "penetration of the orifices of prepubescent children" was sufficient to "portray sexual

violence and masochistic conduct":

> In the presentence report (PSR), the probation officer concluded that the images forming the bases for counts 1 and 2 warranted the § 2G2.2(b)(3) four-level increase.  The image in count 1 depicts a nude female minor, hanging upside down while engaging in oral sex with two adult males; in count 2, sexual intercourse with a nude adult male.  Over Terry's objections, the district court adopted the PSR's findings and conclusions.  The court reasoned that the penetration of a child amounted to torture, as well as sadistic and masochistic conduct.

> Terry claims the § 2G2.2(b)(3) increase was not warranted, absent evidence the children were being tortured or otherwise made to suffer pain.  The district court did not clearly err in finding that the photographs -- depicting penetration of the orifices of prepubescent children -- portray sexual violence and sadistic and masochistic conduct.

> The contention that application of the enhancement constitutes "double

-31-

enhancement", because the depiction of "prepubescent children engaged in sexual acts with adult males is what made the photographs pornographic in the first place", is without merit.  Obviously, child pornography can depict sexually explicit conduct without also depicting sexual penetration.

United States v. Terry, 233 F.3d 574, 2000 WL 1468662, at *1-2 (5th Cir. 2000)(unpublished table

decision).  The United States Court of Appeals for the Eighth Circuit has held that "images of an

adult attempting" anal or vaginal penetration of a minor girl by an adult male is "per se sadistic or

violent":

> This circuit recently ruled that images involving the sexual penetration of a minor girl by an adult male and images of an adult male performing anal sex on a minor girl or boy are per se sadistic or violent within the meaning of U.S.S.G. § 2G2.2(b)(3).  Today, we hold that images of an adult attempting such acts are likewise "sadistic" or "violent" for the purpose of U.S.S.G. § 2G2.2(b)(3).  Such images portray conduct sufficient to presume the infliction of mental or physical coercion or abuse upon a minor.  They also bespeak a sadistic intent to achieve sexual pleasure through the necessarily violent depiction of a minor as either a sexual object ripe for or deserving of sexual exploitation, or as a sexual subject desirous of and complicit in his or her own sexual exploitation.

United States v. Belflower, 390 F.3d 560, 562 (8th Cir. 2004).

U.S.S.G. § 2G2.2(b)(5) provides: "If the defendant engaged in a pattern of activity involving

the sexual abuse or exploitation of a minor, increase by 5 levels."   U.S.S.G.  §  2G2.2(b)(5).

Application note 1 to this guideline provides:

> "Pattern of activity involving the sexual abuse or exploitation of a minor" means any combination of two or more separate instances of the sexual abuse or sexual exploitation of a minor by the defendant, whether or not the abuse or exploitation (A) occurred during the course of the offense; (B) involved the same minor; or (c) resulted in a conviction for such conduct.

U.S.S.G. § 2G2.2 cmt. n.1.  This application note also provides:

> "Sexual abuse or exploitation" means any of the following: (A) conduct described in 18 U.S.C. § 2241, § 2242, § 2243, § 2251(a)-(c), 2251(d)(1)(B), § 2251A, § 2260(b), § 2421, § 2422, or § 2423; (B) an offense under state law, that would have been an offense under any such section if the offense had occurred within the special maritime or territorial jurisdiction of the United States; or (c) an

-32-

attempt or conspiracy to commit any of the offenses under subdivisions (A) or (B). "Sexual abuse or exploitation" does not include possession, accessing with intent to view, receipt, or trafficking in material relating to the sexual abuse or exploitation of a minor.

U.S.S.G. § 2G2.2 cmt. n.1.

## <u>RELEVANT LAW REGARDING RESTITUTION</u>

Courts have no inherent power to order restitution; they may only do so when a statute so authorizes.  See United States v. Gordon, 480 F.3d 1205, 1210 (10th Cir. 2007).  18 U.S.C. § 2259 mandates that a district court order a defendant to pay a "victim," defined as an "individual harmed as a result of a commission of a crime under this chapter," 18 U.S.C. § 2259(c), "the full amount of the victim's losses," id. § 2259(b)(1).  The victim's losses include:

For purposes of this subsection, the term "full amount of the victim's losses" includes any costs incurred by the victim for --

(A)   medical services relating to physical, psychiatric, or psychological care;

(B)   physical and occupational therapy or rehabilitation;

(C)   necessary transportation, temporary housing, and child care expenses;

(D)   lost income;

(E)   attorneys' fees, as well as other costs incurred; and

(F)   any other losses suffered by the victim as a proximate result of the offense.

18 U.S.C. § 2259(b)(3)(A)-(F).  "An order of restitution under [18 U.S.C. § 2259] shall be issued and enforced in accordance with section 3664 in the same manner as an order under section 3663A." 18 U.S.C. § 2259(b)(2).

18 U.S.C. § 3663A is part of the Mandatory Victim's Restitution Act, 18 U.S.C. § 3663A ("MVRA").  The MVRA made restitution mandatory in certain cases, "particularly crimes of

violence and theft crimes with identifiable victims who 'suffered a physical injury or pecuniary loss.'" United States v. Serawop, 505 F.3d 1112, 1117 (10th Cir. 2007)(citing 18 U.S.C. § 3663A(c)(1)). "[T]he MVRA does not permit a court to consider a defendant's economic circumstances when it imposes restitution." United States v. Harwood, No. 10-2737, 2012 WL 592421, at *15 (D.N.M. Feb. 13, 2012)(Browning, J.)(citing United States v. Serawop, 505 F.3d at 1118). The term "victim," under the MVRA means:

> a person directly and proximately harmed as a result of the commission of an offense as a result of the commission of an offense for which restitution may be ordered . . . .
> In the case of a victim who is under 18 years of age, incompetent incapacitated, or deceased, the legal guardian of the victim or representative of the victim's estate, another family member, or any other person appointed as suitable by the court, may assume the victim's rights under this section, but in no event shall the defendant be named as such representative or guardian.

18 U.S.C. § 3663A(a)(2). Any dispute "as to the proper amount or type of restitution shall be resolved by the court by the preponderance of the evidence" and the "burden of demonstrating the amount of loss shall be on the attorney for the Government." 18 U.S.C. § 3664(e). Accord United States v. Serawop, 505 F.3d at 1117 (stating that the United States bears the burden of proving amount of loss under the MVRA). To the extent that the defendant's financial resources are relevant in the restitution analysis, such as when a restitution award is not mandatory, the burden of demonstrating the defendant's financial resources and the financial needs of the defendant's dependents is on the defendant. See 18 U.S.C. § 3664(e) ("The burden of demonstrating the financial resources of the defendant and the financial needs of the defendant's dependents, shall be on the defendant."). "The burden of demonstrating such other matters as the court deems appropriate shall be upon the party designated by the court as justice requires." 18 U.S.C. § 3664(e).

## ANALYSIS

The Court will overrule many of Christy's objections to the Re-Disclosed PSR on the basis

that: (i) the USPO has corrected information in the Re-Disclosed PSR to account for his objections; (ii) the parties reached a compromise at the sentencing hearing regarding some of the statements Christy found objectionable; and (iii) there is sufficient evidence to support a finding by a preponderance of the evidence that certain facts Christy finds objectionable have occurred. Furthermore, Christy did not pursue many of his factual objections at the sentencing hearing, and, rather than ruling on those objections, the Court will disregard certain facts he finds objectionable when arriving at his sentence.  The Court concludes that a 2-level enhancement under U.S.S.G. § 2G1.3(b)(2) is appropriate, given that Christy has not presented evidence to rebut the rebuttable presumption of undue influence.  The Court finds that a 2-level enhancement under U.S.S.G. § 2G1.3(b)(4) is appropriate, because Christy engaged in sexual contact with Doe -- a victim of the offense -- within the meaning of U.S.S.G. § 2G1.3(b)(4).  The Court concludes that a 4-level enhancement under U.S.S.G. § 2G2.2(b)(4) is not appropriate, given that the child pornography image in question is not sadistic or masochistic.  The Court concludes that a 5-level enhancement under U.S.S.G. § 2G2.2(b)(5) is appropriate, given that Christy engaged in a pattern of activity involving the sexual abuse or exploitation of a minor.  While the Court concludes that no amount of restitution is appropriate for Vicky given the lack of causation and lack of proof of her damages, the parties' stipulation to $500.00 in restitution relieves the United States of the burden of proving that this restitution amount is appropriate.  The Court sentences Christy, as to Counts 1 and 2, to 108-months imprisonment and a lifetime term of supervised release, because that sentence best reflects the factors contained in 18 U.S.C. § 3553(a).

I.      **THE COURT WILL OVERRULE CHRISTY'S OBJECTIONS TO THE FACTUAL PORTION OF THE RE-DISCLOSED PSR, BUT WILL MAKE SOME MODIFICATIONS TO THE RE-DISCLOSED PSR'S RECITATION OF THE FACTS CONSISTENT WITH THE PARTIES' AGREEMENT AND WILL NOT CONSIDER OTHER FACTS WHEN SENTENCING CHRISTY.**

The Court notes that, as a threshold manner, Christy did not pursue many of his objections to the factual portions of the Re-Disclosed PSR at his sentencing hearing.  Rule 32 provides that a court must, at sentencing, "for any disputed portion of the presentence report or other controverted matter -- rule on the dispute or determine that a ruling is unnecessary either because the matter will not affect sentencing, or because the court will not consider the matter in sentencing." Fed. R. Crim. P. 32(i)(3)(B).  To invoke a district court's rule 32 fact-finding obligation, a defendant is required to make "specific allegations" of factual inaccuracy.  United States v. Rodriguez-Delma, 456 F.3d at 1253.  Defendants have "an affirmative duty to make a showing that the information in the PSR was unreliable and articulate the reasons why the facts contained therein [were] untrue or inaccurate."  United States v. Rodriguez-Delma, 456 F.3d at 1253.  "The fact that a defendant has objected to the ultimate conclusions drawn by the PSR, however, does not necessarily imply that a 'controverted matter' exists."  United States v. Rodriguez-Delma, 456 F.3d at 1253.

A.      **THE COURT WILL OVERRULE CHRISTY'S OBJECTION TO THE CUSTODIAL STATUS PORTION OF THE RE-DISCLOSED PSR.**

In his Objections, Christy "objects to the characterization, under the heading 'Custodial Status,' of the first 209 days of Defendant's confinement as 'state custody,'" on the basis that "this investigation has at all times been a federal investigation."  Objections at 1.[4]  In the Second Addendum to PSR, the USPO makes some of Christy's requested changes regarding how much time he spent in state custody, but maintains that Christy spent time in state custody.  See Second

---

[4]Christy did not pursue this objection at the sentencing hearing on May 23, 2012.

Addendum to PSR at 2.  Ultimately, this matter has no impact on the Court's sentence, and a ruling on this objection is unnecessary.  <u>See</u> Fed. R. Crim. P. 32(i)(3)(B) (relating that a district court can "rule on the dispute or determine that a ruling is unnecessary either because the matter will not affect sentencing").  Alternatively, the Court will overrule the objection, because the mere fact that federal investigators played a dominant role in the prosecution does not change the underlying fact that Christy spent some time in state custody.  It is important to emphasize that Christy does not object to the calculation of his credit in the Re-Disclosed PSR, but rather the characterization of some of his time in confinement as state custody.

### B.   THE COURT WILL OVERRULE CHRISTY'S OBJECTIONS REGARDING THE PORTIONS OF THE RE-DISCLOSED PSR THAT PROVIDE BACKGROUND FACTS REGARDING RESTITUTION.

Christy objects to various statements in the PSR regarding the restitution he owes given that he has already stipulated "to pay the sum of $500.00 restitution for the alleged victims in Count 2 of the information."  Objections at 1-2, 9.  To invoke a district court's rule 32 fact-finding obligation, a defendant is required to make "specific allegations" of factual inaccuracy.  <u>United States v. Rodriguez-Delma</u>, 456 F.3d at 1253.  Christy makes no allegations that the statements in the Re-Disclosed PSR regarding restitution calculations are inaccurate as a factual matter or are inaccurate recitations of the proper amount of restitution specified by statute or under the guidelines.  That he has stipulated to a particular amount of restitution does not mean that these portions of the Re-Disclosed PSR are factually or legally inaccurate.  He has made no argument that they are factually or legally inaccurate.  A court has the obligation to consider the relevant statutes and guideline computations when arriving at a defendant's sentence.  See <u>Kimbrough v. United States</u>, 552 U.S. 85, 564 (2007)("A district judge must include the Guidelines range in the array of factors warranting consideration.").  Thus, it is proper for the Court to have this information regarding

restitution, which is largely background information, before it.

### C.   THE COURT WILL OVERRULE CHRISTY'S OBJECTION REGARDING THE LOCATION OF HIS CONFINEMENT IN A HALFWAY HOUSE AS MOOT.

Christy objects to a statement in paragraph 6 of the PSR that he was placed in a halfway house in Las Cruces, New Mexico as factually inaccurate.  See Objections at 2.  As the USPO states in the Second Addendum to PSR, it has made Christy's requested change regarding the halfway house in which he lived.  See Second Addendum to PSR at 6.  Consequently, because the USPO has made Christy's requested change, the objection is now moot.  The Court will overrule this objection as moot.

### D.   THE COURT WILL OVERRULE CHRISTY'S OBJECTION TO THE STATEMENTS IN PARAGRAPH 8 AND 10 OF THE RE-DISCLOSED PSR THAT SOME PHOTOGRAPHS HE EXCHANGED WITH DOE WERE SEXUALLY EXPLICIT.

Christy objects to "the statements contained in paragraph 8 of the presentence report insofar as it states that emails and pictures exchanged between Mr. Christy" and Doe were "sexually explicit."  Objections at 2.  Similarly, Christy "objects to the statement at the end of paragraph 10, which characterizes the photographs and conversations between Mr. Christy and Jane Doe as sexually explicit," because "[a]lthough the pictures depicted nudity, none were sexually explicit, and though the conversations contained discussions of Jane Doe's desire to establish a dominant/submissive relationship with an older man, none described sexual acts."  Objections at 3.

In his Plea Agreement, Christy stipulates: "I engaged in sexual conversations with Jane Doe, a person I knew to be 16 years of age.  These sexual conversations between Jane Doe and myself included the exchange of sexually explicit images of each other and discussions about sexual activities between the two of us."  Plea Agreement ¶ 10, at 6.  A preponderance-of-the-evidence

standard applies at sentencing.  See United States v. Manatau, 647 F.3d 1048, 1054 n.2 (10th Cir. 2011)(noting that the preponderance-of-the-evidence standard applies during sentencing); United States v. Gomez-Arrellano, 5 F.3d 464, 466 (10th Cir. 1993)("Sentencing determinations of relevant conduct and offense characteristics must be supported by a preponderance of the evidence.").  When a defendant admits to facts in a plea agreement, the Court can properly rely on those admissions to conclude that, by a preponderance of the evidence, a given fact occurred.  See United States v. Sanders, 990 F.2d 582, 585 (10th Cir. 1993)("The district court could properly have found by a preponderance of the evidence that defendant possessed the guns in connection with his drug trafficking as he admitted in his written plea statement."), overruled on other grounds by United States v. Gomez-Arrellano, 5 F.3d 464, 466-67 (10th Cir. 1993).  Given that Christy has admitted to these facts in his Plea Agreement, there is sufficient evidence to find that these photographs were sexually explicit by a preponderance of the evidence.  Furthermore, he provides no explanation, beyond a conclusory assertion that the photographs are not sexually explicit, explaining why they are not sexually explicit.  See Objections at 3 (stating that "[a]lthough the pictures depicted nudity, none were sexually explicit").  To invoke a district court's rule 32 fact-finding obligation, a defendant is required to make "specific allegations" of factual inaccuracy.  United States v. Rodriguez-Delma, 456 F.3d at 1253.  Thus, the Court will overrule the objection regarding the sexually explicit nature of the photographs.

Regarding the electronic-mail-transmission discussions that Christy had with Doe, he does not dispute that sexual conversations occurred.  Rather, he disputes that the conversations were sexually explicit.  He argues that, "[a]lthough the pictures depicted nudity, none were sexually explicit, and though the conversations contained discussions of Jane Doe's desire to establish a dominant/submissive relationship with an older man, none described sexual acts."  Objections at 3.

-39-

His argument is largely a semantical one given that he does not deny the existence of the electronic mail transmissions. He has stipulated in the Plea Agreement that he had "sexual conversations" with Doe that involved "discussions about sexual activities between the two of us." Plea Agreement ¶ 10, at 6. Ultimately, whether the conversations were sexually explicit has no impact on the Court's sentence, and a ruling on this objection is unnecessary. See Fed. R. Crim. P. 32(i)(3)(B) (relating that a district court can "rule on the dispute or determine that a ruling is unnecessary either because the matter will not affect sentencing").

### E. CONSISTENT WITH THE PARTIES' AGREEMENT AT THE SENTENCING HEARING, THE COURT WILL MODIFY THE RE-DISCLOSED PSR REGARDING THE FACTS DISCUSSING WHEN CHRISTY BECAME AWARE OF DOE'S AGE.

Christy "objects to the suggestion, contained in paragraph 8, that Mr. Christy was aware of the female's true age at the time the emails and photos were exchanged." Objections at 2. Christy similarly

> objects to the statement in paragraph 30 of the PSR that 'In sum, Mr. Christy communicated with Jane Doe (juvenile female) for two months via email and online chats, knowing she was a minor.", [sic] as this statement is a total fabrication, demonstrably untrue, if one makes a mere cursory examination of the emails exchanged and evidence in this case, i.e., that the sites on which Mr. Christy encountered "Jane Doe" required a registrant to be at least eighteen years of age, that "Jane Doe's" profiles on these sites all listed her age as being at least that old, and that no indication of her true age occurred until November 3, 2009.

Objections at 8. At the sentencing hearing on May 23, 2012, the parties then came to an agreement to modify the Re-Disclosed PSR to state that Christy knew that Doe was sixteen before he left to pick her up in California and to omit any reference to when he specifically became aware of her age. See Tr. at 13:12-20 (Kastrin, Court, McMillian). In light of the parties' agreement to modify the Re-Disclosed PSR in this manner, this objection is now moot. Thus, the Court will overrule this objection as moot.

-40-

**F.    THE COURT WILL OVERRULE CHRISTY'S OBJECTIONS REGARDING THE CIRCUMSTANCES BEHIND HIS MEETING WITH DOE.**

Christy "objects to the statement contained in paragraph 9 that 'Mr. Christy had arranged a meeting with Jane Doe (juvenile female), in the middle of the night, for Jane Doe (juvenile female) to run away with Mr. Christy,'" because Doe "threatened to harm herself if Mr. Christy did not come get her." Objections at 2. The Court has already found the following fact by a preponderance of the evidence: "Through the course of an interview [with a police officer], Christy told [the officer] how he and K.Y. made plans for him to go get her . . . ." Memorandum Opinion and Order ¶ 101, at 17, filed May 18, 2011 (Doc. 120)("May 18, 2011 MOO"). The Court also found:

> In her interview with an FBI special agent, K.Y. stated that she met Christy over the internet and that, after two or three communications, she told Christy her real age; she described them making plans for him to get her, and stated that they had sex in Needles and in Albuquerque.

May 18, 2011 MOO ¶ 112, at 18. Thus, regarding the majority of this statement in paragraph 9 of the Re-Disclosed PSR, the Court has already concluded that the conduct occurred by a preponderance of the evidence. Christy has not argued that the remaining details of the statement are factually inaccurate -- that he picked Doe up in the middle of the night or that she ran away with him. To invoke a district court's rule 32 fact-finding obligation, a defendant is required to make "specific allegations" of factual inaccuracy. United States v. Rodriguez-Delma, 456 F.3d at 1253. Defendants have "an affirmative duty to make a showing that the information in the PSR was unreliable and articulate the reasons why the facts contained therein [were] untrue or inaccurate." United States v. Rodriguez-Delma, 456 F.3d at 1253.

Christy largely presents a mitigating circumstance for his conduct. He does not argue that the Re-Disclosed PSR's statement in paragraph 9 is factually inaccurate. The Court has already found that Christy stated "that he felt bad for [Doe], and made a snap decision to go help her and/or

-41-

rescue her." May 18, 2011 MOO ¶ 99, at 17.  "The fact that a defendant has objected to the ultimate

conclusions drawn by the PSR, however, does not necessarily imply that a 'controverted matter'

exists."   United States v. Rodriguez-Delma, 456 F.3d at 1253.   The Court will consider this

mitigating circumstance when arriving at its sentence for Christy.  Thus, the Court will overrule the

objection.

> ### G.    THE COURT WILL OVERRULE CHRISTY'S OBJECTIONS REGARDING HOW MANY OFFICERS LOOKED IN THE WINDOW OF HIS HOME AS MOOT.

Christy "objects to the statement in paragraph 9 that 'deputies' looked through a window,

and requests that the statement be changed to reflect the actual truth, that only Deputy Littlefield

looked through a crack in the blinds of a window, and no one else." Objections at 2.  Christy objects

to a similar statement in paragraph 15 of the PSR.  See Objections at 3.[5]  In the Second Addendum

to PSR, the USPO relates that it has made Christy's requested changes regarding the number of

deputies who looked through the window.  Second Addendum to PSR at 6.  Thus, given that the

USPO has made Christy's requested change, his objection is moot.  Consequently, the Court will

overrule his objection.

> ### H.    THE COURT DOES NOT FIND IT NECESSARY TO RULE ON CHRISTY'S OBJECTION REGARDING THE MANNER IN WHICH THE OFFICERS FOUND DOE IN HIS HOME.

Christy "further objects to the statement in paragraph 9 that the female 'was tied up by her

wrist, and neck with straps, and was hanging from ceiling rafters,'" because this statement does not

accurately reflect what occurred.  Objections at 3.[6]  He argues that this statement is "patently

---

[5]Christy did not pursue these objections at the sentencing hearing on May 23, 2012.

[6]Christy did not pursue this specific objection at the sentencing hearing on May 23, 2012.

untrue," given that Doe "was standing with her feet on the floor, with nothing touching her neck, and had padded velcro 'cuffs' on her wrists, but was not suspended, and was completely free to move around or remove the cuffs at will." Objections at 3. The Court considers this fact to be a peripheral one given that there is no dispute that Doe consensually engaged in sexual activities with Doe. See May 18, 2011 MOO at 50 (noting that Doe "was able to consent to sexual contact under New Mexico law"). Christy's conduct may have otherwise been illegal, but his sexual acts with Doe were consensual. Consequently, this matter will not affect the sentence the Court will impose on Christy. See Fed. R. Crim. P. 32(i)(3)(B) (stating that, as opposed to having to "rule on the dispute" regarding a fact in a presentence investigation report, a court can "determine that a ruling is unnecessary either because the matter will not affect sentencing, or because the court will not consider the matter in sentencing"). Thus, it is not necessary to rule on this objection.

## I.   THE COURT WILL OVERRULE CHRISTY'S OBJECTIONS REGARDING THE CHATROOM CONVERSATIONS THAT HE HAD WITH MINORS.

Christy "objects to the statement in paragraph 9 that he 'had been actively using the Yahoo chat service since early 2003, to meet young girls and develop a relationship,'" because the statement "implies that Mr. Christy sought out young girls for improper purposes, when, in fact, Mr. Christy did communicate with numerous persons on the Yahoo chat service, of unknown gender and age, none of which Mr. Christy ever met personally, and none of whose actual identities have been established." Objections at 3. Christy makes a variety of other similar objections. Christy also argues that no "minors [have] been actually identified with whom Mr. Christy had sexual conversations on the internet." Objections at 9. Christy objects to the "entire contents of paragraph 34, as all such conversations were 'roll playing,' in which Mr. Christy attempted to identify persons in chat rooms by assuming the rolls that they, themselves led," because "[n]one of this behavior is

'offensive behavior,' as no minor has ever actually been identified as the recipient of any of these communications." Objections at 9. Christy "makes the same objection to paragraph 35, as to paragraph 34, for the same reasons." Objections at 9.

Earlier in this proceeding, the United States presented to the Court a variety of chatroom conversations in which Christy engaged. See Memorandum Opinion and Order at 5-7, filed June 28, 2010 (Doc. 21)("June 28, 2010 MOO")("The voluminous chat transcripts the forensic examiner recovered include sexual conversations between Christy and other, including some identifying themselves as minors."). The Court relied on that evidence to detain Christy before trial:

> Moreover, the evidence the United States presented -- both the evidence of Christy's actions with Jane Doe and his internet chats -- show that Christy is a person who has an ongoing sexual interest in children and is willing to act on such interest. The degree of harm and the length of time over which Christy has engaged in such behavior renders him a danger to the community. By his admission, Christy has engaged in multiple acts of hands-on victimization of children. In the internet chat from August 26, 2009, Christy stated that he had sexual relations with a twelve-year old boy within the last few months and contains statements suggesting he was grooming a twelve-year old girl down the street "who has a bit of a crush on [him]." United States Exhibit 8. Christy's admissions cause the Court great concern about the degree of harm he is capable of causing to the community. Christy suggests that much of his chat involves fantasy. That characterization may be fair for some statements, but he has not denied that he has had sex with multiple under-aged children. In the face of these unretracted and uncontested admissions, the Court concludes that the record shows, by clear-and-convincing evidence, that Christy poses a threat of continuing to groom and molest children.

> To some degree, the third factor weighs against detention. Christy has no criminal history and has some family ties to the community. Since his arrest, however, he has lost his employment. He has no wife or children and his sister, who testified on his behalf, had no knowledge of Christy's actions until she read about them in a newspaper. While the Court recognizes that Christy has no criminal history, the seized evidence indicates that Christy has a history of enticing children, and has no criminal history only because he has avoided being caught. Christy is an intelligent man, with a degree in engineering, and his actions indicate that he is a calculating and manipulative man. He carefully planned his actions with Jane Doe, instructed her on how not to be detected, and concocted a cover story of a suicide attempt for her to use.

June 28, 2010 MOO at 13-14.

The United States does not have the obligation to prove facts beyond a reasonable doubt at sentencing, but only by a preponderance of the evidence.  See United States v. Manatau, 647 F.3d at 1054 n.2.  Given that there are various chatroom conversations available where the people with which Christy was communicating self-identified as minors, there is sufficient evidence for the Court to find by a preponderance of the evidence that Christy has been communicating with minors. It is not necessary that the United States prove the individual identity of each person Christy spoke with for the Court to reach this conclusion.  Requiring them to assume such a burden would be akin to requiring the United States to prove these facts beyond a reasonable doubt.  Furthermore, the statement in the Re-Disclosed PSR relates that Christy wanted to meet young girls and develop a relationship.  See Re-Disclosed PSR ¶ 9, at 6-7.  It says nothing about whether Christy had an inappropriate purpose for engaging in this conduct.  In light of other facts in the Re-Disclosed PSR, one may be able to use this fact to draw that inference, but nothing in this statement relates that Christy had an improper purpose in developing these relationships.  To invoke a district court's rule 32 fact-finding obligation, a defendant is required to make "specific allegations" of factual inaccuracy.  United States v. Rodriguez-Delma, 456 F.3d at 1253.  Defendants have "an affirmative duty to make a showing that the information in the PSR was unreliable and articulate the reasons why the facts contained therein [were] untrue or inaccurate."  United States v. Rodriguez-Delma, 456 F.3d at 1253.  Furthermore, there is significant evidence before the Court supporting a conclusion by a preponderance of the evidence that Christy, in light of the sexual nature of these chatroom conversations, wanted to develop sexual relationships, at least over the internet, with these minors.  The USPO provides illustrative examples from Christy's chatroom conversations that indicate that Christy has an interest in developing sexual relationships through chatroom

conversations:

> In July 2009, Mr. Christy discussed sexual matters with a 12 year old, stating he was "not far away by plane." During the same conversation, Mr. Christy admitted he had a 'neighborhood girl' as his "playmate," claiming her grandfather didn't know. Mr. Christy further admitted he liked younger than 12 and would go "9 to 10 year olds." In a chat from July 23, 2009, the Defendant discussed being "lovers" with his wife and daughter, if he had one. In this same chat, Mr. Christy discusses with someone that if he lived with her and her child, he (Mr. Christy) would [be] able to teach her baby, specifically stating "you have a fresh daughter." In another, dated on August 23, 2009, Mr. Christy stated "I'd always thought when my daughter first fed from her mother that I would masturbate and put cum on her nipple so I could nourish my girl too." He further states "I'd want us all to sleep in one bed with no barriers. Daddy's cock should be pacifying to his kids. They should feel safe and secure and loved sucking him fall to sleep with his cock in their mouth." Additionally, in a chat from August 24, 2009, the Defendant admitted he is "drawn to open sex in his own family," and added that children who have sexual relationships in their own families are "more balanced than most." Mr. Christy also acknowledged that "even though he is more drawn to girls, his sons would know him sexually too." In a chat dated August 26, 2009, Mr. Christy admitted to performing sex on a 12 year old neighborhood boy within the last three months, and a 14 year old girl a few years ago.

Re-Disclosed PSR ¶ 34, at 13-14. Consequently, the Court will overrule this objection.

> ### J.   THE COURT DOES NOT FIND IT NECESSARY TO RULE ON CHRISTY'S OBJECTION REGARDING ALLEGED CAMERA-LIKE FLASHES OFFICERS REPORT THAT THEY SAW IN HIS HOME.

Christy "objects to the reference, in paragraph 15, to 'camera-like' flashes, as Deputy Littlefield's testimony was adamant in stating that he had seen camera flashes, in order to support his assertion that child pornography was being produced." Objections at 3.[7] Christy makes no assertion that the statement is factually inaccurate that this officer saw camera-like flashes. To invoke a district court's rule 32 fact-finding obligation, a defendant is required to make "specific allegations" of factual inaccuracy. United States v. Rodriguez-Delma, 456 F.3d at 1253. Defendants have "an affirmative duty to make a showing that the information in the PSR was

_____

[7]Christy did not pursue this objection at the sentencing hearing on May 23, 2012.

unreliable and articulate the reasons why the facts contained therein [were] untrue or inaccurate."
United States v. Rodriguez-Delma, 456 F.3d at 1253. Ultimately, the Court considers this fact to be a peripheral one in light of Doe engaging in consensual sex with Christy. The Court does not find it necessary to rule on this objection given that it will not affect the Court's ultimate sentence and because the Court will not consider this fact, that there were camera-like flashes in Christy's home when officers approached the home, when sentencing Christy. See Fed. R. Crim. P. 32(i)(3)(B) (stating that, as opposed to having to "rule on the dispute" regarding a fact in a presentence investigation report, a court can "determine that a ruling is unnecessary either because the matter will not affect sentencing, or because the court will not consider the matter in sentencing").

### K.   THE COURT DOES NOT FIND IT NECESSARY TO RULE ON CHRISTY'S OBJECTIONS REGARDING PARAGRAPH 17 OF THE RE-DISCLOSED PSR.

Christy objects to references in paragraph 17 of the Re-Disclosed PSR to one of the photographs Doe allegedly sent where she was posing nude, given that they are included "for shock value" and to suggest that he "had something to do with the production of these photos." Objections at 3-4.[8] Christy also relates that Doe had already sent these photos to another person and that Doe's sister took the pictures, such that "if these statements are to be accurate, they either have to include the whole truth of the matter, or be entirely stricken." Objections at 4. Christy also asserts that the statement is not relevant, because he still believed that Doe was eighteen. Paragraph 17 of the Re-Disclosed PSR relates:

> One of the photographs sent to Mr. Christy by Jane Doe (juvenile female) showed Jane Doe (juvenile female) posing nude with a 'medicine ball' inserted in her anus, and the other where Jane Doe (juvenile female) posed nude with her legs spread and held over her head, with her breasts exposed.

---

[8]Christy did not pursue this specific objection at the sentencing hearing on May 23, 2012.

Re-Disclosed PSR ¶ 17, at 9.

Christy makes no assertion that the statement is inaccurate.  To invoke a district court's rule 32 fact-finding obligation, a defendant is required to make "specific allegations" of factual inaccuracy.  United States v. Rodriguez-Delma, 456 F.3d at 1253.  Defendants have "an affirmative duty to make a showing that the information in the PSR was unreliable and articulate the reasons why the facts contained therein [were] untrue or inaccurate."  United States v. Rodriguez-Delma, 456 F.3d at 1253.  Furthermore, nothing in this statement relates that Christy had anything to do with producing child pornography materials.  To the extent Christy argues that the statement is irrelevant, this evidence falls within the definition of relevant conduct under the guidelines.  U.S.S.G. § 1B1.3 defines relevant conduct as "all acts and omissions committed, aided, abetted, counseled, commanded, induced, procured, or willfully caused by the defendant" which "occurred during the commission of the offense of conviction, in preparation for that offense, or in the course of attempting to avoid detection or responsibility for that offense."   U.S.S.G.  § 1B1.3(a)(1). Ultimately, these facts, that Doe sent to Christy a photo showing her posing nude with a medicine ball inserted in her anus, and that she sent him a photo where she was posing nude with her legs spread and held over her head with her breasts exposed, is a peripheral one that the Court need not consider in arriving at its sentence for Christy.  Thus, this statement is not one that will affect the Court's sentence for Christy, and the Court will not consider it when sentencing Christy.  See Fed. R. Crim. P. 32(i)(3)(B) (stating that, as opposed to having to "rule on the dispute" regarding a fact in a presentence investigation report, a court can "determine that a ruling is unnecessary either because the matter will not affect sentencing, or because the court will not consider the matter in sentencing").

### L.     THE COURT WILL OVERRULE CHRISTY'S OBJECTIONS TO PARAGRAPHS 18 AND 19 OF THE RE-DISCLOSED PSR.

Christy "objects to the statements in paragraph 18 where in it is stated that Mr. Christy stated that he had sex with the juvenile female twice, once in Needles, California, and once in Albuquerque, New Mexico," given that "any consensual acts between Mr. Christy and Jane Doe which occurred in the State of New Mexico were legal acts, as the age of consent in New Mexico is 16 years of age." Objections at 4. Christy "objects to the statements in paragraph 19 of the PSR which begin with Mr. Christy's admission that he knew Jane Doe was sixteen years old on November 6, 2009, and concluding with Mr. Christy's alleged statement that 'the emails between him and Jane Doe (juvenile female) were normal,'" because the age of consent in New Mexico is sixteen, making these statements misleading. Objections at 4-5. The relevant portions of paragraph 19 of the Re-Disclosed PSR are as follows:

> It should be noted the detective received a copy from the Westminster Police Department of an email, dated November 6, 2009, which showed that Mr. Christy knew Jane Doe (juvenile female) was 16 years old. When the detective confronted Mr. Christy as to the email sent by Mr. Christy to Jane Doe (juvenile female on November 6, 2009, titled "Just a Note," he admitted knowing Jane Doe (juvenile female) was in fact 16. In Mr. Christy's admissions, he also admitted he had performed oral sex on Jane Doe (juvenile female), having her touch and rub his penis, buying dog cages, and bondage items to satisfy Jane Doe's (juvenile female) sexual fantasies. Mr. Christy admitted he had taken one picture of Jane Doe (juvenile female) while at his residence where she was in the kitchen making dinner wearing only underwear. When the detective informed Mr. Christy a search warrant would be executed at his residence, he advised that deputies would find photographs of his "nudist friends" on his computer. Mr. Christy further advised that the emails between him and Jane Doe (juvenile female) were normal.

Re-Disclosed PSR ¶ 19, at 9.

Christy makes no argument that these statements are factually inaccurate. To invoke a district court's rule 32 fact-finding obligation, a defendant is required to make "specific allegations" of factual inaccuracy. United States v. Rodriguez-Delma, 456 F.3d at 1253. Defendants have "an

affirmative duty to make a showing that the information in the PSR was unreliable and articulate the reasons why the facts contained therein [were] untrue or inaccurate." United States v. Rodriguez-Delma, 456 F.3d at 1253.  While it is true that Doe was able to consent to sex in New Mexico, Christy has pled guilty to conduct that would constitute several different sex-related offenses under New Mexico law.  The Information charges Christy, in Count 1, with the following:

> From on or about October 1, 2009 to on or about November 9, 2009, in Bernalillo County and elsewhere, in the District of New Mexico, the defendant **EDWARD CHRISTY**, knowingly persuaded, induced, enticed, and coerced Jane Doe to travel in interstate and foreign commerce to engage in any sexual activity for which the defendant could be charged with a criminal offense, that being Criminal Sexual Penetration in the Second Degree, in violation of N.M. Stat. Ann. § 30-9-11(E)(5), Contributing to the Delinquency of a Minor, in violation of N.M. Stat. Ann. § 30-6-3, and Unlawful Custodial Interference, in violation of N.M. Stat. Ann. § 30-4-4(c).
>
> In violation of 18 U.S.C. § 2422(a).

Information at 1.  Christy pled guilty to Count 1 in the Plea Agreement.  See Plea Agreement at 2. More importantly, he conceded at the sentencing hearing that he knew, as of November 6, 2009 -- before he engaged in intercourse with Doe -- that she was sixteen.  See Tr. at 7:20-8:2 (McMillian). Furthermore, he stipulated in his Plea Agreement: "Between October 1, 2009 and November 9, 2009, I knowingly persuaded, induced, and enticed Jane Doe to travel in interstate commerce to engage in any sexual activity for which I could be charged."  Plea Agreement ¶ 10, at 6.  He also stipulates that he "engaged in sexual conversations with Jane Doe, a person I knew to be 16 years of age."  Plea Agreement ¶ 10, at 6.

By pleading guilty to Count 1, Christy has admitted that those sexual encounters constitute criminal conduct.  In his Plea Agreement, he pled guilty to Count 1, charging him with a violation of 18 U.S.C. § 2422(a).  The Information related that Christy had engaged in conduct that would violate several New Mexico statutes, including N.M.S.A. 1978, §§ 30-6-3 and 30-9-11(E)(5).

-50-

N.M.S.A. 1978, § 30-6-3 provides:

> Contributing to the delinquency of a minor consists of any person committing any act or omitting the performance of any duty, which act or omission causes or tends to cause or encourage the delinquency of any person <u>under the age of eighteen years</u>.
>
> Whoever commits contributing to the delinquency of a minor is guilty of a fourth degree felony.

N.M.S.A. 1978, § 30-6-3 (emphasis added).  N.M.S.A. 1978, § 30-9-11(E)(5) provides: "Criminal sexual penetration in the second degree consists of all criminal sexual penetration perpetrated . . . in the commission of another felony."  N.M.S.A. 1978, § 30-9-11(E)(5).  N.M.S.A. 1978, § 30-6-3 is a felony offense for which Christy admitted to conduct that would violate the statute.  <u>See</u> N.M.S.A. 1978, § 30-6-3.  Even if the age of consent in New Mexico is sixteen,[9] Christy has still pled guilty to conduct that would violate these other statutes.

In light of Christy's concessions and his admissions in the Plea Agreement, there is sufficient evidence to conclude that Christy knew Doe was a minor before he engaged in sexual intercourse with her.  Thus, his argument that these factual statements in paragraphs 18 and 19 of the PSR are

---

[9]The Court explained New Mexico's age of consent in its May 18, 2011 MOO:

> New Mexico does not have a statute stating that a sixteen-year old can consent to sexual contact, but New Mexico's statute regarding criminal sexual penetration states that criminal sexual penetration in the fourth degree consists of criminal sexual penetration "perpetrated on a child thirteen to sixteen years of age when the perpetrator is at least eighteen years of age and is at least four years older than the child and not the spouse of that child." N.M.S.A. 1978, § 30-9-11G. New Mexico courts have interpreted this statute to mean that the victim must be at least thirteen but less than sixteen.

May 18, 2011 MOO at 60.  Accordingly, while a defendant can legally, under New Mexico's criminal sexual penetration statute, have sex with an individual that is sixteen, the legal penetration may violate other state statutes if the victim is less than eighteen.  Christy has pled guilty to engaging in sexual conduct that would violate other New Mexico statutes.

irrelevant given that Doe was able to consent to sexual intercourse is not persuasive.  His conduct as related in paragraphs 18 and 19 of the PSR is relevant conduct, as it relates to the offenses to which he has pled guilty.  See U.S.S.G. § 1B1.3(a)(1).

Christy also asserts that "it should be clear from the email in question, that Mr. Christy attempted to call off the meeting after learning of Jane Doe's true age" and that "this critical piece of information needs to be included."  Objections at 5.  Regarding this portion of his objection, Christy is not objecting to any factual inaccuracy in the Re-Disclosed PSR, but is rather asking the Court to consider a mitigating circumstance to give the incident more context.  The Court will consider this mitigating circumstance when arriving at its sentence for Christy.

### M.   THE COURT WILL OVERRULE CHRISTY'S OBJECTION TO THE RE-DISCLOSED PSR'S ALLEGED FAILURE TO INCLUDE A STATEMENT REGARDING DOE TAKING MEDICATION FOR DELUSIONAL THINKING.

Christy "objects to the failure to include the statement by Jane Doe during her interview with the FBI that she took medication for 'delusional thinking' in any of the paragraphs relating to her interview," because this information bears on Doe's credibility.  Objections at 5.[10]  Christy offers no evidence to support his assertion that this event occurred.  A preponderance-of-the-evidence standard applies at sentencing.  See United States v. Manatau, 647 F.3d at 1054 n.2 (noting that the preponderance-of-the-evidence standard applies during sentencing); United States v. Gomez-Arrellano, 5 F.3d at 466 ("Sentencing determinations of relevant conduct and offense characteristics must be supported by a preponderance of the evidence.").  If Christy wants to prove that this event occurred, he has an obligation to do so by a preponderance of the evidence.  He has not done so.  Thus, the Court will overrule his objection.  The Court will, nevertheless, consider this argument

---

[10]Christy did not pursue this objection at the sentencing hearing on May 23, 2012.

as a mitigating circumstance during his sentencing.

> **N.**    **THE COURT DOES NOT FIND IT NECESSARY TO RULE ON CHRISTY'S OBJECTION REGARDING THE PLACEMENT OF PARAGRAPHS 23 THROUGH 26 IN THE RE-DISCLOSED PSR.**

Christy "objects to the inclusion of all statements contained in paragraphs 23 through 26 in the section of the PSR relating to the 'Interview with K.Y.,'" because "all these statements relate to the search of Mr. Christy's residence and subsequent interviews with Jane Doe, and are not properly part of the discussion of the FBI interview with Jane Doe." Objections at 5.[11]  Christy provides no explanation why the organization of the Re-Disclosed PSR has any impact on his ultimate sentencing.  The Court finds that the Re-Disclosed PSR's organization has no bearing on the sentence it will impose on Christy, so the Court does not find it necessary to rule on this objection.  See Fed. R. Crim. P. 32(i)(3)(B) (stating that, as opposed to having to "rule on the dispute" regarding a fact in a presentence investigation report, a court can "determine that a ruling is unnecessary either because the matter will not affect sentencing, or because the court will not consider the matter in sentencing").

> **O.**    **THE COURT DOES NOT FIND IT NECESSARY TO RULE ON CHRISTY'S OBJECTION REGARDING THE PLACEMENT OF A WEB CAM IN HIS HOUSE AS DISCUSSED IN THE RE-DISCLOSED PSR.**

Christy objects to "the statement in paragraph 23 relating to Mr. Christy's laptop being on his desk, having a web cam positioned so that it was pointing at a harness sex swing . . . approximately six feet from the computer." Objections at 5.[12]  He asserts that this statement "mischaracterizes the evidence, and creates the untruthful impression that Mr. Christy

---

[11]Christy did not pursue this objection at the sentencing hearing on May 23, 2012.

[12]Christy did not pursue this objection at the sentencing hearing on May 23, 2012.

used the web came for any improper purpose, totally ignoring the fact that no images were ever recovered . . . of any pictures taken with said web cam."  Objections at 5.  This fact is a peripheral one, particularly given the lack of evidence suggesting that Christy ever produced any child pornography.  The Court will not consider this statement in the Re-Disclosed PSR when arriving at its sentence for Christy.  See Fed. R. Crim. P. 32(i)(3)(B) (stating that, as opposed to having to "rule on the dispute" regarding a fact in a presentence investigation report, a court can "determine that a ruling is unnecessary either because the matter will not affect sentencing, or because the court will not consider the matter in sentencing").

### P.  THE COURT DOES NOT FIND IT NECESSARY TO RULE ON CHRISTY'S OBJECTION REGARDING THE RE-DISCLOSED PSR'S DISCUSSION OF THE WIRELESS ROUTER IN HIS HOME.

Christy "objects to the statement in paragraph 23 that there was a wireless router on the desk, and" that this arrangement "was suspicious because no other computer equipment could be located in the residence that would be networked via said router," given that "this statement ignores the obvious fact that the laptop on the desk could be used . . . from any location in the house." Objections at 6.[13]  This fact is ultimately a peripheral one.  The Court will not consider this statement in the Re-Disclosed PSR when arriving at its sentence for Christy.  See Fed. R. Crim. P. 32(i)(3)(B) (stating that, as opposed to having to "rule on the dispute" regarding a fact in a presentence investigation report, a court can "determine that a ruling is unnecessary either because the matter will not affect sentencing, or because the court will not consider the matter in sentencing").

### Q.  THE COURT DOES NOT FIND IT NECESSARY TO RULE ON CHRISTY'S OBJECTIONS REGARDING SEVERAL ITEMS FOUND IN HIS HOME.

Christy "objects to the statements in paragraph 24 wherein it stated that 'Several sex toys

---

[13]Christy did not pursue this objection at the sentencing hearing on May 23, 2012.

which appeared to have been used, along with pornographic comics, were also located in the bedroom,'" because "this describes matters which imply sexual conduct which, in New Mexico, would not have been criminal." Objections at 6. Christy "further objects to the reference to finding a .45 caliber pistol in a safe, as" this conduct is legal and "is inserted herein only for its unfair prejudicial value." Objections at 6. Christy "objects to the inclusion, in paragraph 26, of the statement that Mr. Christy inserted a 'butt plug' into Ms. Doe's anus, as such statement was contradicted by Doe's own testimony before the grand jury in this case," and because the conduct "would have been legal under New Mexico law." Objections at 6-7. Christy "objects to the inclusion in paragraph 27 of the reference to 'ten possible cartoon child pornography images . . . and 112 underage girls in sexually suggestive positions who were half-clothed, known to be child erotica," because "by definition, cartoons cannot be pornographic," and the "reference to '112 underage girls . . . known to be child erotica' should not be included because the possession of any such images is not a crime and cannot be considered 'relevant conduct' for that reason." Objections at 7.[14] All of these facts are peripheral ones that have minimal significance regarding the appropriate sentence for Christy. Thus, the Court will not consider these facts when arriving at its sentence for Christy. See Fed. R. Crim. P. 32(i)(3)(B) (stating that, as opposed to having to "rule on the dispute" regarding a fact in a presentence investigation report, a court can "determine that a ruling is unnecessary either because the matter will not affect sentencing, or because the court will not consider the matter in sentencing").

### R.     THE COURT DOES NOT FIND IT NECESSARY TO RULE ON CHRISTY'S OBJECTION TO THE PHOTOGRAPH MENTIONED IN PARAGRAPH 27.

Christy "further objects to the inclusion in paragraph 27 of any reference to '110109144.jpg'

---

[14]Christy did not pursue these objections at the sentencing hearing on May 23, 2012.

which was a close image of Jane Doe's (juvenile female) vagina," because "said image has not been identified by any means, and because the image, if actually that of 'Jane Doe,' was transmitted to Defendant prior to his finding out 'Jane Doe's' true age." Objections at 7.[15]  In light of the hundreds of child pornography images attributable to Christy, this one photograph is not particularly significant.  Thus, the Court will not consider this photograph when arriving at its sentence for Christy.  See Fed. R. Crim. P. 32(i)(3)(B) (stating that, as opposed to having to "rule on the dispute" regarding a fact in a presentence investigation report, a court can "determine that a ruling is unnecessary either because the matter will not affect sentencing, or because the court will not consider the matter in sentencing").[16]

### S.   THE COURT WILL OVERRULE CHRISTY'S OBJECTIONS REGARDING THE STATE PROCEEDINGS AGAINST HIM.

Christy "objects to the inclusion of any of the matters contained in paragraph 29, as the charges brought by the State of New Mexico were demonstrably untrue," because Doe had told officers that the sex was consensual and "because the sexual acts attributed to the Defendant in the State of New Mexico were not criminal conduct."  Objections at 7.  Christy further objects that his "alleged statements at the end of paragraph 29 are simply not relevant for any purpose, as they do not constitute a criminal act or indicate criminal intent, but are included simply for prejudicial effect."  Objections at 7-8.  Paragraph 29 provides:

---

[15]Christy did not pursue this objection at the sentencing hearing on May 23, 2012.

[16]The Court has already found that two images Christy and Doe exchanged with one another were sexually explicit.  The Re-Disclosed PSR does not readily identify the contents of the image in paragraph 27 that Christy finds objectionable.  To the extent that the image is one of the same ones that Christy objected to as being sexually explicit, Christy did not dispute that those photos existed, and the Court found they were sexually explicit.  To the extent that this image mentioned in paragraph 27 is different, the Court does not need to rely upon this image to find the other images it discussed previously were sexually explicit.

As a result of this investigation, the State of New Mexico charged Mr. Christy with two counts of Criminal Sexual Penetration (Force/Coercion), Criminal Sexual Contact, four counts of Sexual Exploitation of Children, Contributing to the Delinquency of a Minor, and Custodial Interference (No Right Custody).  On June 1, 2010, the defendant was arrested by the Federal Bureau of Investigation for the instant offense, being transferred from state to federal custody.  During transport, Mr. Christy stated he did not believe he was a danger to the community and believed the instant offense was "blown out of proportion."  The state case was dismissed on June 2, 2010, as the state speedy trial limits had expired.

Re-Disclosed PSR ¶ 29, at 12.  Christy similarly "objects to the inclusion of the charges filed by the State of New Mexico in this case in paragraph 81, Criminal History, Other Arrests, as this is the same case, the agents of the State of New Mexico had no factual or legal basis for the Counts charged," and they "had affirmative knowledge that the charged conduct was not criminal under New Mexico law."  Objections at 10.

Regarding the state charges the State of New Mexico brought against him, the Re-Disclosed PSR does no more than recount historical facts regarding those proceedings.  It makes no comment about the merits of those charges.  Christy makes no argument that the historical fact that the State of New Mexico brought those charges, or that he was arrested for those charges, is inaccurate.  To invoke a district court's rule 32 fact-finding obligation, a defendant is required to make "specific allegations" of factual inaccuracy.   United States v. Rodriguez-Delma, 456 F.3d at 1253.  Defendants have "an affirmative duty to make a showing that the information in the PSR was unreliable and articulate the reasons why the facts contained therein [were] untrue or inaccurate." United States v. Rodriguez-Delma, 456 F.3d at 1253.  Thus, the Court will overrule his objections regarding the Re-Disclosed PSR's recitation of the state charges against him.

Regarding the comment Christy makes about "the instant offense" having been "blown out of proportion," Re-Disclosed PSR ¶ 29, at 12, the Court does not attribute any significance to that statement given that Christy has now accepted responsibility for his conduct.  That statement will

not impact the Court's consideration of the appropriate sentence for Christy.  Thus, it is unnecessary for the Court to rule on Christy's objection.  See Fed. R. Crim. P. 32(i)(3)(B) (stating that, as opposed to having to "rule on the dispute" regarding a fact in a presentence investigation report, a court can "determine that a ruling is unnecessary either because the matter will not affect sentencing, or because the court will not consider the matter in sentencing").

> **T.   THE COURT WILL OVERRULE CHRISTY'S OBJECTIONS REGARDING THE ALLEGATIONS OF GROOMING BEHAVIOR AGAINST HIM.**

Christy "objects to the entire contents of paragraph 33, as they are simply untrue" and "[n]o allegation of molestation has been made, as referred to, and no 'grooming' behavior occurred." Objections at 8-9.  Paragraph 33 provides:

> During the investigation by the FBI, they learned several past allegations were made, including one in which Mr. Christy molested a young girl, and one in which Mr. Christy was in the process of "grooming" two other girls.  The officers uncovered hundreds of internet chats, including sexual conversations between Mr. Christy and minors.  Due to the large number of chats, only the most egregious are outlined below.

Re-Disclosed PSR ¶ 33, at 13.

The Court has already found, earlier in this Memorandum Opinion and Order, that there was sufficient evidence to support a finding by a preponderance of the evidence that Christy engaged in a large number of chatroom conversations with minors regarding sexual activity.  Furthermore, the Court has already had evidence about Christy's grooming behavior presented to it earlier in this proceeding:

> In a chat dated August 26, 2009, Christy admitted to having sexual relations with a twelve-year old boy within the last few months and with a fourteen-year old girl "a few years ago."  United States' Exhibit 8.  The United States represents that it has interviewed the boy, believed to be the one of whom Christy spoke, but the boy did not disclose.  The boy described, however, how he would go on overnight scuba-diving trips with Christy, how Christy provided him movies to watch and gave him gifts, and how Christy provided him with wireless internet access. [Detective

Weylin] Proctor testified that behavior, like that which the boy described, is consistent with grooming behavior.  Also in the chat dated August 26, 2009, Christy stated: "There is a 12 year old girl down the street who has a bit of a crush on me. [S]o I'm letting that just move at its own pace."

In the course of their investigation, Bernalillo County Sheriff's deputies arranged a safe-house interview of a nine-year old girl who formally [sic] was a neighbor of Christy's and with whom Christy had contact.  This child described that, a few years ago, Christy touched her vaginal area through her clothing when she was at Christy's residence sitting in front of his computer.  The child's fourteen-year old sister and fourteen-year old cousin were also safe-house interviewed, and, according to Proctor, described conduct by Christy that was consistent with grooming behavior. Specifically, Christy would regularly invite them over to swim in his hot tub, and take them on outings to the Hinkle Family Fun Center or to the McDonalds playground.  They stated that Christy would kiss them on the lips, that he would pick them up in such a way that he would place his hands on their breasts, and that he would allow their legs to straddle him while he touched their buttocks.

June 28, 2010 MOO at 6-8 (footnote omitted)(citations omitted).  The Court relied on this evidence

to detain Christy:

Moreover, the evidence the United States presented -- both the evidence of Christy's actions with Jane Doe and his internet chats -- show that Christy is a person who has an ongoing sexual interest in children and is willing to act on such interest. The degree of harm and the length of time over which Christy has engaged in such behavior renders him a danger to the community.  By his admission, Christy has engaged in multiple acts of hands-on victimization of children.  In the internet chat from August 26, 2009, Christy stated that he had sexual relations with a twelve-year old boy within the last few months and contains statements suggesting he was grooming a twelve-year old girl down the street "who has a bit of a crush on [him]." United States Exhibit 8.  Christy's admissions cause the Court great concern about the degree of harm he is capable of causing to the community.  Christy suggests that much of his chat involves fantasy.  That characterization may be fair for some statements, but he has not denied that he has had sex with multiple under-aged children.  In the face of these unretracted and uncontested admissions, the Court concludes that the record shows, by clear-and-convincing evidence, that Christy poses a threat of continuing to groom and molest children.

To some degree, the third factor weighs against detention.  Christy has no criminal history and has some family ties to the community.  Since his arrest, however, he has lost his employment.  He has no wife or children and his sister, who testified on his behalf, had no knowledge of Christy's actions until she read about them in a newspaper.  While the Court recognizes that Christy has no criminal history, the seized evidence indicates that Christy has a history of enticing children,

and has no criminal history only because he has avoided being caught.  Christy is an intelligent man, with a degree in engineering, and his actions indicate that he is a calculating and manipulative man.  He carefully planned his actions with Jane Doe, instructed her on how not to be detected, and concocted a cover story of a suicide attempt for her to use.

June 28, 2010 MOO at 13-14.  This evidence is sufficient to support a finding by a preponderance of the evidence that the facts discussed in paragraph 33 of the PSR occurred.  Thus, the Court will overrule Christy's objection.

### U.    THE COURT DOES NOT FIND IT NECESSARY TO RULE ON CHRISTY'S OBJECTION REGARDING WHETHER HE HAS SUBMITTED A STATEMENT ACCEPTING RESPONSIBILITY.

Christy "objects to the statement in paragraph 48 of the PSR that he has not made a statement accepting responsibility, as such statement was made orally to the interviewer during the interview in custody and with counsel, before the original disclosure was made."  Objections at 9.[17]  The Re-Disclosed PSR applies a 3-level reduction for acceptance of responsibility, and the United States has not disputed that a 3-level reduction for acceptance of responsibility is appropriate.  Thus, no one is disputing the issue that Christy has accepted responsibility.  Accordingly, it is unnecessary for the Court to rule on this objection, and the Court will not consider this statement in the Re-Disclosed PSR during sentencing.  See Fed. R. Crim. P. 32(i)(3)(B) (stating that, as opposed to having to "rule on the dispute" regarding a fact in a presentence investigation report, a court can "determine that a ruling is unnecessary either because the matter will not affect sentencing, or because the court will not consider the matter in sentencing").

### V.    THE COURT DOES NOT FIND IT NECESSARY TO RULE ON CHRISTY'S OBJECTION REGARDING HIS ALLEGED COCAINE USE.

Christy "objects to the inclusion of the statement in paragraph 95 that he 'used cocaine on

---

[17]Christy did not pursue this objection at the sentencing hearing on May 23, 2012.

a monthly basis for six months' at the age of 25, and denies any such use or statement." Objections at 10.[18] There are no indications that cocaine use had anything to do with Christy's conduct or that he has any current cocaine problem. Thus, this fact has no impact on the Court's ultimate sentence for Christy. See Fed. R. Crim. P. 32(i)(3)(B) (stating that, as opposed to having to "rule on the dispute" regarding a fact in a presentence investigation report, a court can "determine that a ruling is unnecessary either because the matter will not affect sentencing, or because the court will not consider the matter in sentencing").

### W.   THE COURT WILL OVERRULE CHRISTY'S OBJECTIONS TO PARAGRAPHS 116 THROUGH 118.

Christy "objects to any suggestion that he has the ability to pay a fine in any amount, contained in paragraphs 116 and 117." Objections at 10-11. Christy "objects to any suggestion, contained in paragraph 118, that he has any ability whatever to pay the costs of his incarceration or prosecution." Objections at 11.[19] In these paragraphs, the USPO recites some facts regarding the costs of Christy's incarceration and states that the Court must consider these matters under U.S.S.G. § 5E1.2(d) and 18 U.S.C. § 2572(a)(6). The USPO also communicates some information about the applicable fines for Christy's offenses under the relevant statutes and guidelines. The USPO does no more than relay factual information to the Court, and point out the relevant statutes and guidelines for the Court to consider. The USPO makes no recommendation in these paragraphs about Christy's ability to pay for the costs of his incarceration, his prosecution, or a fine. To invoke a district court's rule 32 fact-finding obligation, a defendant is required to make "specific allegations" of factual inaccuracy. United States v. Rodriguez-Delma, 456 F.3d at 1253.

---

[18]Christy did not pursue this objection at the sentencing hearing on May 23, 2012.

[19]Christy did not pursue these objections at the sentencing hearing on May 23, 2012.

Defendants have "an affirmative duty to make a showing that the information in the PSR was unreliable and articulate the reasons why the facts contained therein [were] untrue or inaccurate." United States v. Rodriguez-Delma, 456 F.3d at 1253.  Thus, the Court will overrule Christy's objections.

## II.    THE COURT WILL APPLY A 2-LEVEL ENHANCEMENT UNDER U.S.S.G. § 2G1.3(b)(2).

Christy

> objects to the application of the 2 level increase in the sentencing level contained in paragraph 51 of the PSR (Undue Influence), and would respectfully show the Court that, while the young lady (Jane Doe) was, indeed, much younger than Mr. Christy, her previous admitted behavior of seeking out older men online by misrepresenting her age was the controlling factor in her own behavior, and the rebuttable presumption of undue influence does not apply to this case.

Objections at 9.  At the sentencing hearing on May 23, 2012, Christy argued that a 2-level enhancement under U.S.S.G. § 2G1.3(b)(2)(B) for undue influence was inappropriate, but conceded that a rebuttable presumption exists that the enhancement is appropriate in light of the age difference between Doe and himself.  See Tr. at 13:3-13 (Court, McMillian).  Christy stated that he did not intend to pursue rebutting that presumption and that the Court could overrule his objection to this 2-level enhancement.  See Tr. at 13:10-21 (McMillian, Court).

U.S.S.G. § 2G1.3(b)(2) provides: "If (A) the offense involved the knowing misrepresentation of a participant's identity to persuade, induce, entice, coerce, or facilitate the travel of, a minor to engage in prohibited sexual conduct; or (B) a participant otherwise unduly influenced a minor to engage in prohibited sexual conduct, increase by 2 levels." U.S.S.G. § 2G1.3(b)(2).  Application note 3(B) to this guideline provides in relevant part:

> In determining whether subsection (b)(2)(B) applies, the court should closely consider the facts of the case to determine whether a participant's influence over the minor compromised the voluntariness of the minor's behavior.  The voluntariness

of the minor's behavior may be compromised without prohibited sexual conduct occurring.

. . . .

In a case in which a participant is at least 10 years older than the minor, there shall be a rebuttable presumption that subsection (b)(2)(B) applies. In such a case, some degree of undue influence can be presumed because of the substantial difference in age between the participant and the minor.

U.S.S.G. § 2G1.3 cmt n. 3(B). In light of the ten-year difference between Christy and Doe, with Christy being in his late fifties at the time of the offense and Doe being sixteen, the presumption discussed in application note 3(b) to this guideline applies. Christy has offered no evidence to rebut this presumption. Thus, a 2-level enhancement under U.S.S.G. § 2G1.3(b)(2)(B) is appropriate, and the Court will overrule Christy's objection to this enhancement.

## III.    THE COURT WILL APPLY A 2-LEVEL ENHANCEMENT UNDER U.S.S.G. § 2G1.3(b)(4).

Christy "objects to the two level increase in paragraph 53 pursuant to Section 2G1.3(b)(4), as the sexual conduct engaged in by Mr. Christy at his home in Albuquerque, New Mexico was not prohibited sexual conduct under New Mexico law, and no other sexual conduct has been proven beyond a reasonable doubt." Objections at 9-10. At the sentencing hearing on May 23, 2012, Christy asserted that, in spite of his guilty plea, the United States still cannot show a pattern of conduct for purposes of a 2-level enhancement under U.S.S.G. § 2G1.3(b)(4). See Tr. at 17:14-17 (McMillian). The Court and the United States noted that this enhancement does not require a pattern of conduct, but only a sex act or sexual contact. See Tr. at 17:22-18:3 (Court, Rees). The Court then overruled Christy's objection to the 2-level enhancement under U.S.S.G. § 2G1.3(b)(4). See Tr. at 18:6-18 (Court, McMillian).

U.S.S.G. § 2G1.3(b)(4) provides: "If (A) the offense involved the commission of a sex act

or sexual contact; or (B) subsection (a)(3) or (a)(4) applies and the offense involved a commercial

sex act, increase by 2 levels."   U.S.S.G. § 2G1.3(b)(4).   Application note 1 to this guideline

provides: "'Sexual act' has the meaning given that term in 18 U.S.C. § 2246(2)."   U.S.S.G. § 2G1.3

cmt. n.1.  18 U.S.C. § 2246(2) provides:

> [T]he term "sexual act" means --
>
> (A)   contact between the penis and the vulva or the penis and the anus,
> and for purposes of this subparagraph contact involving the penis
> occurs upon penetration, however, slight;
>
> (B)   contact between the mouth and the penis, the mouth and the vulva, or
> the mouth and the anus;
>
> (C)   the penetration, however slight, of the anal or genital opening of
> another by a hand or finger or by any object, with an intent to abuse,
> humiliate, harass, degrade, or arouse or gratify the sexual desire of
> any person; or
>
> (D)   the intentional touching, not through the clothing, of the genitalia of
> another person who has not attained the age of 16 years with an intent
> to abuse, humiliate, harass, degrade, or arouse or gratify the sexual
> desire of any person . . . .

18 U.S.C. § 2246(2).

In his Plea Agreement, Christy stipulates that, "[d]uring the course of" his travels with Doe,

he "had sexual intercourse with Jane Doe at a motel in Needles, California and my Albuquerque,

New Mexico residence."  Plea Agreement ¶ 10, at 6-7.  18 U.S.C. § 2246(2)(A) defines a sexual act

as "contact between the penis and the vulva or the penis and the anus, and for purposes of this

subparagraph contact involving the penis occurs upon penetration, however, slight."  8 U.S.C.

§ 2246(2)(A).  Christy's own admission that he had sexual intercourse with Doe provides sufficient

evidence to support the application of a 2-level enhancement under U.S.S.G. § 2G1.3(b)(4).  Thus,

the Court will overrule his objection to this 2-level enhancement.

-64-

## IV.    THE COURT WILL NOT APPLY A 4-LEVEL ENHANCEMENT UNDER U.S.S.G. § 2G2.2(b)(4).

Both the United States and Christy argue that a 4-level enhancement under U.S.S.G. § 2G2.2(b)(4) is not appropriate.  The United States asserts that a 4-level enhancement under U.S.S.G. § 2G2.2(b)(4) is not appropriate, because, "[t]ypically, courts in this district have imposed this enhancement if the [child pornography] images depict bound children" and because Christy "did not possess any images depicting bondage or excessive torture of children."  USA Sentencing Memorandum at 6.  Christy

> objects to the four level increase in paragraph 61 pursuant to Section 2G2.2(b)(4) because the PSR writer simply presumes from the subject matter of the alleged image that pain and humiliation is inflicted on the child made the subject matter of the image referred to.  The image is not inherently sadistic or violent, though it certainly may be found to be disgusting, and so the four level increase in sentencing level should not apply.

Objections at 10.

The Court acknowledges that, particularly in the context of prepubescent children depicted in child pornography, courts have not imposed significant hurdles to the application of a 4-level enhancement under U.S.S.G. § 2G2.2(b)(4).  The Tenth Circuit has held that the existence of images that "depict anal or vaginal penetration of prepubescent children by adults" is normally sufficient to support a 4-level enhancement under this provision.  United States v. Kimler, 335 F.3d at 1143 (emphasis in original).  As support for its conclusion, the Tenth Circuit quoted a portion of the district court's opinion and "agree[d] with those findings and conclusions by the [district court]":

> The court concludes that the some [sic] of the images submitted by the Government are sufficient to qualify for this enhancement, particularly those showing adults engaging in vaginal or anal intercourse with prepubescent minors.  The court concludes that one or more such depictions in this case portrays "sadistic conduct" within the meaning of the guideline, in that the depictions include and are intended to portray the infliction of pain and humiliation on very young minor victims as a means of giving sexual gratification to individuals with pedophilic tendencies.

United States v. Kimler, 335 F.3d at 1143.

Nevertheless, the Court believes the situation presented in this case is distinguishable. The Court acknowledges that oral-genital penetration could, in some circumstances, qualify for a 4-level enhancement under U.S.S.G. § 2G2.2(b)(4), because one could certainly conceive of a depiction that was physically painful to the child in the depiction or humiliating such that the depiction is sadistic. Unlike vaginal and anal penetration of prepubescent children, however, the Court has difficulty concluding that oral-genital penetration justifies, as a matter of law, a 4-level enhancement under this guideline. The Court has reviewed the photograph in question which the USPO asserts justifies a 4-level enhancement under U.S.S.G. § 2G2.2(b)(4).[20] While the Court has no reason to question that the girl depicted in the photograph is prepubescent, she does not appear to be in any physical or emotional pain. Additionally, other than the sexual act itself of there being male genitalia in her mouth, there appears to be nothing humiliating about the photograph. While the Court is not in any way saying that the little girl is actually enjoying the sex, the picture is such that it is meant to suggest she is enjoying the activity. Furthermore, the expression on her face does not support a finding that the photograph is sadistic or masochistic. The photograph is a disgusting one which the Court has the obligation to review itself to assess whether this enhancement applies. Having viewed the photograph, the Court does not believe that the depiction is one "intended to portray the infliction of pain and humiliation on very young minor victims as a means of giving sexual gratification to individuals with pedophilic tendencies." United States v. Kimler, 335 F.3d at 1143.

---

[20]It is often unnecessary for courts to view such photographs in preparation for a sentencing, as the parties often do not dispute how those photographs impact the defendant's sentence. Here, however, both parties have objected to the application of a 4-level enhancement under U.S.S.G. § 2G2.2(b)(4) based on this photograph, so it was necessary for the Court to view the photograph to resolve that dispute.

If the Court were to hold otherwise, virtually all child pornography would support a 4-level enhancement. Thus, while the Court believes that a 4-level enhancement could in some cases be appropriate in the context of oral-genital penetration, the Court does not believe that this photograph warrants a 4-level enhancement. The Court agrees with the United States and with Christy, and not with the USPO, and will not apply a 4-level enhancement under U.S.S.G. § 2G2.2(b)(4).

The United States has presented an unpersuasive bright-line test for the application of a 4-level enhancement under this guideline. The United States asserts that a 4-level enhancement under U.S.S.G. § 2G2.2(b)(4) is not appropriate, because, "[t]ypically, courts in this district have imposed this enhancement if the [child pornography] images depict bound children" and because Christy "did not possess any images depicting bondage or excessive torture of children." USA Sentencing Memorandum at 6. That test is both overinclusive and underinclusive. The test is overinclusive in that it is possible that a child could be bound yet not be in any physical or emotional pain. The photograph would still be pornographic, but not necessarily sadistic or masochistic. Furthermore, the test is underinclusive, because there could be many scenarios where a child is in obvious physical or emotional pain without any bondage occurring. More importantly, the United States' proposed standard, for which it cites no authority, is not consistent with Tenth Circuit precedent, which has not focused on bondage. See United States v. Kimler, 335 F.3d at 1143 (holding that the existence of images that "depict anal or vaginal penetration of prepubescent children by adults" is normally sufficient to support a 4-level enhancement under U.S.S.G. § 2G2.2(b)(4) (emphasis in original)).

## V.    THE COURT WILL APPLY A 5-LEVEL ENHANCEMENT UNDER U.S.S.G. § 2G2.2(b)(5).

Christy "objects to the five level increase in sentencing level contained in paragraph 62, to

the extent that it punishes behavior that was not against the law in the State of New Mexico."
Objections at 10.   At the sentencing hearing on May 23, 2012, Christy argued that a 5-level
enhancement was not appropriate under U.S.S.G. § 2G2.2(b)(5), given that his sexual acts in New
Mexico were lawful.   See Tr. at 19:2-8 (Court, McMillian).   The United States argued that there is
a large amount of evidence indicating that Christy has engaged in a pattern of sexual exploitation
of minors, including all the child pornography found in his possession and the individuals with
whom he chatted online.   See Tr. at 20:13-21:22 (Rees).   Christy asserted that none of the
individuals with whom he chatted have been identified, including whether they are adults or minors,
but conceded that the chat conversations have been presented to the Court.   See Tr. at 21:24-22:8
(McMillian).   Christy noted that no one has proved that he engaged in any sexual acts with children
in his neighborhood.   See Tr. at 22:9-13 (McMillian).   The Court noted that the application note to
U.S.S.G. § 2G2.2(b)(5) indicates that it has a low threshold for a pattern of activity, requiring only
two or more separate instances of sexual abuse or sexual exploitation of a minor.   See Tr. at 22:14-
22 (Court).   The Court noted that there was sufficient evidence to find that this enhancement applied
by a preponderance of the evidence in light of Christy admitting to two sexual acts with Doe on
separate occasions, and the Court overruled Christy's objection.   See Tr. at 22:14-23:8 (Court).

U.S.S.G. § 2G2.2(b)(5) provides: "If the defendant engaged in a pattern of activity involving
the sexual abuse or exploitation of a minor, increase by 5 levels."   U.S.S.G. § 2G2.2(b)(5).
Application note 1 to this guideline provides several disjunctive definitions for a minor for purposes
of this guideline, including "(A) an individual who has not attained the age of 18 years."   U.S.S.G.
§ 2G2.2 cmt. n.1.[21]   Application note 1 to this guideline provides:

---

[21]Other definitions for minor under this guideline include:

"Pattern of activity involving the sexual abuse or exploitation of a minor" means any combination of two or more separate instances of the sexual abuse or sexual exploitation of a minor by the defendant, whether or not the abuse or exploitation (A) occurred during the course of the offense; (B) involved the same minor; or (c) resulted in a conviction for such conduct.

U.S.S.G. § 2G2.2 cmt. n.1.  This application note also provides:

"Sexual abuse or exploitation" means any of the following: (A) conduct described in 18 U.S.C. § 2241, § 2242, § 2243, § 2251(a)-(c), 2251(d)(1)(B), § 2251A, § 2260(b), § 2421, § 2422, or § 2423; (B) an offense under state law, that would have been an offense under any such section if the offense had occurred within the special maritime or territorial jurisdiction of the United States; or (c) an attempt or conspiracy to commit any of the offenses under subdivisions (A) or (B). "Sexual abuse or exploitation" does not include possession, accessing with intent to view, receipt, or trafficking in material relating to the sexual abuse or exploitation of a minor.

U.S.S.G. § 2G2.2 cmt. n.1.

Christy has pled guilty to Count 1 of the information, specifically violating 18 U.S.C.

§ 2423(a).  The Information charges Christy, in Count 1, with the following:

From on or about October 1, 2009 to on or about November 9, 2009, in Bernalillo County and elsewhere, in the District of New Mexico, the defendant **EDWARD CHRISTY**, knowingly persuaded, induced, enticed, and coerced Jane Doe to travel in interstate and foreign commerce to engage in any sexual activity for which the defendant could be charged with a criminal offense, that being Criminal Sexual Penetration in the Second Degree, in violation of N.M. Stat. Ann. § 30-9-11(E)(5), Contributing to the Delinquency of a Minor, in violation of N.M. Stat. Ann. § 30-6-3, and Unlawful Custodial Interference, in violation of N.M. Stat. Ann. § 30-4-4(c).

In violation of 18 U.S.C. § 2422(a).

─────────────────────

(B) an individual, whether fictitious or not, who a law enforcement officer represented to a participant (i) had not attained the age of 18 years, and (ii) could be provided for the purposes of engaging in sexually explicit conduct; or (c) an undercover law enforcement officer who represented to a participant that the officer had not attained the age of 18 years.

U.S.S.G. § 2G2.2 cmt. n.1.

Information at 1.  He conceded at the sentencing hearing that he knew, as of November 6, 2009 --

before he engaged in intercourse with Doe -- that she was sixteen.  See Tr. at 7:20-8:2 (McMillian).

Furthermore, he stipulated in his Plea Agreement: "Between October 1, 2009 and November 9,

2009, I knowingly persuaded, induced, and enticed Jane Doe to travel in interstate commerce to

engage in any sexual activity for which I could be charged."  Plea Agreement ¶ 10, at 6.  He

stipulates that he "engaged in sexual conversations with Jane Doe, a person I knew to be 16 years

of age."  Plea Agreement ¶ 10, at 6.  He stipulates that he had sexual intercourse with Doe on two

separate occasions: "During the course of this travel, I had sexual intercourse with Jane Doe at a

motel in Needles, California and my Albuquerque, New Mexico residence."  Plea Agreement ¶ 10,

at 7.

Furthermore, he has admitted to those sexual encounters constituting criminal conduct.  In

his Plea Agreement, he pled guilty to Count 1, charging him with a violation of 18 U.S.C. § 2422(a).

The Information related that Christy had engaged in conduct that would violate several New Mexico

statutes, including N.M.S.A. 1978, §§ 30-6-3 and 30-9-11(E)(5).    N.M.S.A. 1978, § 30-6-3

provides:

> Contributing to the delinquency of a minor consists of any person committing
> any act or omitting the performance of any duty, which act or omission causes or
> tends to cause or encourage the delinquency of any person under the age of eighteen
> years.
>
> Whoever commits contributing to the delinquency of a minor is guilty of a
> fourth degree felony.

N.M.S.A. 1978, § 30-6-3.  N.M.S.A. 1978, § 30-9-11(E)(5) provides: "Criminal sexual penetration

in the second degree consists of all criminal sexual penetration perpetrated . . . in the commission

of another felony."  N.M.S.A. 1978, § 30-9-11(E)(5).  N.M.S.A. 1978, § 30-6-3 is a felony offense

for which Christy admitted to conduct that would violate the statute.  See N.M.S.A. 1978, § 30-6-3.

Even if the age of consent in New Mexico is sixteen, Christy has still pled guilty to conduct that would violate these other statutes; he can violate these statutes given that Doe was sixteen at the time at which he engaged in intercourse with her.

In light of his two sexual encounters with Doe, a 5-level enhancement under U.S.S.G. § 2G2.2(b)(5) is appropriate.  U.S.S.G. § 2G2.2(b)(5).  Application note 1 to this guideline provides:

> "Pattern of activity involving the sexual abuse or exploitation of a minor" means any combination of two or more separate instances of the sexual abuse or sexual exploitation of a minor by the defendant, whether or not the abuse or exploitation (A) occurred during the course of the offense; (B) involved the same minor; or (c) resulted in a conviction for such conduct.

U.S.S.G. § 2G2.2 cmt. n.1.  Given his plea of guilty to Count 1, charging him with a violation of 18 U.S.C. § 2423(a), and the two occasions he had intercourse with Doe, there is sufficient evidence to support a 5-level enhancement under U.S.S.G. § 2G2.2(b)(5).

## VI.    THE COURT WILL ACCEPT THE PARTIES' STIPULATION REGARDING RESTITUTION.

In the context of children depicted in child pornography, various circuit courts of appeals have recognized severe proximate-causation concerns in requiring defendants in child pornography cases to pay restitution to the individuals depicted in the images.  The Court has not located a Tenth Circuit decision addressing this issue.  The United States Court of Appeals for the Second Circuit in United States v. Aumais, 656 F.3d 147 (2d Cir. 2011), provides a thorough recapitulation of the authority on this issue.  In that case, the district court had ordered the defendant to pay $48,483.00 in restitution to an individual under a pseudonym -- Amy -- who was depicted in some of the pornographic material in the defendant's possession.  See United States v. Aumais, 656 F.3d at 150.  One witness testified during the restitution hearing, a doctor who had evaluated Amy at her attorney's request.  See United States v. Aumais, 656 F.3d at 150.  The doctor provided information

about the history of Amy's sexual abuse and other trauma related to her experiences appearing in child pornography.  See United States v. Aumais, 656 F.3d at 150.  The doctor testified that "[k]nowledge that [Amy's] images were still being viewed caused emotional and psychological problems" for her.  United States v. Aumais, 656 F.3d at 150.  The Second Circuit agreed that Amy was a victim within the meaning of 18 U.S.C. § 2259(c) based on the trauma she had suffered.  See United States v. Aumais, 656 F.3d at 152.

The Second Circuit then acknowledged that "[a] circuit split has opened as to whether the Government must show that a victim's losses" under 18 U.S.C. § 2259 "were proximately caused by the defendant's actions, or whether it is enough to show causation more generally." United States v. Aumais, 656 F.3d at 152.  It also stated that, "within those circuits holding that a showing of proximate cause is required, some rely on the text of the statute and others on general rules of criminal and tort law." United States v. Aumais, 656 F.3d at 152.  It recognized that the United States Court of Appeals for the Third, Ninth, and Eleventh Circuits have "read the last phrase of § 2259(b)(3)(F) -- 'suffered by the victim as a proximate result of the offense' -- to apply to all the types of loss in § 2259(b)(3)." United States v. Aumais, 656 F.3d at 152-53 (citation omitted)(citing United States v. McDaniel, 631 F.3d 1204, 1209 (11th Cir. 2011); United States v. Laney, 189 F.3d 954, 965 (9th Cir. 1999); United States v. Crandon, 173 F.3d 122, 125 (3d Cir. 1999)).  The Second Circuit also related that the United States Court of Appeals for the District of Columbia has imposed a proximate-cause requirement on damages under this statute by relying upon "traditional principles of tort and criminal law and on § 2259(c)'s definition of victim as an individual harmed as a result of the defendant's offense." United States v. Aumais, 656 F.3d at 153 (quoting United States v. Monzel, 641 F.3d 528, 535 (D.C. Cir. 2011))(internal quotation marks omitted).  The Second Circuit noted that the D.C. Circuit further relied on the "bedrock rule of both tort and criminal law that a

defendant is only liable for harms he proximately caused" to reach the conclusion that "nothing in the text or structure of § 2259 [suggests] that Congress intended to negate the ordinary requirement of proximate cause." United States v. Aumais, 656 F.3d at 153 (quoting United States v. Monzel, 641 F.3d 535-36).

The Second Circuit stated that "[t]he only circuit to hold that a finding of proximate cause is not required, the Fifth Circuit, read the phrase 'as a proximate result of the offense' in § 2259(b)(3)(F) to apply on to that 'catchall' provision, as opposed to all of the loss provisions set forth in § 2259(b)(3)." United States v. Aumais, 656 F.3d at 153 (quoting In re Amy Unknown, 636 F.3d 190, 198 (5th Cir. 2011), reh'g granted en banc sub nom. In re Unknown, 668 F.3d 776 (5th Cir. 2012)). The Second Circuit then "agree[d] with the majority of circuits and h[e]ld that under § 2259, a victim's losses must be proximately caused by the defendant's offense." 656 F.3d at 152. More specifically, the Second Circuit followed the D.C. Circuit, concluding that "proximate cause is a deeply rooted principle in both tort and criminal law that Congress did not abrogate when it drafted § 2259." 656 F.3d at 153. For this conclusion, the Second Circuit relied in part on a case from the Supreme Court of the United States, which held:

> "[M]ere omission . . . of intent [in the statute] will not be construed as eliminating that element from the crimes denounced"; instead Congress will be presumed to have legislated against the background of our traditional legal concepts which render intent a critical factor, and "absence of contrary direction [will] be taken as satisfaction with widely accepted definitions, not as a departure from them."

United States v. U.S. Gypsum Co., 438 U.S. 422, 437 (1978)(alterations in original). The Second Circuit also stated:

> "Proximate cause" labels "generically the judicial tools used to limit a person's responsibility for the consequences of that person's own acts. At bottom, the notion of proximate cause reflects 'ideas of what justice demands, or of what is administratively possible and convenient.'" Proximate cause demands "some direct relation between the injury asserted and the injurious conduct alleged."

United States v. Aumais, 656 F.3d at 153 (citation omitted)(quoting Holmes v. Sec. Investor Prot. Corp., 503 U.S. 258, 268 (1992)).

Turning to the facts of the case, the Second Circuit noted that the magistrate judge based his finding of proximate cause on statements taken from Amy's victim impact statement and the doctor's testimony.  See United States v. Aumais, 656 F.3d at 154.  The magistrate judge had found that the defendant's "viewing of Amy's images 'leaves Amy and similar victims with feelings that they will never be safe, of helplessness, and of constant fear that they will be recognized from those images by friends and strangers.'"  656 F.3d at 154.  The magistrate judge also concluded that, "even though there may be hundreds or thousands of others who," like the defendant, "have possessed and used Amy's images and thereby contributed to her harm, [the defendant's] conduct remains a substantial cause of that harm," because it "exacerbates the harm by confirming how expansive has become the number of individuals exploiting Amy's images."  656 F.3d at 154.  In rejecting the magistrate judge's conclusion that Amy's harm was the proximate cause of the defendant's conduct, the Second Circuit focused on the magistrate judge's finding that "Amy had no direct contact with [the defendant] nor even knew of his existence."  656 F.3d at 154.  It also noted that Amy's victim impact statement made no mention of the defendant and that the doctor's examination of Amy took place before the defendant was arrested for his crime.  See 656 F.3d at 154.  The Second Circuit then quoted from a Ninth Circuit opinion that also rejected Amy's claims:

> [T]he government's evidence showed only that [the defendant] participated in the audience of persons who viewed the images of Amy. . . .  While this may be sufficient to establish that [the defendant's] actions were one cause of the generalized harm Amy . . . suffered due to the circulation of [her] images on the internet, it is not sufficient to show that they were a proximate cause of any particular losses.

656 F.3d at 154-55 (alterations in original)(quoting United States v. Kennedy, 643 F.3d 1251, 1264

(9th Cir. 2011)).  While the Second Circuit did "not categorically foreclose payment of restitution to victims of child pornography from a defendant who possesses their pornographic images," it reversed the lower court's conclusion that the defendant's conduct was a proximate cause of Amy's harm.  656 F.3d at 155.

As further support for its conclusion, the Second Circuit noted the "baffling and intractable issue that this case would otherwise present in terms of damages and joint and several liability."  656 F.3d at 155.  It stressed that there were "disparate amounts of restitution ordered throughout the country" for Amy, who "had sought restitution in over 250 cases around the country," and that individuals in Amy's position could potential received "double-recovery" even though there was a common-law prohibition against double recovery.  656 F.3d at 155-56.  The Second Circuit noted that "the collection of a restitution award would need to be carefully monitored to ensure that total payments by all defendants did not exceed what Amy has been awarded," and explained that "[t]he need for such monitoring would pose significant practical difficulties."  656 F.3d at 156.  It also stated that 18 U.S.C. § 3664(h), which 18 U.S.C. § 2259(b)(2) cross-references, "implies that joint and several liability may be imposed only when a single district judge is dealing with multiple defendants in a single case (or indictment)," which led the Second Circuit to the conclusion that "the law does not contemplate the apportionment of liability among defendants in different cases, before different judges, in different jurisdictions around the country."  656 F.3d at 156.

## A.  THE COURT WILL ADOPT THE APPROACH THE FIFTH CIRCUIT FOLLOWS AND NOT REQUIRE PROXIMATE CAUSATION FOR DAMAGES UNDER 18 U.S.C. § 2259.

The Court believes that the Fifth Circuit has correctly interpreted and applied 18 U.S.C. § 2259.  As the Supreme Court has recognized: "Statutory construction must begin with the language employed by [the writer] and the assumption that the ordinary meaning of that language

accurately expresses the legislative purpose." Park 'N Fly, Inc. v. Dollar Park & Fly, Inc., 469 U.S. 189, 194 (1985).  In determining the meaning of a statute, courts look to the statute as a whole.  See United States v. Atl. Research Corp., 551 U.S. 128, 135 (2007).  When a statute includes particular language in one section of a statute, but omits it in another section of the same act, courts generally presume that the drafter of the statute acted intentionally and purposefully in the including the language in one provision and omitting it from another.  See Burlington N. & Santa Fe. Ry. Co. v. White, 548 U.S. 53, 62-63 (2006).

The Court concludes that, by including the phrase "proximate result" in 18 U.S.C. § 2259(b)(3)(F), Congress did not impose a proximate cause limitation on the other categories of damages listed in 18 U.S.C. § 2259(b)(3).  18 U.S.C. § 2259(b)(3) provides:

> For purposes of this subsection, the term "full amount of the victim's losses" includes any costs incurred by the victim for --
>
> (A)    medical services relating to physical, psychiatric, or psychological care;
>
> (B)    physical and occupational therapy or rehabilitation;
>
> (C)    necessary transportation, temporary housing, and child care expenses;
>
> (D)    lost income;
>
> (E)    attorneys' fees, as well as other costs incurred; and
>
> (F)    any other losses suffered by the victim as a proximate result of the offense.

18 U.S.C. § 2259(b)(3)(A)-(F).  Courts generally interpret qualifying terms in a statute as applying only to the nearest antecedents.  See Jama v. Immigration & Customs Enforcement, 543 U.S. 335, 342-43 (2005)(stating the "the grammatical rule of the last antecedent, according to which a limiting clause or phrase . . . should ordinarily be read as modifying only the noun or phrase that it

immediately follows" (internal quotation marks omitted)).  The phrase "proximate result" appears

only in subsection (F), the final subsection in this portion of the statute, and not any of the other

subsections.  18 U.S.C. § 2259(b)(3)(A)-(F).  The Supreme Court has generally not been receptive

to construing statutes in the manner the Third, Ninth, and Eleventh Circuits have suggested is

proper, in other words having a qualifying term apply to terms in a statute other than its nearest

antecedents:

> Petitioner seizes upon the word "another" in clause (vii) as a means of importing the acceptance requirement into clauses (i) through (vi).  He argues that if the last resort country is "another country whose government will accept the alien," then the countries enumerated in clauses (i) through (vi) must also be "countries whose governments will accept the alien."  That stretches the modifier too far.  Just last Term, we rejected an argument much like petitioner's, noting that it ran contrary to "the grammatical 'rule of the last antecedent,' according to which a limiting clause or phrase . . . should ordinarily be read as modifying only the noun or phrase that it immediately follows."  Barnhart v. Thomas, 540 U.S. 20, 26 . . . (2003).  There, a statute referred first to a claimant's "previous work" and then to "any other kind of substantial gainful work which exists in the national economy"; under the rule of the last antecedent, we declined to read the limiting clause "which exists in the national economy" into the term "previous work."  Id., at 26-28 . . . (emphasis deleted; internal quotation marks omitted); accord, FTC v. Mandel Brothers, Inc., 359 U.S. 385, 389-390 . . . (1959).  We thus did not treat "any other" as the "apparently connecting modifier" that the dissent here thinks "another" to be, post, at 708.

Jama v. Immigration & Customs Enforcement, 543 U.S. at 342-43.[22]

_____

[22]The relevant portion of the statute at issue in that case provided:

(E)    Additional removal countries. -- If an alien is not removed to a country under the previous subparagraphs of this paragraph, the Attorney General shall remove the alien to any of the following countries:

   (i)     The country from which the alien was admitted to the United States.

   (ii)    The country in which is located the foreign port from which the alien left for the United States or for a foreign territory contiguous to the United States.

Ultimately, it is not the federal court system's job to redraft statutes for Congress. "Statutory construction must begin with the language employed by [the writer] and the assumption that the ordinary meaning of that language accurately expresses the legislative purpose." Park 'N Fly, Inc. v. Dollar Park & Fly, Inc., 469 U.S. at 194.  As the Fifth Circuit has related, Congress has omitted the qualifying term proximate from the other subsections in this statute:

> The structure and language of § 2259(b)(3) impose a proximate causation requirement only on miscellaneous "other losses" for which a victim seeks restitution.  As a general proposition, it makes sense that Congress would impose an additional restriction on the catchall category of "other losses" that does not apply to the defined categories.  By construction, Congress knew the kinds of expenses necessary for restitution under subsections A through E; equally definitionally, it could not anticipate what victims would propose under the open-ended subsection F.

> Comparing the language of § 2259 with other restitution statutes affirms the conclusion that proximate causation applies only to the catchall category of harms.  Under the VWPA, a victim is "a person directly and proximately harmed as a result of the commission of an offense . . . ."  18 U.S.C. § 3663A(a)(2) (emphasis added).  In contrast, § 2259, enacted 14 years later as part of the MVRA, defines a victim as "the individual harmed as a result of a commission of a crime . . . ."  18 U.S.C. § 2259(c) (emphasis added).  Comparing these statutes reveals that Congress

---

> (iii)   A country in which the alien resided before the alien entered the country from which the alien entered the United States.

> (iv)    The country in which the alien was born.

> (v)     The country that had sovereignty over the alien's birthplace when the alien was born.

> (vi)    The country in which the alien's birthplace is located when the alien is ordered removed.

> (vii)   If impracticable, inadvisable, or impossible to remove the alien to each country described in a previous clause of this subparagraph, another country whose government will accept the alien into that country.

Jama v. Immigration & Customs Enforcement, 543 U.S. at 340.

> abandoned the proximate causation language that would have reached all categories of harm via the definition of a victim. This change is consistent with the reasons for enacting a second generation of restitution statutes. See, e.g., Unites States v. Ekanem, 383 F.3d 40, 44 (2d Cir. 2004)(noting "the intent and purpose of the MVRA to expand, rather than limit, the restitution remedy."), United States v. Perry, 360 F.3d 519, 524 (6th Cir. 2004)("The new law unquestionably reflects a dramatically more 'pro-victim' congressional attitude . . . ."). The evolution in victims' rights statutes demonstrates Congress's choice to abandon a global requirement of proximate causation.

In re Amy Unknown, 636 F.3d at 198-99 (alterations in original)(footnote omitted). When a statute includes particular language in one section of a statute, but omits it in another section of the same act, courts generally presume that the drafter of the statute acted intentionally and purposefully in the including the language in one provision and omitting it from another. See Burlington N. & Santa Fe. Ry. Co. v. White, 548 U.S. at 62-63. Looking at the statute as a whole, the language Congress adopted leads to the conclusion that Congress did not intend to impose a proximate-cause limitation on the first five subsections of 18 U.S.C. § 2259(b)(3). See United States v. Atl. Research Corp., 551 U.S. at 135. If Congress intended a different result, it has the authority to amend the statute.

## B.   THERE IS NO CAUSATION BETWEEN VICKY'S DAMAGES AND CHRISTY'S CONDUCT.

There is no evidence that Vicky ever knew of Christy's existence or that he had any interactions with her. While the Re-Disclosed PSR does not contain Vicky's victim impact statement, the United States has provided what it asserts is Vicky's victim impact statement, which relates that she has to live

> everyday with the horrible knowledge that someone somewhere is watching the most terrifying moments of my life and taking grotesque pleasure in them. I am the victim of the worst kind of exploitation: child porn. Unlike other forms of exploitation, this one is never ending. Everyday people are trading and sharing videos of me as a little girl being raped in the most sadistic ways. They don't know me, but they have seen every part of me. They are being entertained by my shame and pain.

USA Sentencing Memorandum at 16. There is no date attached to this statement, so Vicky very

well may have drafted it before Christy viewed any images of her.  While causation is a less stringent standard than proximate causation, there is no evidence proving by a preponderance of the evidence that Christy was a cause-in-fact of her damages.  There is no other evidence before the Court establishing any kind of connection between Vicky and Christy besides Christy having viewed some images in which she appears.  While the Court acknowledges that Vicky appears to have suffered significant harm from her appearances in child pornography, there is no information establishing by a preponderance of the evidence that Christy was an actual cause of her damages. While it is possible Christy may have caused her damages, the Court has no evidence to that effect. Vicky has not drafted a separate impact statement that relates how Christy harmed her, and the one the United States has drafted may be several years old in light of the large number of cases in which Vicky has sought restitution.  She has made no other attempt to become involved in these proceedings to prove causation.

Furthermore, there are severe evidentiary problems regarding Vicky's damages.  The only information the Court has regarding her damages are estimates of her economic losses.  Neither she, nor anyone acting on her behalf came to Christy's sentencing or submitted any documentation with the Court to prove up her damages.  Her estimate of her total damages, $1,224,697.04, appears to be one an attorney created.  More importantly, the United States has conceded that it is not prepared to put forward any evidence, other than Christy's stipulation, regarding Vicky's damages.  See Tr. at 38:20-39:7 (Rees). Without further proof regarding her damages, there is not sufficient evidence for the Court to conclude, by a preponderance of the evidence, that these are her damages which Christy caused.  Furthermore, the risks of double recovery the Second Circuit discussed are present here, given that there appears to be no precise mechanism to monitor how much Vicky has recovered in restitution -- restitutionary damages which it is not clear to the Court she has ever had

to prove in federal court.  See United States v. Aumais, 656 F.3d at 155-56 ("Our holding in Nucci indicates that because Amy may already have been fully compensated by others for the loss found in this case, there would be 'no legal basis to permit an award that allows a victim to recover more than his due.'").  The USPO could not even contact Vicky's attorney for more information.  In light of the lack of evidentiary support for her damages, it would be unwise for the Court to require Christy to pay Vicky her claimed amount of restitution.

While the Court does not interpret 18 U.S.C. § 2259(b)(3) as imposing a proximate cause limitation on the first five subsection of that statute, the statute does not dispense with but-for causation.  See CSX Transp., Inc. v. McBride, 131 S.Ct. 2630, 2641 & n.9 (2011)("In our view, the causal link in these cases is hardly farfetched; in fact, in both, the lower courts observed that the evidence did not show mere 'but for' causation."); In re Amy Unknown, 636 F.3d at 201 ("Given the statute's built-in causation requirement and the volume of causation evidence in the context of child pornography, fears over excessive punishment are misplaced.").  But-for causation requires a showing of direct harm, or in this context of damages a showing that the damages were a direct result of the defendant's conduct.  See United States v. Speakman, 594 F.3d 1165, 1171 (10th Cir. 2010)(requiring, to show but-for causation, that a person "was directly harmed").  Here, the Court cannot with any confidence say that, but for Christy's viewing images of Vicky, Vicky would not have suffered any part of the damages she asserts she has suffered.  Accordingly, the Court cannot, on the limited record before it, say that Christy's conduct directly resulted in Vicky's damages.

### C.    BY STIPULATING TO AN AWARD OF $500.00 RESTITUTION, CHRISTY HAS RELIEVED THE UNITED STATES OF ANY EVIDENTIARY BURDEN TO PROVE RESTITUTION FOR THAT AMOUNT.

Generally, a court is permitted to award restitution damages when the defendant has stipulated to pay someone a given amount, because the defendant has conceded that issue.  See

United States v. Taylor, 41 F.App'x 380, 383 (10th Cir. 2002)(unpublished)("Given Taylor's concession in her stipulation that $41,398 would be an appropriate figure for restitution, the court did not abuse its discretion in ordering that she repay the bank this full amount of its loss.").  When a defendant stipulates that he will pay a certain amount of restitution, the United States has no further evidentiary obligation to prove that restitution is appropriate.  See United States v. Jackson, 459 F.App'x 747, 753 (10th Cir. 2012)(unpublished).  As the Tenth Circuit has stated:

> "Generally, this court is reluctant to relieve parties from the benefits or detriments of their stipulations."  In this case, Ms. Jackson's stipulation concerning the loss amount waives any challenge contrary to the stipulation. . . .  Finally, by stipulating to this loss amount on the day of the sentencing hearing, Ms. Jackson cannot now challenge those figures by claiming the government failed to provide evidence in support thereof at that hearing.  Instead, her stipulation to the loss figures released the government from any obligation to set forth such evidence at the sentencing hearing.

United States v. Jackson, 459 F.App'x at 753.  Cf. United States v. Rainbird, No. 09-2964, 2011 WL 6827854, at *1 (D.N.M. Dec. 19, 2011)(Browning, J.)("Because the parties have stipulated to an amount of $94,500.00 in restitution, the Court will accept the stipulation and order Rainbird to pay this amount in restitution pursuant to the stipulation.").  Thus, in light of Christy's stipulation that he will pay Vicky $500.00, the United States has satisfied its burden to prove that amount of restitution.  Accordingly, the Court will order that Christy pay $500.00 in restitution to Vicky.

## VII.   THE SENTENCING FACTORS IN 18 U.S.C. § 3553(a) JUSTIFY A 108-MONTH TERM OF IMPRISONMENT AND A LIFETIME TERM OF SUPERVISED RELEASE.[23]

---

[23]In light of the large number of objections Christy has raised to the factual statements contained in the Re-Disclosed PSR, the Court has gone through them with extra precaution to ensure that it has disregarded factual matters that it said would not impact its determination when arriving at Christy's sentence.  It has also not considered factual matters that it said it would not consider when arriving at Christy's sentence.  Ultimately, many of those factual matters Christy found objectionable are peripheral details and would have little discernable impact on a sentence a court would reach for Christy.  Here, they have, as promised, no impact.

The Re-Disclosed PSR calculates an adjusted offense level of 30 for Count 1.  See Re-Disclosed PSR ¶ 57, at 18.  The Re-Disclosed PSR calculates an adjusted offense level of 36 for Count 2.  See Re-Disclosed PSR ¶ 68, at 20.  After making an adjustment for the multiple counts under U.S.S.G. § 3D1.4, the USPO calculates a combined adjusted offense level of 37.  See Re-Disclosed PSR ¶¶ 69-75, at 20.  The Re-Disclosed PSR includes a 3-level reduction under U.S.S.G. § 3E1.1 based on Christy's acceptance of responsibility.  See PSR ¶ 76, at 20.  The Re-Disclosed PSR calculates a total offense level of 34.  See Re-Disclosed PSR ¶ 77, at 20.  The Re-Disclosed PSR lists his criminal history category as I, based on 0 criminal history points.  See Re-Disclosed PSR ¶ 80, at 21.  The Re-Disclosed PSR calculates that an offense level of 34 and a criminal history category of I results in a guideline imprisonment range of 151 to 188 months.  See Re-Disclosed PSR ¶ 107, at 27.

The Court has sustained the parties' objection to the Re-Disclosed PSR's application of a 4-level enhancement under U.S.S.G. § 2G2.2(b)(4).  After sustaining the 4-level objection, Christy's offense level for Count 2 is 32.  After accounting for multiple counts under U.S.S.G. § 3D1.4, Christy's adjusted offense level is 34.  See U.S.S.G. § 3D1.4.  After applying a 3-level reduction for acceptance of responsibility, Christy's total offense level is 31.  An offense level of 31 and a criminal history category of I yields a guideline imprisonment range of 108 to 135 months.  Other than on the issue of this objection to the 4-level enhancement under U.S.S.G. § 2G2.2(b)(4) and the resulting recalculation, the Court adopts the Re-Disclosed PSR's guideline calculation as its own.

Regarding supervised release, the USPO relates that 18 U.S.C. § 3583(k) permits a term of supervised release of "not less than 5 years to life."  Re-Disclosed PSR ¶ 109, at 27.  The USPO relates that U.S.S.G. § 5D1.1(b) prescribes a term of supervised release of "not less than 5 years to life."  Re-Disclosed PSR ¶ 110, at 27.  Regarding sex offenses, a policy statement set out in U.S.S.G.

§ 5D1.2(b) recommends that courts impose "the statutory maximum term of supervised release." U.S.S.G. § 5D1.2(b) ("(Policy Statement) If the instant offense of conviction is a sex offense, however, the statutory maximum term of supervised release is recommended."). The application notes to U.S.S.G. § 5D1.2 define a sex offense as:

> (A) an offense, perpetrated against a minor, under (i) chapter 109A of title 18, United States Code; (ii) chapter 109B of such title; (iii) chapter 110 of such title, not including a recordkeeping offense; (iv) chapter 117 of such title, not including transmitting information about a minor or filing a factual statement about an alien individual; (v) an offense under 18 U.S.C. 1201; or (vi) an offense under 18 U.S.C. 1591; or (B) an attempt or a conspiracy to commit any offense described in subdivisions (A)(i) through (vi) of this note.

U.S.S.G. § 5D1.2 cmt. n.1.  Christy has pled guilty to Counts 1 and 2 in the Information, charging him in Count 1 with a violation of 18 U.S.C. § 2422(a), that being coercion and enticement, and in Count 2 with a violation of 18 U.S.C. §§ 2252(a)(4)(b), 2252(b)(2), and 2256, that being possession of matter containing visual depictions of minors engaged in sexually explicit conduct.  See Plea Agreement ¶ 3, at 2.  18 U.S.C. § 2422(a) falls within Chapter 117 of Title 18, see 18 U.S.C. chap. 117, thus making the offense a sex offense within the meaning of U.S.S.G. § 5D1.1(b), see U.S.S.G. § 5D1.2 cmt. n.1.  18 U.S.C. §§ 2252 and 2256 both fall within Chapter 110 of Title 18, see 18 U.S.C. chap. 110, thus making the offense to which Christy pled guilty a sex offense under U.S.S.G. § 5D1.1(b), see U.S.S.G. § 5D1.2 cmt. n.1.  Thus, the guidelines recommend a lifetime term of supervised release.  In a congressional report generated along with a bill seeking to raise the statutorily permitted term of supervised release for certain sex offenses to a lifetime term, a report from the United States House of Representatives stated the following:

> Studies have shown that sex offenders are four times more likely than other violent criminals to recommit their crimes.  Moreover, the recidivism rates do not appreciably decline as offenders age.  According to the United States Department of Justice's Bureau of Justice Statistics, since 1980, the number of prisoners sentenced for violent sexual assault other than rape increased by an annual average of nearly

15 percent -- faster than any other category of violent crime.

Another factor that makes these numbers disturbing is that many serious sex crimes are never even reported to authorities. National data and criminal justice experts indicate that sex offenders are apprehended for a fraction of the crimes they actually commit. By some estimates, only one in every three to five serious sex offenses are reported to authorities and only 3 percent of such crimes ever result in the apprehension of an offender.

While any criminal's subsequent re-offending is of public concern, preventing sexual offenders from re-offending is particularly important, given the irrefutable and irreparable harm that these offenses cause victims and the fear they generate in the community. Sexual assault is a terrifying crime which leaves its victims with physical, emotional, and psychological scars and affects everyone around them.

This legislation will give Judges the discretion necessary to impose a term of supervised release that is appropriate for each defendant. Authorities will be able to monitor those sex offenders that pose the greatest threat to our society for as long as the court feels they are a danger. It is important to note that there are no mandatory requirements contained in this bill. If a Judge decides that supervision is not necessary, then there is no requirement to impose any term of supervised release.

H.R. Rep. No. 107-527, at 2-3, 5 (2002).

The Court has carefully considered the parties' arguments and the circumstances of this case. The Court has conducted two full evidentiary hearings in this case, one for a detention hearing, see Clerk's Minutes at 1, filed June 15, 2010 (Doc. 24), and one for a suppression hearing, see Clerk's Minutes at 1, filed April 21, 2011 (Doc. 159), and a shorter evidentiary hearing on whether taking Jane Doe's deposition was appropriate, see Sealed Clerk's Minutes at 1, filed September 8, 2011 (Doc. 184). Consequently, the Court has a great deal of familiarity with Christy's case. The Court has considered the guideline range for the applicable category of offense committed by the applicable category of defendant. The Court believes that the punishment that the guidelines set forth is appropriate for Christy's offenses, including a lifetime term of supervised release. The Court agrees with the parties that a sentence of 108 months is sufficient to reflect the seriousness

of the offenses.  The Court concludes that a lifetime term of supervised release is appropriate for Christy's offenses.  Thus, the Court imposes a term of 108-months imprisonment for Counts 1 and 2, and a lifetime term of supervised release for Counts 1 and 2.  These sentences will run concurrently.  This sentence adequately reflects the seriousness of the offenses, promotes respect for the law, provides just punishment, affords adequate deterrence, protects the public, avoids unwarranted sentencing disparities among similarly situated defendants, and otherwise fully reflects each of the factors embodied in 18 U.S.C. § 3553(a).

### A.   A GUIDELINE SENTENCE REFLECTS SERIOUSNESS OF THE OFFENSES.

Christy's conduct is horrible and justifiably deserves a lengthy term of imprisonment and supervised release.  First, Christy enticed and coerced a fragile and vulnerable sixteen year old to run away from her house, travel to an unfamiliar location, and engage in sexual relations with him, a relative stranger, who was approximately forty years older than her.  His conduct, however, causes the Court somewhat less concern given that Doe was of consensual age in New Mexico.  If Christy had enticed a child younger than sixteen, the offense would be a more serious one.  Nevertheless, the event will still likely haunt Doe for a good portion of her life.

Second, Christy exploited numerous children through his possession of child image and videos.  Child pornography is a serious crime, because, among other things, it promotes victimization of children, both when the child is forced to participate in production of sexually explicit images and each time an individual interested in child pornography views it.  See New York v. Ferber, 458 U.S. 747, 758 (1982)("The legislative judgment, as well as the judgment found in the relevant literature, is that the use of children as subjects of pornographic materials is harmful to the physiological, emotional, and mental health of the child.").  Viewers, like Christy, contribute to the

ongoing cycle of abuse and are in part responsible for the psychological and physical abuse of the child used to produce the images.  See United States v. Julian, 242 F.3d 1245, 1247 (10th Cir. 2001)("Pornography poses an even greater threat to the child victim than does sexual abuse of prostitution.  Because the child's actions are reduced to a recording, the pornography may haunt him in future years.").  The child pornography industry was founded upon the premise that individuals, like Christy, desire and will seek out such contraband.  See United States v. Norris, 159 F.3d 926, 930 (5th Cir. 2006).  As the Fifth Circuit has stated:

> Third, the consumer of child pornography instigates the original production of child pornography by providing an economic motive for creating and distributing the materials.  As Congress put it in explicit factual findings:
>
> > [T]he existence of and traffic in child pornographic images . . .
> >
> > . . . . inflames the desires of child molesters, pedophiles, and child pornographers, thereby increasing the creation and distribution of child pornography and the sexual abuse and exploitation of actual children who are victimized as a result of the existence and use of these materials[.]
>
> Plainly, Congress has described a chicken-and-egg scenario in which it would be impossible to determine whether child pornographers or consumers of child pornography were initially responsible for the creation of the child pornography industry.  The underlying point, however, is that there is no sense in distinguishing, as Norris has done, between the producers and the consumers of child pornography. Neither could exist without the other.  The consumers of child pornography therefore victimize the children depicted in child pornography by enabling and supporting the continued production of child pornography, which entails continuous direct abuse and victimization of child subjects.
>
> Any of these effects, stemming directly from a consumer's receipt of or willingness to receive child pornography, would amply justify the conclusion that a child depicted in the pornographic images was a "victim" of that crime.  We therefore disagree with Norris's suggestion the nature of the offense he committed requires that his counts of receiving child pornography be grouped as a matter of law.  We reject the suggestion that the commentary's references to victimless crimes and "indirect or secondary victims" compels the conclusion that the crimes of a "passive" child pornography recipient must be grouped because the resulting harm is somehow attenuated as compared to a person who actually produces or distributes

> child pornography.  As we have explained, the victimization of a child depicted in pornographic materials flows just as directly from the crime of knowingly receiving child pornography as it does from the arguably more culpable offenses of producing or distributing child pornography.

United States v. Norris, 159 F.3d at 930 (alterations in original)(citations omitted).  Accord United States v. Turner, 616 F.3d 566, 574 (11th Cir. 2010)(agreeing that "receiving possessing child pornography helps create market for more pornography, encouraging the victimization of more children").  Some men tend to think of viewing child pornography as victimless.  It is not.  The victims who write letters to the Court are people and victims.  Regardless of the inclination of some to see possession of child pornography as one of criminal justice system's lesser evils, it is not.  See United States v. Jager, No. 10-1531, 2011 WL 831279, at *15 (D.N.M. Feb. 17, 2011)(Browning, J.)("[S]ociety, and men in particular, must learn that child pornography is not a victimless crime, and that possessing these images and reviewing these images creates demand -- it fuels this cruel industry.").  No young child should be subjected, in a just society, to the treatment that child pornography depicts.  See United States v. Jager, 2011 WL 831279, at *15 ("These victims are an age where they effectively do not have a choice in these matters, and society must protect these minors and must protect them strongly.").

**B.  A 108-MONTH SENTENCE PROMOTES RESPECT FOR THE LAW, PROVIDES ADEQUATE DETERRENCE, AND AVOIDS UNWARRANTED SENTENCING DISPARITIES.**

The best method to promote respect for the law and to afford deterrence, both to Christy and future defendants in his shoes, is, as much as possible, uniformity in sentencing.  Additionally, uniform sentences avoid unwarranted sentencing disparities among similarly situated defendants.  Promoting respect for the law and adequate deterrence call for severe sentences for child-exploitation offenses.  The sentence of 108-months incarceration and a lifetime term of supervised

release affords adequate deterrence for Christy's criminal conduct.  A sentence at 108-months imprisonment is within the guideline range, thus providing some level of uniformity among similarly situated defendants.  Given that this is Christy's first conviction, putting aside for a moment the allegations about other sexual misconduct, this sentence is a significant one that will promote respect for the law and that will deter both Christy, and the public at large, from committing similar offenses.

While U.S.S.G. § 5D1.1(b) prescribes a term of supervised release of not less than five-years supervised release to life imprisonment, it is worth noting that a policy statement set out in U.S.S.G. § 5D1.2(b) recommends that courts impose "the statutory maximum term of supervised release" for sex offenses.  U.S.S.G. § 5D1.2(b) ("(Policy Statement) If the instant offense of conviction is a sex offense, however, the statutory maximum term of supervised release is recommended.").  If Christy was a younger defendant, the Court might be more inclined to impose a term of supervised release for a shorter term than the rest of Christy's life.  Given that he will not leave prison until he is approximately sixty-five, however, a lifetime term of supervised release is not substantially different than a ten-year term of supervised release.[24]  Christy might not even live to complete a ten-year term of supervised release.  Moreover, given what the Court stated in its June 28, 2010 MOO, the Court is concerned that Christy has molested more young people than just Doe.  As the Court has previously stated: "By his admission, Christy has engaged in multiple acts of hands-on victimization of children."  June 28, 2010 MOO at 13-14.  As the Court stated in its June 28, 2010 MOO, Christy is a risk to the community.  While recidivism usually decreases as defendants age, Christy is 59

---

[24]The Actuarial Life Table, which the United States Social Security Administration publishes puts life expectancy for a 65-year-old male at an additional 17.19 years.  See U.S. Soc. Sec. Admin., Actuarial Life Table, http://www.ssa.gov/oact/STATS/table4c6.html (last visited July 18, 2012).

years old, and does not appear to be any less interested in young children in spite of his age. The

Court agrees with Dr. Petzold that older defendants often have a lower risk of recidivism. See, e.g.,

United States v. Chapman, No. 11-0904, 2012 WL 2574814, at *17 (D.N.M. June 22,

2012)(Browning, J.)("She will be approaching sixty when she completes her sentence, and her risk

of recidivism will decrease as a result of her age upon release."). Nevertheless, the Court does not

apply that general principle without considering the individual defendant. See, e.g., United States

v. Hernandez-Flores, No. 02-1020, 2012 WL 119609, at *5 (D.N.M. Jan. 3, 2012)(Browning,

J.)("While Hernandez-Flores has a lower risk of recidivism because of her age and health, she has

a lengthy criminal history and committed five offenses, not including the current offense, when she

was over fifty-years old. That is atypical among defendants that come before the Court."). The

Court draws no comfort that Christy will be safer when released from prison in light of his

significant criminal conduct at a relatively old age. The Court does not see a sound basis to vary

from the guidelines' recommendation of a term of lifetime supervised release.

### C.   CHRISTY'S HISTORY AND CHARACTERISTICS, THE NEED FOR JUST PUNISHMENT, AND THE NEED TO PROTECT THE PUBLIC SUPPORT THE SENTENCE.

The Court agrees with Dr. Petzold that Christy, looking at his upbringing and history in

isolation, would not be a person one would expect to commit criminal activity. He has a stable work

history, served time in the military, and has few notable problems in his childhood that would

suggest he would engage in aberrant sexual behavior. On paper, putting aside Christy's sexual

misconduct, Christy appears to be an upstanding citizen. He may have some impulsive qualities,

but his profile would not suggest that he would engage in criminal activity.

Some aspect of Christy's life that is difficult to quantify, however, has led Christy into

serious sexually aberrant behavior. The crimes to which Christy has pled guilty are troubling

enough and suggest that he has developed a longstanding interest in sex with children.  If the Court

had lingering doubts about other sexual misconduct in which Christy had engaged, an absence of

evidence about prior sexual misconduct might counsel in favor of a lower sentence.  Those are not

the circumstances here.  The level of Christy's interest in sex with children, as expressed by his

obsessive behavior in chatting with minors online and his abhorrent manipulation of children who

are near him, is deep-seated to a troubling degree.  The USPO provides examples of "only the most

egregious" of the chats, including the following:

> In July 2009, Mr. Christy discussed sexual matters with a 12 year old, stating
> he was "not far away by plane."  During the same conversation, Mr. Christy admitted
> he had a "neighborhood girl" as his "playmate," claiming her grandfather didn't
> know.  Mr. Christy further admitted he liked younger than 12 and would go "9 to 10
> year olds."  In a chat from July 23, 2009, the Defendant discussed being "lovers"
> with his wife and daughter, if he had one.  In this same chat, Mr. Christy discusses
> with someone that if he lived with her and her child, he (Mr. Christy) would [be] able
> to teach her baby, specifically stating "you have a fresh daughter."  In another, dated
> on August 23, 2009, Mr. Christy stated "I'd always thought when my daughter first
> fed from her mother that I would masturbate and put cum on her nipple so I could
> nourish my girl too."  He further states "I'd want us all to sleep in one bed with no
> barriers.  Daddy's cock should be pacifying to his kids.  They should feel safe and
> secure and loved sucking him fall to sleep with his cock in their mouth."
> Additionally, in a chat from August 24, 2009, the Defendant admitted he is "drawn
> to open sex in his own family," and added that children who have sexual
> relationships in their own families are "more balanced than most."  Mr. Christy also
> acknowledged that "even though he is more drawn to girls, his sons would know him
> sexually too."  In a chat dated August 26, 2009, Mr. Christy admitted to performing
> sex on a 12 year old neighborhood boy within the last three months, and a 14 year
> old girl a few years ago.

Re-Disclosed PSR ¶ 34, at 13-14.  "Investigators noted Mr. Christy's chat logs revealed he dedicated

a lot of his time in internet chat looking for other adolescent girls in which to cultivate a sexual

relationship."  Re-Disclosed PSR ¶ 35, at 14.  As the Court has already noted, there are  voluminous

amounts of other chatroom conversations that span back several years.  See June 28, 2010 MOO at

5-7 ("The voluminous chat transcripts the forensic examiner recovered include sexual conversations

between Christy and other, including some identifying themselves as minors.").

Furthermore, the Court has already had evidence about Christy engaging in sexual misconduct with children who live near him, including grooming them to desensitize them to his sexual advances:

> In a chat dated August 26, 2009, Christy admitted to having sexual relations with a twelve-year old boy within the last few months and with a fourteen-year old girl "a few years ago." United States' Exhibit 8. The United States represents that it has interviewed the boy, believed to be the one of whom Christy spoke, but the boy did not disclose. The boy described, however, how he would go on overnight scuba-diving trips with Christy, how Christy provided him movies to watch and gave him gifts, and how Christy provided him with wireless internet access. Proctor testified that behavior, like that which the boy described, is consistent with grooming behavior. Also in the chat dated August 26, 2009, Christy stated: "There is a 12 year old girl down the street who has a bit of a crush on me. [S]o I'm letting that just move at its own pace."

> In the course of their investigation, Bernalillo County Sheriff's deputies arranged a safe-house interview of a nine-year old girl who formally [sic] was a neighbor of Christy's and with whom Christy had contact. This child described that, a few years ago, Christy touched her vaginal area through her clothing when she was at Christy's residence sitting in front of his computer. The child's fourteen-year old sister and fourteen-year old cousin were also safe-house interviewed, and, according to Proctor, described conduct by Christy that was consistent with grooming behavior. Specifically, Christy would regularly invite them over to swim in his hot tub, and take them on outings to the Hinkle Family Fun Center or to the McDonalds playground. They stated that Christy would kiss them on the lips, that he would pick them up in such a way that he would place his hands on their breasts, and that he would allow their legs to straddle him while he touched their buttocks.

June 28, 2010 MOO at 6-8 (footnote omitted)(citations omitted). These facts cause the Court great concern that Christy will recidivate and harm other children, either by chatting with them online to arrange a public meeting, harming children in the neighborhood, or accessing child pornography once again.

The Court agrees with Dr. Petzold that older defendants often have a lower risk of recidivism. See, e.g., United States v. Chapman, 2012 WL 2574814, at *17 ("She will be

approaching sixty when she completes her sentence, and her risk of recidivism will decrease as a result of her age upon release."). Nevertheless, the Court does not apply that general principle without considering the individual defendant. See, e.g., United States v. Hernandez-Flores, 2012 WL 119609, at *5 ("While Hernandez-Flores has a lower risk of recidivism because of her age and health, she has a lengthy criminal history and committed five offenses, not including the current offense, when she was over fifty-years old. That is atypical among defendants that come before the Court."). In many ways, Christy's criminal history category is misleading. As the Court has already stated: "While the Court recognizes that Christy has no criminal history, the seized evidence indicates that Christy has a history of enticing children, and has no criminal history only because he has avoided being caught." June 28, 2010 MOO at 13-14. Furthermore, as a congressional report has found, there is generally a weaker link, compared to other defendants, between the age of sex offenders and the drop in their recidivism rates:

> Studies have shown that sex offenders are four times more likely than other violent criminals to recommit their crimes. Moreover, the recidivism rates do not appreciably decline as offenders age. According to the United States Department of Justice's Bureau of Justice Statistics, since 1980, the number of prisoners sentenced for violent sexual assault other than rape increased by an annual average of nearly 15 percent -- faster than any other category of violent crime.

H.R. Rep. No. 107-527, supra, at 2.

Dr. Petzold acknowledges that sexual crimes often go unreported. A congressional report has made similar findings:

> Another factor that makes these numbers disturbing is that many serious sex crimes are never even reported to authorities. National data and criminal justice experts indicate that sex offenders are apprehended for a fraction of the crimes they actually commit. By some estimates, only one in every three to five serious sex offenses are reported to authorities and only 3 percent of such crimes ever result in the apprehension of an offender.

> While any criminal's subsequent re-offending is of public concern,

> preventing sexual offenders from re-offending is particularly important, given the irrefutable and irreparable harm that these offenses cause victims and the fear they generate in the community.  Sexual assault is a terrifying crime which leaves its victims with physical, emotional, and psychological scars and affects everyone around them.

H.R. Rep. No. 107-527, supra, at 2.  The problem of under-reporting increases when the victim is a vulnerable one, such as a child or an elderly person, over which the perpetrator may be able to exercise additional influence.  The Court has a volume of evidence before it regarding Christy's sexual misconduct, and the significant amount of evidence troubles the Court that there may be more, perhaps far more, victims out there.  Furthermore, because of the technology involved, and the relative anonymity afforded to internet users, uncovering computer-related child exploitation offenses is a difficult task for law enforcement.  Christy's criminal activity, including child pornography-related conduct and hands-on sexual contact with children, lasted years before police detection.  Erring on the side of leniency, in light of the evidence before the Court, would create too great of a risk to the public.  A sentence of 108-months imprisonment and lifetime supervised release is a more just punishment.  While it is impossible to know whether Christy will commit crimes in the future, one thing is certain: during his nine-year term of incarceration, Christy will not return to his long-standing interest in children and child pornography.  A lifetime term of supervised release will also ensure that Christy receives as much treatment as possible to avoid relapsing into his old ways.

While the Court's task, as a district court, is not to arrive at a reasonable sentence -- it is to come up with one that reflects the factors in 18 U.S.C. § 3553(a), see United States v. Conlan, 500 F.3d 1167, 1169 (10th Cir. 2007)("[A] district court's job is not to impose a reasonable sentence. Rather, a district court's mandate is to impose a sentence sufficient, but not greater than necessary, to comply with the purposes of section 3553(a)(2)." (citation omitted)) -- the Court believes this

-94-

sentence is reasonable.  And perhaps most important in this calculation, the Court believes that this sentence is sufficient without being greater than necessary to comply with the purposes of punishment Congress set forth in the Sentencing Reform Act of 1984, Pub. L. No. 98-473, 98 Stat. 1987 (codified as amended in scattered sections of 18 U.S.C.).  The Court sentences Christy, as to Counts 1 and 2, to 108-months imprisonment and a lifetime term of supervised release.  These sentences will run concurrently.

**IT IS ORDERED** that the objections regarding the application of a 4-level enhancement under U.S.S.G. § 2G2.2(b)(4) to Defendant Edward Christy's offense level contained in the United States' Sentencing Memorandum and Recommendation, filed January 20, 2012 (Doc. 200), and in the Defendant's Objections to Presentence Report, filed March 15, 2012 (Doc. 203-1), are sustained. The Court will grant Plaintiff United States of America's requests for a sentence of 108-months imprisonment and lifetime supervised release.  The Court will overrule the remaining objections in the Christy's Objections.  The Court will grant Christy's request for a sentence of 108-months imprisonment, but will deny his request for a 5-year term of supervised release.  The Court sentences Christy, as to Counts 1 and 2, to 108-months imprisonment and a lifetime term of supervised release. These sentences will run concurrently.

_____
UNITED STATES DISTRICT JUDGE

*Counsel:*

Kenneth J. Gonzales
 United States Attorney
Charlyn E. Rees
Holland S. Kastrin
 Assistant United States Attorneys
Albuquerque, New Mexico

*Attorneys for the Plaintiff*

Lee P. McMillian
Law Offices of Lee McMillian, P.C.
South Houston, Texas

*Attorney for the Defendant*