# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

      Plaintiff,

vs.                                               No. CR 10-1534 JB

EDWARD CHRISTY,

      Defendant.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on the Defendant's Motion to Clarify Order Allowing Mr. Christy to Withdraw his Plea to Child Pornography Charge, filed June 15, 2017 (Doc. 308)("Motion to Clarify"). The Court held a hearing on August 31, 2017. The primary issues are: (i) whether Defendant Edward Christy's Motion to Clarify is ripe; and (ii) whether, if Christy withdraws his guilty plea for a child pornography charge, the Plea Agreement's waiver of Christy's rights under rule 410 of the Federal Rules of Evidence ("rule 410 waiver") binds Christy. The Court grants the Motion to Clarify and concludes that: (i) Christy's Motion to Clarify is ripe, because whether the rule 410 waiver is enforceable if Christy withdraws his guilty plea is important information that Christy needs to make a meaningful decision; and (ii) the rule 410 waiver will bind Christy if he withdraws his guilty plea and the United States prosecutes the Plea Agreement's lone child pornography charge.

## PROCEDURAL BACKGROUND

In May 2010, a federal grand jury returned an Indictment, see Indictment, filed May 26, 2010 (Doc. 2), charging Christy with one count of transportation with intent to engage in criminal sexual activity, under 18 U.S.C. § 2423(a), and three counts of possession of matter

containing visual depictions of minors engaged in sexually explicit conduct, under 18 U.S.C. §§ 2252(a)(4)(B), 2252(b)(2), and 2256. See Indictment at 1-3. These charges related to Christy's actions with a sixteen-year-old girl, which the Honorable Lourdes A. Martinez, United States Magistrate Judge describes in the Proposed Findings and Recommended Disposition, filed May 5, 2016 (Doc. 265)("PFRD"). On September 30, 2011, Plaintiff United States of America filed an Information charging Christy with one count of Coercion and Enticement, under 18 U.S.C. § 2422(a), and one count of Child Pornography, under 18 U.S.C. §§ 2252(a)(4)(B), 2252(b)(2), and 2256. See Information at 1, filed September 30, 2011 (Doc. 193).

Christy entered into a plea agreement with the United States as to both of the charges in the Information. See Plea Agreement at 2, filed September 30, 2011 (Doc. 195). In the Plea Agreement, Christy asserts:

> I . . . knowingly possessed a matter containing any visual depiction that had been shipped and transported in interstate and foreign commerce and which was produced using materials which had been so shipped and transported, by any means, including by computer, the production of which involved the use of a minor engaging in sexually explicit conduct and is of such conduct. I possessed depictions of minors engaged in sexually explicit conduct on my Hewlett Packard HDX 16 16 Laptop, Serial Number CNF9241L65, with an internal Toshiba Hard Drive MK3255GSX, Serial Number 6981F9ZNS. I knew it was illegal for me to possess such images.

Plea Agreement ¶ 12, at 10. In the Plea Agreement, the United States and Christy stipulated to a sentence of 108 months imprisonment, see Plea Agreement ¶ 9(a), at 5, and Christy waived his right to appeal or collaterally attack his conviction or sentence for any reason other than ineffective assistance of counsel in negotiating or entering the plea agreement or its waiver provision, but he retained his right to appeal the Court's denial of his motion to suppress, see Plea Agreement ¶ 22, at 14-15. Christy also agreed:

> Except under circumstances where the Court, acting on its own, fails to accept this plea agreement, the Defendant agrees that, upon the Defendant's signing of this plea agreement, the facts that the Defendant has admitted under this plea agreement as set forth above . . . shall be admissible against the Defendant under Federal Rule of Evidence 801(d)(2)(A) in any subsequent proceeding, including a criminal trial, and <u>the Defendant expressly waives the Defendant's rights under the Federal Rule of Criminal Procedure 11(f) and <u>Federal Rule of Evidence 410 with regard to the facts the Defendant admits in conjunction with this plea agreement</u></u>.

Plea Agreement ¶ 12(b), at 11 (emphasis added)("410 waiver"). On May 23, 2012, the Court accepted the parties' proposed stipulated sentence, imposed two concurrent prison terms of 108 months each, and imposed concurrent lifetime supervised release terms for each count. <u>See</u> Judgment at 2, filed August 17, 2012 (Doc. 226). At the sentencing hearing, and pursuant to the Plea Agreement, the United States requested and obtained an order of dismissal of the Indictment against Christy. <u>See</u> Order of Dismissal at 1, filed May 23, 2012 (Doc. 214).

In October, 2015, Christy made the Motion Under 18 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody, filed October 1, 2015 (Doc. 250)("2255 Motion"). In his 2255 Motion, Christy raised the following arguments: (i) he is actually innocent of violating 18 U.S.C. § 2242(a); (ii) his convictions must be vacated because of violations of the Speedy Trial Act, 18 U.S.C. §§ 3161-3174; (iii) prosecutorial misconduct infects his conviction; (iv) he was denied his right to reasonable bail under the Eighth Amendment of the Constitution of the United States of America; (v) his guilty plea was not knowing and voluntary; (vi) his guilty plea is void *ab initio*; (vii) his equal protection rights were violated; and (viii) the state and federal statutes under which he was prosecuted are void for vagueness. <u>See</u> First Motion at 2-3. In considering the Coercion and Enticement charge, Magistrate Judge Martinez noted that § 2422(a) requires the United States to prove two elements: (i) that Christy knowingly persuaded, induced, or enticed a Minor to travel in interstate commerce; (ii) to engage in any

sexual activity for which any person can be charged with a criminal offense. <u>See</u> PFRD at 7. Magistrate Judge Martinez noted that the facts which establish the first element, enticing interstate travel, are uncontested, and that, as support for the second element, criminal sexual activity, the United States alleged that Christy could be charged with Criminal Sexual Penetration in the Second Degree ("CSP II") pursuant to N.M. Stat. Ann. § 30-9-11(E)(5) (2009). PFRD at 7. That charge required proof that Christy engaged in "criminal sexual penetration perpetrated . . . in the commission of any other felony," and the "other felon[ies]" charged by the United States were Contributing to the Delinquency of a Minor, under N.M. Stat. Ann. § 30-6-3, and Unlawful Custodial Interference, under N.M. Stat. Ann. § 30-4-4(C). <u>See</u> PFRD at 7.

The United States explains that, at the time Christy and the United States were negotiating and executing the plea agreement, "under the [United States'] theory of prosecution, the fact that [the minor] legally and factually consented to have sex with the Defendant did not matter because the sex was perpetrated in the commission of other felony offenses, thereby establishing that [Christy] could have been charged with CSP II." United States' Response to Defendant's Motion to Vacate, Set Aside, or Correct Sentence Pursuant to 28 U.S.C. § 2255 at 7, filed December 5, 2015 (Doc. 9)("Response"). In April, 2014, however, the Supreme Court of New Mexico issued <u>State v. Stevens</u>, 2014-NMSC-011, 323 P.3d 901, and disapproved of earlier state cases that had supported this interpretation of the CSP II statute and "clarif[ied] that simply causing another person to engage in otherwise lawful sexual intercourse at the time a felony is being committed does not constitute the crime of criminal sexual penetration during the commission for a felony." <u>State v. Stevens</u>, 2014-NMSC-011, ¶ 2, 323 P.3d at 904.

In the PFRD, Magistrate Judge Martinez explained that, while at the time of Christy's

underlying criminal case, "a fair interpretation of New Mexico's CSP II statute . . . was that engaging in consensual sex with a sixteen-year-old could be the basis for a CSP II charge in New Mexico," PFRD at 10, after the State v. Stevens decision, it became clear that Christy "could not have committed 'criminal sexual penetration,' which is an element of CSP II, because the facts underlying the charge against him were that he engaged in consensual sex with someone who could legally consent when the sexual activity occurred," PFRD at 11. Magistrate Judge Martinez noted that the United States concedes that the holding in State v. Stevens likely applies retroactively to Christy's plea and conviction, and that, pursuant to State v. Stevens, the factual basis for Christy's guilty plea to Coercion and Enticement no longer establishes that he could have been charged with CSP II. See PFRD at 11-12. Magistrate Judge Martinez, therefore, recommended that the Court grant Christy's § 2255 Motion as to his conviction for Coercion and Enticement, and that the Court vacate his conviction and sentence for this charge. See PFRD at 12, 25. As for Christy's claims regarding his Child Pornography conviction, Magistrate Judge Martinez concluded that the waiver to collateral attack in the plea agreement is enforceable, and therefore recommended that the Court reject Christy's arguments challenging his conviction for Child Pornography.[1] See PFRD at 15.

---

[1]Magistrate Judge Martinez determined Christy could collaterally attack his Coercion and Enticement conviction despite waiving the right to collaterally attack his conviction on any ground other than: (i) his counsel's ineffective assistance in negotiating the plea; and (ii) his retained right to appeal the denial of his motion to suppress. See PFRD at 12 n.11. Magistrate Judge Martinez explained that the United States "concedes that 'principals [sic] of equity dictate that [Movant's] challenge to [the Coercion and Enticement] conviction is not barred by the appeal waiver.'" PFRD at 12 n.11 (quoting Response at 4)(alterations in PFRD). Magistrate Judge Martinez concluded that "equity dictates that Movant be allowed to challenge his Coercion and Enticement conviction in this proceeding, despite the terms of the waiver." PFRD at 12 n.11. Moreover, the United States did not file any objections. Although the Court might not have arrived at the same conclusion on a clean slate, because neither the United States nor Christy object to the PFRD's position, the Court determined that Magistrate Judge Martinez' findings and recommended disposition in the PFRD are not clearly erroneous, arbitrary,

Having recommended that the Court vacate Christy's Coercion and Enticement conviction, Magistrate Judge Martinez next considered what impact vacating this conviction would have on Christy's conviction for Child Pornography. See PFRD at 16. Magistrate Judge Martinez concluded that this case's facts do not squarely fit with other cases' holdings, which require that the Court vacate the entire plea agreement, and that the Court return the parties to their statuses before entering into the pleas. See PFRD at 16. Magistrate Judge Martinez concluded that, here, however, Christy's sentences are not consecutive, and the charges of Coercion and Enticement and Child Pornography are not interdependent. See PFRD at 21. Magistrate Judge Martinez therefore concluded that the Plea Agreement has not been rendered invalid based on vacatur of the Coercion and Enticement charge. See PFRD at 21.

Magistrate Judge Martinez recommended that, pursuant to United States v. Benard, 680 F.3d 1206 (10th Cir. 2012)("Benard")'s holding, the Court give Christy the option to withdraw his plea to the Child Pornography charge. See PFRD at 21. Magistrate Judge Martinez recommended that, if Christy elects to stand by the Plea Agreement, and to not withdraw his plea and conviction as to the Child Pornography charge, the Court give Christy the opportunity to ask the Court for a recalculation of his sentence with regard to that one charge. See PFRD at 22. Last, Magistrate Judge Martinez recommended that, if Christy elects to withdraw his plea to the Child Pornography charge, the Court should allow the United States to decide whether to pursue only the Child Pornography charge that was part of the plea agreement or to reinstate the Child Pornography charges in the Indictment under the frustration-of-purpose doctrine. See PFRD at 24.

After a de novo review of Magistrate Judge Martinez' PFRD, the Court overruled

obviously contrary to law, or an abuse of discretion, and did not disturb her conclusion.

Christy's Objections and adopted the PFRD.  See Memorandum Opinion and Order Adopting

Magistrate Judge's Proposed Findings and Recommended Disposition at 1-2, filed June 30, 2016

(Doc. 269)("2255 MOO").  Pursuant to the Magistrate Judge's recommendation, the Court gave

Christy a choice:

> [T]he Petitioner/Defendant shall file in the underlying criminal case a notification stating only one of the following options: (a) "I hereby elect to stand by the Plea Agreement as to the plea and conviction for Child Pornography, with the understanding that I may ask the Court for a recalculation of my sentence with regard to that charge."; or (b) "I hereby elect to withdraw my plea to the Child Pornography charge, with the understanding that by doing so, the Government may reinstate the charges in the Indictment regarding the Child Pornography charges."

2255 MOO at 19-20.

## 1.    The Appeal.

On the same day that the Court entered its 2255 MOO, it also entered a Final Judgment,

filed June 30, 2016 (Doc. 270), and an Order Denying Certificate of Appealability, filed June 30,

2016 (Doc. 271)(concluding that Christy had "failed to make a substantial showing of a denial of

constitutional rights").  Christy then requested that the Court reconsider its Certificate of

Appealability denial, arguing that he was denied due process, "because he was misinformed by

the Court as to the elements of . . . the predicate felony underlying his conviction," and, although

the conviction was dismissed, "the entire plea agreement was tainted."  Motion to Reconsider

Denial of Certificate of Appealability at 1, filed July 15, 2017 (Doc. 272).  In response, the

United States contended that Christy was attempting to raise the same arguments which he raised

in his 2255 Motion, and that Christy had not met the legal standard for reconsideration.  See

United States' Response to Defendant's Motion to Reconsider Denial of Certificate of

Appealability at 1-2, filed July 20, 2016 (Doc. 274).  In reply, Christy contended that it was clear

error for the Court to conclude that he had adequate notice of the charges to which he pled guilty,

so his plea is constitutionally invalid. See Reply to United States' Response to Motion to Reconsider Denial of Certificate of Appealability at 1-2, filed August 8, 2016 (Doc. 285). The Court dismissed Christy's Motion to Reconsider Denial of Certificate of Appealability, concluding that Christy's arguments are "inextricably tied to the merits of the disposition of his prior habeas petition, and, therefore constitutes a second or successive petition." Order Dismissing Motion to Reconsider Denial of Certificate of Appealability at 3, filed August 24, 2016 (Doc. 289). Consequently, the Court transferred Christy's request to the Tenth Circuit. See Order Dismissing Motion to Reconsider Denial of Certificate of Appealability at 3 (citing Spitznas v. Boone, 464 F.3d 1213, 1217 (10th Cir. 2006)(holding that, if "the district court concludes that the motion is actually a second or successive petition, it should refer the matter to [the Tenth Circuit] for authorization under § 2244(b)(3)")). The Tenth Circuit denied Christy's request for a certificate of appealability, concluding, among other things, that: (i) because the Court gave Christy the option of withdrawing from the plea agreement, his argument that his plea was not knowing and voluntary is moot; and (ii) Christy "has provided no viable basis for relief [and] reasonable jurists would not find the district court's denial of his claims debatable or wrong." Order Denying Certificate of Appealability at 4-5 (dated March 31, 2017), filed March 31, 2017 (Doc. 301-1).

## 2. **The Motion to Clarify.**

Christy submitted his Motion on June 15, 2017. See Motion at 7. Christy asks the Court to clarify its 2255 MOO, "so that he can make an informed decision" whether to withdraw his plea. Motion at 1. Christy begins by arguing that, according to Magistrate Judge Martinez' PFRD, the parties' mutual mistake on a charge's elements voids the entire plea agreement, including the rule 410 waiver. See Motion at 4 (citing PFRD at 21; United States v. Lewis, 138 F.3d 840 (10th Cir. 1998)). Under United States v. Bunner, 134 F.3d 1000 (10th Cir. 1998)

- 8 -

("Bunner"), Christy asserts, when a defendant's prior conviction serves as the basis for a plea deal, and changes to the law later voids that conviction, the defendant has the option to not abide by the plea agreement's obligations; if the defendant takes that option, the prosecutors are released from their plea agreement's obligations. See Motion at 5 (citing Bunner 134 F.3d at 1005). Christy insists the same reasoning applies in this case. See Motion at 5. Here, according to Christy, the Supreme Court of New Mexico's clarification in State v. Stevens, 2014-NMSC-011, 323 P.3d 901, "rendered the government's performance of the plea agreement virtually worthless" to Christy, and, so, Christy argues, should he choose to withdraw his plea to the child pornography charge, the United States would also be relieved of its obligations under the plea agreement, "and the parties would be returned to the status quo ante." Motion at 6. Christy recognizes that Bunner's facts are not identical to the facts here -- in Bunner, the defendant's "sole conviction" was deemed factually impossible, whereas here, "only one of Mr. Christy's two convictions was deemed factually impossible." Motion at 6. Christy argues that the distinction is immaterial here, because in both cases, the defendant is faced with the choice to void his or her obligations under the plea agreement, which would, in turn, release the prosecutors from their obligations. See Motion at 6 ("[T]he Court . . . is simply allowing Mr. Christy to decide whether he truly wants that outcome" -- i.e., returning to the status quo ante -- "given that . . . the government will then have the right to reinstate the child pornography charges.").

3.    **The Response to the Motion.**

The United States opposes the Motion. See Response at 1. The United States first argues that the challenged 2255 Order is clear, and that, by "attempt[ing] to inject uncertainty" into the 2255 Order and the Magistrate Judge's PFRD, Christy is asking the Court "to issue a ruling that directly conflicts" with the 2255 Order. Response at 5. The United States argues that, because

the PFRD enforced the plea agreement's collateral attack waiver, the rule 410 waiver must likewise be enforceable. See Response at 6. "Accordingly, it is the law of the case that Defendant's plea agreement is knowing and voluntary and remains valid, and that the waivers contained in it are enforceable." Response at 6. According to the United States, in effect, Christy is trying to get another "bite at the apple by asking the Court, under the guise of . . . seeking clarification, to invalidate the plea agreement by law, rather than [by] Defendant's choice." Response at 6. The United States also argues that the PFRD and the 2255 order implicitly and expressly distinguish this case from the Tenth Circuit cases that Christy references, noting, e.g., that the PFRD states that United States v. Lewis and other cases where the court vacated "entire plea agreements . . . and the parties returned to their statuses prior to entering into the pleas, do not squarely fit with the facts of this case." Response at 6.

Second, the United State argues that whether the 410 waiver is valid is not yet ripe for the Court's consideration, because Christy has yet to withdraw from the plea agreement. See Response at 7. Consequently, Christy "invites this Court to issue an advisory opinion." Response at 7.

Third, the United States asserts that, should the Court "choose to state a likely ruling on the enforceability of the rule 410 waiver to facilitate Defendant's decision," the Court should conclude that the waiver is enforceable, even if Christy withdraws from the plea agreement, because Christy entered the plea agreement knowingly and voluntarily. Response at 7. Not enforcing a plea agreement's rule 410 waiver after the defendant backs out of the plea agreement goes against the rule 410 waiver's entire purpose in the first place, the United States argues, because "the only time the United States would ever need to enforce a Rule 410 waiver is *after* a defendant has withdrawn from a plea agreement containing such a waiver." Response at 9

(citing <u>United States v. Jim</u>, 786 F.3d 802, 802 (10th Cir. 2015)). The United States adds that the plea agreement's terms hold that the Court may not enforce a rule 410 waiver if the Court is the one invaliding the plea agreement, and not if the defendant withdraws. <u>See</u> Response at 9.

**4.      The Reply to the United States' Response.**

Christy responded with his Reply to United States' Response in Opposition to Defendant's Motion to Clarify 2255 Order, filed July 11, 2017 (Doc. 310)("Reply"). First, Christy asserts that the question whether the rule 410 waiver is enforceable is ripe, because "resolution of this issue impacts the choice Mr. Christy will make" on whether to withdraw from the plea agreement, and neither the PFRD nor the 2255 Order resolves the question. Reply at 1-2.

Second, Christy denies he is trying to "get another bite at the proverbial apple." Reply at 2. Rather, Christy asserts that he "is simply urging the Court to rule explicitly what it already has ruled implicitly, i.e., that the entire plea agreement will be voided under the frustration of purpose doctrine should Mr. Christy elect to withdraw his plea to the child pornography charge." Reply at 2. Moreover, Christy argues that the United States "affirmatively argued in the § 2255 proceeding that the Court should vacate the entire plea agreement on grounds of 'mutual mistake' and the 'sentencing package' theory if it were inclined to do anything other than simply resentence Mr. Christy on the child pornography conviction." (quoting United States' Response to Defendant's Motion to Vacate, Set Aside, or Correct Sentence Pursuant to 28 U.S.C. § 2255, filed December 5, 2015 (Doc. 256)). In other words, Christy asserts that the United States attempts to "have its cake and eat it too" by arguing, in the § 2255 proceeding, that if the Court allows Christy to withdraw his plea to the child pornography charge on grounds of mutual mistake, the Court should also allow the United States to revive the charge, and arguing now that, should Christy withdraw from the plea, the United States is relieved of all obligations under that agreement, but Christy remains bound by the rule 410 waiver. Reply at 3. Christy adds, in a

footnote, that "[e]ven today, the government understands that the Magistrate Judge 'recommended that Defendant be given the option to withdraw from his plea **and the plea agreement** with respect to his child pornography charge.'" Reply at 3 n.1 (emphasis added by Christy)(quoting Response at 4).

Christy then argues that the Court, in its 2255 Order, "implicitly recognized" that "the only reason the government is allowed to reinstate the dismissed child pornography charges in this case is because, upon withdrawal of his plea, Mr. Christy will be 'relieved of his obligations under the plea agreement,'" Reply at 4 (quoting 2255 Order at 16), and that, if the United States reinstates the charges, the parties will be returned to "the positions they occupied before the defendant entered his guilty plea," Reply at 4 (citing 2255 Order at 16). Christy also quotes the Court as stating, "[u]pon restoration of the status quo ante, **the plea agreement no longer [binds] the parties**." Reply at 4 (quoting 2255 Order at 16)(emphasis and alterations added by Christy). Additionally, Christy notes, the Magistrate Judge wrote, in the PFRD, that <u>Benard</u> "'appears most applicable to the facts of the case,'" and that its holding supports giving Christy the option to withdraw his plea. Reply at 4 n.2 (quoting PFRD at 21). Christy asserts that, in <u>Benard</u>, the Tenth Circuit held that, when a suppression motion affects one of two crimes to which a defendant pled guilty, the defendant should have the option to withdraw the plea, and "the parties will be **restored to the status quo ante** except as to the improperly admitted evidence." Reply 4-5 n.5 (quoting <u>Benard</u>, 680 F.3d at 1215)(emphasis added by Christy).

Next, Christy argues that <u>United States v. Jim</u> is inapposite. <u>See</u> Reply at 5. Christy writes:

> <u>Jim</u> . . . does not stand for the overly-broad proposition that a Rule 410 waiver will be invalidated only when it is later determined that the defendant unknowingly and involuntarily entered into the agreement. <u>Jim</u> did not present the situation, like here, where the defendant entered into a plea agreement

involving multiple counts only to find out later that one of the convictions was invalid as a matter of law. <u>Jim</u> did not present the situation, like here, where both parties were mutually mistaken when they entered into the agreement. And, <u>Jim</u> did not present the situation, like here, where the benefits both parties were to receive from the contract have been frustrated.

Reply at 6.

Finally, Christy argues that the Court "never warned" him that the rule 410 waiver would be enforceable "even if it turned out that one of his convictions contemplated by the plea agreement was invalid, that the package deal he thought he was getting was illusory, and that the government would be entitled to reinstate the charges that it dismissed pursuant to the defective agreement." Reply at 6.

**5.    <u>The Hearing</u>.**

The Court held a hearing on the motion on August 31, 2017. <u>See</u> Transcript of Hearing (taken August 31, 2017)("Tr.").[2]  The Court began by stating that it is "inclined to think that the Government's position is the correct one, that Mr. Christy is stuck with this waiver." Tr. at 2:2-6 (Court).  Regarding <u>United States v. Jim</u>, the Court acknowledged that are differences between that case and the one presently before it, but "I'm inclined to construe it the same way." Tr. at 2:15-18 (Court). The Court then invited Christy to make his case. <u>See</u> Tr. at 3:7-9 (Court).

Christy began by "reiterat[ing] that Mr. Christy maintains his argument that the plea agreement that the plea agreement as a whole was not knowing and voluntary because of the charge to the enticement." Tr. at 3:14-25 (Coberly).  Christy also wished to clarify that "we are not seeking to have this plea agreement invalidated as a matter of law," but, rather, "seeking clarification [on] what I believed was implicit within the court's order granting the 2255 motion." Tr. at 4:1-8 (Coberly).  Christy then recalled how the United States, in the 2255

---

[2]The Court's citations to the hearing's transcript refer to the court reporter's original, unedited version.  Any final version may contain slightly different page and/or line numbers.

Motion proceedings, argued that, if the Court would not allow the child pornography conviction to stand, then the United States should be free to revive those charges, because, pursuant to United States v. Lewis, the remedy for a plea agreement based on mutual mistake is to invalidate the entire plea agreement. See Tr. at 4:9-5:19 (Coberly). Christy also distinguished this case with the facts in United States v Jim, noting that, in that case, withdrawing from the plea agreement "was something that Jim decided to do on his own," whereas here, Christy has the option to withdraw, because all agree that one of the two crimes to which he pled guilty was not, in fact, a crime. Tr. at 6:5-6:8 (Coberly). Christy also asserted that plea agreements are "interpreted according to general principles of contract law" as well as by "considerations of fairness and the integrity of the judicial system." Tr. at 6:10-19 (Coberly). Christy also argued that the Court's 2255 Order states that the Court believes that Bunner would apply here -- i.e., if Christy withdraws from the plea agreement, then Christy is relieved of his obligations under the agreement, "then the underlying purpose of the agreement is frustrated, and then the Government can choose either to perform under the plea agreement or seek discharges of its duties." Tr. at 8:5-20 (Coberly)(referring to 2255 Order at 16).

The United States then addressed Christy's statement of preserving its position that the plea agreement was not knowing and voluntary, and stating: "I do want to note in terms of preservation that he already attempted to take that to the Tenth Circuit and that the Tenth Circuit already declined to disturb that ruling." Tr. at 9:20-10:2 (Kastrin).

Next, the United States argued that Christy has created this "alleged lack of clarity" by conflating § 2255 issues with the enforceability of a rule 410 waiver in a plea agreement that "the defendant is choosing to withdraw from." Tr. at 10:10-20 (Kastrin). The United States argued: "[O]nce you split those two issues from each, I think it becomes clear that defendant's

motion fails . . . for a number of reasons." Tr. at 10:21-23 (Kastrin). The United States asserted that the first issue is that a motion to clarify an order is inappropriate when an order, such as the Court's 2255 Order, is sufficiently clear. See Tr. at 10-24-11:5 (Kastrin). The United States asserted that just because the Court's 2255 Order and Magistrate Judge Lourdes A. Martinez' PFRD did not address the rule 410 waiver issue does not make the 2255 Order unclear, because the Court did not need to consider the 410 waiver issue in making its ruling. See Tr. at 11:9-20 (Kastrin).

The Court then interjected, asking if Christy's argument would work as a motion in limine, and the United States agreed, and stated that the Court was touching on another reason why Christy's motion should fail: Christy's question is not ripe, and so he is "essentially just asking for a pretrial ruling on the admissibility of certain pieces of evidence." Tr. at 11:22-12:7 (Court, Kastrin). The United States observed that a pretrial ruling "is only ripe if there is going to be a trial, and we're not there yet"; consequently, the United States asserted, Christy attempts to get a pretrial ruling so he can "decide whether or not there should be a trial at all." Tr. at 12:5-9 (Kastrin). "I think every defendant would want to know what every ruling would be in deciding to take a plea offer," the United States argued, "but that's not how our system works." Tr. at 12:9-12 (Kastrin). The United States concluded that, because the issue is not ripe, Christy is asking the Court to issue an advisory opinion -- although the United States acknowledges that the Court may nonetheless want to provide an inclination of how it would rule, if the issue were ripe. See Tr. at 13-1-5 (Kastrin). The Court then asked: "[I]sn't there a body of law that requires district courts to give motions in limine; for example, we can't wait until the middle of the trial." Tr. at 13:9-12 (Court). The United States answered that such motions are "premised on something being at the procedural stage of post-indictment and pretrial, and that's just not where

we are; we would only be in that stage after Mr. Christy withdraws from his plea agreement and after the indictment has been reinstated."  Tr. at 13:13-19 (Kastrin).

The United States also said that United States v. Jim controls the case here, and it "stands for the proposition that where a defendant knowingly and voluntarily enters into a plea, and then is given the ability to choose to withdraw from it, that the United States may still enforce the Rule 410 waiver contained in the plea agreement that he's being permitted to withdraw from." Tr. at 15:20-16:6 (Kastrin).  What Christy is really trying to do, the United States argued, is to get the Court to conclude "that somehow his plea to possession of child pornography was not knowing and voluntary, and, for that reason, it is not fair to bind him to the use of the 410 waiver."  Tr. at 16:22-3 (Kastrin).  Such a conclusion would be "in conflict with another one of the Court's ruling, a ruling which has gone up to the Tenth Circuit and which the Tenth Circuit declined to disturb."  Tr. at 17:5-7 (Kastrin).

The United States also asserts that Christy's argument

> begs the question -- why does the appeal waiver contained in the plea agreement
> remain enforceable, but the rule 410 waiver cannot?  We don't think you can
> come up with a legally logical basis to come to a different conclusion, so we
> believe both are enforceable based on the key reasoning behind the holding in
> Jim.

Tr. at 17:8-15 (Kastrin).  Finally, the United States argued that Bunner, Benard, and United States v. Lewis are inapposite, because "[n]one of them had to do with the enforceability of a rule 410 waiver or any waiver in the plea agreement at all."  Tr. at 17:21-18:3 (Kastrin).

Christy returned to the podium, briefly stating that the Tenth Circuit dismissed Christy's appeal as moot, but "never ruled on the knowing and voluntary issue."  Tr. at 19:10-15 (Coberly).  Christy then argued that, "looking at the principles of contract, . . . the only reason Mr. Christy made that admission under oath was because of a benefit that he was supposed to

receive from the plea agreement, and that benefit ended up being completely illusory; there was no benefit." Tr. at 19:18-23 (Coberly).

The Court then concluded by stating that it will work on an opinion to "make sure that I'm correct both on the ripeness issue and on the substantive answer, but I'm still inclined to think the Government has the better argument here given the factual patterns that are most similar to [the case] here." Tr. at 21:20-25 (Court).

## LAW REGARDING RIPENESS

"In order for a claim to be justiciable under Article III, it must be shown to be a ripe controversy." New Mexicans for Bill Richardson v. Gonzales, 64 F.3d 1495, 1499 (10th Cir. 1995). Ripeness pertains to the timing of a case and is intended "to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements." New Mexicans for Bill Richardson v. Gonzales, 64 F.3d at 1499 (citation omitted)(internal quotation marks omitted). Ripeness is a component of the Article III requirement that limits judicial review to "cases or controversies." U.S. Const. art. III, § 2. See U.S. West, Inc. v. Tristani, 182 F.3d 1202, 1208 (10th Cir. 1999). A controversy must be "definite and concrete, touching the legal relations of parties having adverse legal interests," and "a real and substantial controversy admitting of specific relief through a decree of a conclusive character." Aetna Life Ins. Co. v. Haworth, 300 U.S. 227, 240-41 (1937). "[T]he question in each case is whether the facts alleged, under all circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." MedImmune, Inc. v. Genentech, Inc., 549 U.S. 118, 127 (2007)(citation omitted).

The Tenth Circuit has stated: "Generally, we apply a two-factor test to determine whether

an issue is ripe. We evaluate 'the fitness of the issue for judicial resolution and the hardship to the parties of withholding judicial consideration.'" Kansas Judicial Review v. Stout, 519 F.3d 1107, 1116 (10th Cir. 2008)(quoting Sierra Club v. Yeutter, 911 F.2d 1405, 1415 (10th Cir.1990)), certified question answered, 196 P.3d 1162 (2008), opinion after certified question answered, 562 F.3d 1240 (10th Cir. 2009).

In MedImmune, Inc. v. Genentech, Inc., a patent licensee, who continued to pay royalties for use of the patent, brought a declaratory-judgment action against the patent holder to determine whether the patent was invalid or unenforceable. See 549 U.S. at 121-25. What appeared to be missing in the case was the requisite immediacy -- there was little likelihood that the patent holder would ever bring suit against the licensee, because the licensee was continuing to pay royalties. See 549 U.S. at 121-25. Nevertheless, the Supreme Court held that there was an actual case or controversy, because the looming threat of the licensee having to pay treble damages, if it halted payments and the patent was ultimately upheld, "coerced" the licensee's payment of royalties. 549 U.S. at 129. Avoidance of such dilemmas "was the very purpose of the Declaratory Judgment Act," 28 U.S.C. § 2201. MedImmune, Inc. v. Genentech, Inc., 549 U.S. at 129. Two cases concerning foreign policy illustrate the need for the facts to mature before declaratory-judgment jurisdiction arises. In Rabinowitz v. Kennedy, 376 U.S. 605 (1964), the Supreme Court held that the petitioner attorneys were not exempt from registration under the Foreign Agents Registration Act, 22 U.S.C. § 611, but it refused to consider whether the questions asked on the registration forms were proper. See 376 U.S. at 610. See also 22 U.S.C. § 611. Noting that the forms advised registrants that federal regulations allowed them to apply for waivers of inappropriate or unduly burdensome requirements, it said: "Since petitioners have made no attempt to determine which questions must be answered and how much information

disclosed, this issue is not ripe for adjudication." <u>Rabinowitz v. Kennedy</u>, 376 U.S. at 610.  In

<u>Zemel v. Rusk</u>, 381 U.S. 1 (1965), the Supreme Court refused to consider Zemel's claim that he

was constitutionally entitled to travel to Cuba.  <u>See</u> 381 U.S. at 3.  The Supreme Court explained

that it would need to know the specifics of the travel:

> The complaint filed in this case does not specify the sort of travel to Cuba appellant has in mind -- e.g., whether he plans to proceed to Cuba directly or travel there via one or more other countries.  Nor can we tell from the papers filed whether the Government will, in the event appellant journeys to Cuba, charge him under § 215(b) with leaving the United States on a carrier bound for Cuba with a passport not validated for Cuba; leaving the United States with such a passport with the intent of traveling to Cuba before he returns home; leaving the United States with such a passport on a journey which in fact takes him to Cuba; re-entering the United States with such a passport after having visited Cuba; some other act -- or whether it will charge him at all.  Whether each or any of these gradations of fact or charge would make a difference as to criminal liability is an issue on which the District Court wisely took no position.  Nor do we.  For if we are to avoid rendering a series of advisory opinions, adjudication of the reach and constitutionality of § 215(b) must await a concrete fact situation.

381 U.S. at 19-20.

In <u>Eccles v. Peoples Bank</u>, 333 U.S. 426 (1948), the Supreme Court held that a

declaratory-judgment action was not ripe.  <u>See</u> 333 U.S. at 427.  The bank sought to challenge a

condition imposed on its membership in the Federal Reserve System that restricted Transamerica

Corporation's ownership of its stock.  <u>See</u> 333 U.S. at 428-29.  Transamerica Corporation had

acquired a few shares of stock, but only for investment, and not to obtain any control over the

bank, which was what the membership condition was meant to prevent.  <u>See</u> 333 U.S. at 430-31.

The bank filed suit, because it feared that, if it lost its membership, its deposits would not be

insured.  <u>See</u> 333 U.S. at 427.  When the bank brought suit, however, the bank failed to show

"[t]he actuality of the plaintiff's need for a declaration of his rights."  333 U.S. at 432.  The

Federal Reserve Board "disavow[ed] any action to terminate the Bank's membership" under the

existing circumstances.  333 U.S. at 432.  The Supreme Court described the suit:

> [T]he Bank seeks a declaration of its rights if it should lose its independence [from Transamerica Corporation], or if the Board of Governors should reverse its policy and seek to invoke the condition even though the Bank remains independent and if then the Directors of the Federal Deposit Insurance Corporation should not change their policy not to grant deposit insurance to the Bank as a non-member of the Federal Reserve System.

333 U.S. at 432. In the Supreme Court's view, "[t]he concurrence of these contingent events, necessary for injury to be realized, is too speculative to warrant anticipatory judicial determinations." 333 U.S. at 432. It concluded: "[The] Bank's grievance here is too remote and insubstantial, too speculative in nature, to justify an injunction against the Board of Governors, and therefore equally inappropriate for a declaration of rights." 333 U.S. at 434. Addressing these Supreme Court cases, the Tenth Circuit has held: "The Court made clear that generally one cannot bring a declaratory judgment action just to resolve one isolated issue in a possible future controversy." Columbian Fin. Corp. v. BancInsure, Inc., 650 F.3d 1372, 1380 (10th Cir. 2011).

In Plant Oil Powered Diesel Fuel Systems, Inc. v. ExxonMobil Corp., 801 F. Supp. 2d 1163 (D.N.M. 2011)(Browning, J.), the Court held that certain claims that a proposed fit-for-purpose guideline violated antitrust principles was not ripe, because the plaintiff had not shown a hardship, and because the claims were based on "uncertain or contingent future events." 801 F. Supp. 2d at 1184. The Court determined that, "[b]ecause the Fit-for-Purpose Guidelines are both in their early stages and because their development is on-going, creating uncertainty what form they will ultimately take if and when they are submitted for approval, the Court concludes that POP Diesel's claims based on the Fit-for-Purpose Guidelines are premature." Plant Oil Powered Diesel Fuel Sys., Inc. v. ExxonMobil Corp, 801 F. Supp. 2d at 1185. In Carroll v. Los Alamos National Security, LLC, 704 F. Supp. 2d 1200 (D.N.M. 2010)(Browning, J.), the Court concluded that negligent misrepresentation claims were ripe for adjudication. See 704 F. Supp. 2d at 1219. There, the defendant conceded that an employee gave the plaintiff incorrect

information when the plaintiff was deciding on a pension plan.  <u>See</u> 704 F. Supp. 2d at 1219.

The Court concluded that the plaintiff had a legally protected interest in being given correct

information regarding his pension-plan options and in making a fully informed selection.

<u>See</u> 704 F. Supp. 2d at 1220.  The Court held that, because the plaintiff had a legally protected

interest in receiving accurate information and there was no dispute that he did not, he was

injured, and the matter was ripe for adjudication.  <u>See</u> 704 F. Supp. 2d at 1220.  With respect to

the cause of action's accrual, the Court concluded that the claim had accrued, because the

plaintiff had suffered an injury, which gave rise to a claim, even though he had not yet suffered

damages.  <u>See</u> 704 F. Supp. 2d at 1221.  Ultimately, however, the Court granted the defendants'

motion for summary judgment on the negligent misrepresentation claims, because the plaintiff

had not established that the defendants caused him harm or that the defendants' conduct would

harm him in the future.  <u>See</u> 704 F. Supp. 2d at 1226.

**<u>LAW REGARDING RULE 410 WAIVERS</u>**

Generally, evidence of a guilty plea or statements made in plea negotiations are

inadmissible.  <u>See</u> Fed. R. Evid. 410.  <u>Accord</u> <u>United States v. Mitchell</u>, 633 F.3d 997, 1002

(10th Cir. 2011)("As a general matter, evidence of a guilty plea or statements made in plea

negotiations are inadmissible.").  Rule 410 provides:

> **Pleas, Plea Discussions, and Related Statements**
>
> (a) Prohibited Uses.  In a civil or criminal case, evidence of the following is not admissible against the defendant who made the plea or participated in the plea discussions:
>
> (1) a guilty plea that was later withdrawn;
>
> (2) a nolo contendere plea;
>
> (3) a statement made during a proceeding on either of those pleas under Federal Rule of Criminal Procedure 11 or a comparable state procedure; or

(4) a statement made during plea discussions with an attorney for the prosecuting authority if the discussions did not result in a guilty plea or they resulted in a later-withdrawn guilty plea.

Fed. R. Evid. 410.

The Supreme Court, in United States v. Mezzanatto, addressed a challenge to a waiver that allowed the United States to use the defendant's statements during plea negotiations to impeach any contradictory testimony that could arise if the case proceeded to trial. See 513 U.S. 196, 198 (1995)(Thomas, J.). The Supreme Court held that, "absent some affirmative indication that the agreement was entered into unknowingly or involuntarily, an agreement to waive the exclusionary provisions of the plea-statement Rules is valid and enforceable." 513 U.S. at 210. The Supreme Court stated that while there "may be some evidentiary provisions that are so fundamental to the reliability of the factfinding process that they may never be waived without irreparably 'discrediting the federal courts.' . . . enforcement of agreements like respondent's plainly will not have that effect." United States v. Mezzanatto, 513 U.S. at 204. Instead, the Supreme Court noted that admitting the plea statements for impeachment purposes enhanced the truth-seeking function of trials and would result in more accurate verdicts. See United States v. Mezzanatto, 513 U.S. at 204 ("The admission of plea statements for impeachment purposes enhances the truth-seeking function of trials and will result in more accurate verdicts."). In so holding, the Supreme Court rejected the following arguments that rule 410 should be unwaivable: (i) that rule 410 must be enforced to guarantee a fair procedure; (ii) that waivability would undermine the goal of voluntary settlement; and (iii) that waivability would invite prosecutorial reaching and abuse. See United States v. Mezzanatto, 513 U.S. at 204-10. A three-justice concurrence advocated that courts should narrowly construe the holding's scope and emphasized that the case dealt only with an impeachment waiver. See United States v.

Mezzanatto, 513 U.S. at 211 (Ginsburg, J., concurring).

In <u>United States v. Mitchell</u>, however, the Tenth Circuit extended the Supreme Court's reasoning in <u>United States v. Mezzanatto</u> to case-in-chief waivers. <u>See United States v. Mitchell</u>, 633 F.3d at 998. There, the Tenth Circuit upheld the following provision, in which the defendant agreed:

> [I]f I withdraw my plea of guilty, I shall assert no claim under the United States Constitution, any statute, Rule 410 of the Federal Rules of Evidence, Rule 11(f) of the Federal Rules of Criminal Procedure, or any other federal rule, that the defendant's statements pursuant to this agreement, or any leads derived therefrom, should be suppressed or are inadmissible at any trial, hearing, or other proceeding.

<u>United States v. Mitchell</u>, 633 F.3d at 999. The Tenth Circuit commented: "We see no analytical distinction between Rule 410's application to impeachment waivers and case-in-chief waivers. The same reasoning for the former compels the latter." 633 F.3d at 1004. It further explained its decision and stated: "Even if the district court determines a guilty plea should be withdrawn, a waiver of Rule 410 only means a trial will contain more evidence -- both the evidence of the original guilty plea and evidence the plea was withdrawn." 633 F.3d at 1005 (emphasis added). The Tenth Circuit noted that its conclusion was in line with the other circuits who have considered expanding <u>United States v. Mezzanatto</u>'s rationale. <u>See United States v. Mitchell</u>, 633 F.3d at 1006 (citing <u>United States v. Sylvester</u>, 583 F.3d 285, 289 (5th Cir. 2009); <u>United States v. Young</u>, 223 F.3d 905, 910-11 (8th Cir. 2000); <u>United States v. Burch</u>, 156 F.3d 1315, 1321 (D.C. Cir. 1998)). The Tenth Circuit also stated that <u>United States v. Mezzanatto</u>'s facts supported its decision, because the defendant in that case received only an opportunity to discuss cooperation with the United States, while the United States made promises to Mitchell in the plea agreement. <u>See United States v. Mitchell</u>, 633 F.3d at 1006. Before reaching the rule 410 question, the Tenth Circuit determined that the defendant's guilty plea was knowing and

voluntary.  See United States v. Mitchell, 633 F.3d at 1001.  Although the district court noted that the defendant's counsel may have exerted undue influence, the Tenth Circuit concluded that his counsel's influence did not render the plea involuntary.  See United States v. Mitchell, 633 F.3d at 1002.

The Tenth Circuit's analysis in United States v. Mitchell began with its determination that the plea agreement was enforceable.  See 633 F.3d at 1002.  Although the Tenth Circuit stated at the outset that it was considering whether the rule 410 waiver was knowing and voluntary, it analyzed the plea as a whole instead.  See United States v. Mitchell, 633 F.3d at 1002 ("Based on a careful review of the record, we agree with the district court that Mitchell's plea was knowing and voluntary.").  The United States Court of Appeals for the District of Columbia Circuit similarly analyzed the validity of the rule 410 waiver in the context of the validity of the plea as whole.  See United States v. Burch, 156 F.3d at 1322.  The D.C. Circuit commented:

> Appellant's specific contention that he involuntarily waived the protections of Rules 11(e)(6) and 410 derives from his broader claim that he did not enter into the plea agreement voluntarily.  He makes no attempt to deconstruct the plea agreement into individual components, nor to claim that acceded to a particular provision involuntarily, independent of his intention with his respect to the entire plea.  Therefore, we can only review whether his waiver was knowing and voluntary through examining, as the trial court did, the nature of the plea agreement that subsumes it.

United States v. Burch, 156 F.3d at 1322 n.5.

In United States v. Jim, 839 F. Supp. 2d 1157 (D.N.M. 2012)(Browning, J.), aff'd, 786 F.3d 802 (10th Cir. 2015), the Court, after allowing the defendant to withdraw his guilty plea, denied the defendant's motion to exclude statements he made in the plea agreement and during the plea colloquy, because the defendant waived his rights under rule 410 when he entered the plea agreement.  See 839 F. Supp. 2d at 1158.  The plea agreement stated:

> Except under certain circumstances where the Court, acting on its own, fails to accept this plea agreement, the Defendant agrees that, upon the Defendant's signing of this plea agreement, the facts that the Defendant has admitted under this plea agreement as set forth above, as well as any facts to which the Defendant admits in open court at the Defendant's plea hearing, shall be admissible against the Defendant under Federal Rule of Evidence 801(d)(2)(A) in any subsequent proceeding, including a criminal trial, and the Defendant expressly waives the Defendant's rights under Federal Rule of Criminal Procedure 11(f) and Federal Rule of Evidence 410 with regard to the facts the Defendant admits in conjunction with this plea agreement.

839 F. Supp. 2d at 1172. The defendant argued that the waiver of his rights under rule 410 was unconstitutional, but the Court disagreed, noting the similarity of the defendant's waiver with the waiver that the Tenth Circuit upheld in United States v. Mitchell. See 839 F. Supp. 2d at 1172. The defendant then argued that, because his attorney at the time he pled guilty was missing half of the photographs taken at the scene, he did not have all the evidence and pled guilty involuntarily; although he raised the issue in terms of voluntariness, the Court explained that voluntariness "ordinarily deals with claims that the plea was coerced," which the defendant did not allege. 839 F. Supp. 2d at 1178. The Court instead analyzed the defendant's argument in terms of whether he knowingly pled guilty; the Court noted that the defendant did not argue that the lack of evidence affected his understanding of "'what the plea connotes and of its consequence,' the understanding necessary to enter a knowing plea." 839 F. Supp. 2d at 1179 (quoting Boykin v. Alabama, 395 U.S. 238, 244 (1969)). The Court reviewed its reasons for previously allowing the defendant to withdraw his guilty plea, including a defect in the plea colloquy in which the magistrate judge "never mentioned the word 'trial,'" and the defendant said he did not know he was waiving his right to proceed to trial; this defect cast doubts on whether the defendant knowingly and voluntarily pled guilty, and led the Court to find a "fair and just reason" to permit the defendant to withdraw his guilty plea. 839 F. Supp. 2d at 1180 (quoting United States v. Jim, No. CR 10-2653, 2011 WL 6013093, at *12 (D.N.M. Nov. 22,

2011)(Browning, J.). The Court concluded, however, that "the evidence in favor of a knowing and voluntary plea outweighs considerably the evidence of an unknowing plea, and is more weighty and more credible. In other words, [the defendant] has not met his burden of presenting an 'affirmative indication' that the plea was not knowing and voluntary." 839 F. Supp. 2d at 1181. Further, the defendant did not raise these arguments in his motion to exclude statements from the plea agreement and plea colloquy: "In the absence of argument on this issue and with the burden resting on [the defendant], the Court will not invalidate the rule 410 waiver and exclude [the defendant's] statements on this ground." 839 F. Supp. 2d at 1185. As to the waiver's scope, the Court determined that, because the waiver to which the defendant stipulated permitted the United States to "use his statements in a subsequent 'criminal trial,'" the United States could use the defendant's statements in any phase of the trial. 839 F. Supp. 2d at 1186 (quoting the plea agreement).

The Tenth Circuit concluded that the Court did not err in enforcing Jim's 410 waiver. United States v. Jim, 786 F.3d at 804. The Tenth Circuit stated:

> Jim's Rule 410 waiver expressly stated that it took effect at the time he signed the plea agreement. And Jim does not contend that his Rule 410 waiver was not enforceable for the reason that the district court permitted him to withdraw his guilty plea. Indeed, it would make no sense to deny the efficacy of the Rule 410 waiver just because the guilty plea was withdrawn because that would render the waiver largely meaningless and deprive the Government of the benefit of its bargain. The clearly contemplated situation where the Rule 410 waiver would have any usefulness to the Government is in precisely this situation -- where the defendant failed to carry out his side of the bargain to plead guilty and thereby forced the Government to trial.

786 F.3d at 809 (citations omitted). The Tenth Circuit asserted that the 410 waiver would not bind Jim if his "entire guilty plea was not knowing and voluntary," 786 F.3d at 809, but Jim did not show that he entered his guilty plea and the plea agreement unknowingly or involuntarily, see 786 F.3d at 806.

## LAW REGARDING KNOWING AND VOLUNTARY STANDARD
## FOR GUILTY PLEAS

A defendant's guilty plea must be knowing and voluntary.  See United States v. Libretti, 38 F.3d 523, 529 (10th Cir. 1994).  To enter a plea that is knowing and voluntary, a defendant must have "a full understanding of what the plea connotes and of its consequence."  Boykin v. Alabama, 395 U.S.at 244.  A defendant must only understand his or her plea's "direct consequences."  United States v. Hurlich, 293 F.3d 1223, 1230 (10th Cir. 2002).  If a guilty plea is not knowing and voluntary, it is void, and any additional waivers in the plea agreement generally are unenforceable.  See United States v. Mitchell, 633 F.3d at 1001 (citing United States v. Gigley, 213 F.3d 509, 516 (10th Cir. 2000)).  The Tenth Circuit has had more frequent opportunities to analyze the knowing and voluntary nature of a waiver of rights in the context of a waiver of appellate rights.  See United States v. Sandoval, 427 F. App'x 621, 623 (10th Cir. 2011)(unpublished); United States v. Vidal, 561 F.3d 1113, 1118 (10th Cir. 2009); United States v. Wilken, 498 F.3d 1160, 1167 (10th Cir. 2007).

The defendant in United States v. Mitchell argued that the district court's statements that his counsel may have exerted "undue influence" over him rendered his plea involuntary.  633 F.3d at 1001.  The Tenth Circuit held that the fact that his counsel used "colorful language" -- telling the defendant "'you would be a fool not to take this plea offer!!'" -- did not approach a constitutionally suspect level of coercion.  633 F.3d at 1002.  The Tenth Circuit stated that, even when counsel's pressure may be "palpable," and a defendant asserted he was "hounded, browbeaten, and yelled at," such pressures do not "vitiate the voluntariness of his plea."  633 F.3d at 1002 (citing United States v. Carr, 80 F.3d 413, 417 (10th Cir. 1996)(analyzing voluntariness where counsel called the defendant "stupid" and "a f***ing idiot")).  The defendant in United States v. Mitchell also pointed to the breakdown in

communication between himself and his attorney to establish that his plea was not knowing and involuntary. <u>See</u> 633 F.3d at 1001. The Tenth Circuit concluded this argument was similarly unavailing, and held that the guilty plea and accompanying plea agreement were knowing and voluntary. <u>See</u> 633 F.3d at 1002.

In the United States District Court for the District of New Mexico, if a defendant consents to plead guilty before a United States Magistrate Judge, then the Magistrate Judge will conduct the plea colloquy and accept the plea. <u>See</u> <u>United States v. Ciapponi</u>, 77 F.3d 1247, 1349-50 (10th Cir. 1996)). "With a defendant's express consent, the broad residuary 'additional duties' clause of the Magistrate Act, 28 U.S.C. § 636, authorizes a magistrate judge to conduct a Rule 11 felony plea proceeding, and such does not violate the defendant's constitutional rights." <u>United States v. Ciapponi</u>, 77 F.3d at 1251. A district judge will sentence the defendant, and under the local rules, the "Court will defer a decision on the acceptance or rejection of the plea agreement until the Court has reviewed the presentence report, even in instances where the Court has accepted the guilty plea." D.N.M.LR-Cr. 11.2.

<u>**ANALYSIS**</u>

The Court grants the Motion to Clarify and concludes that: (i) Christy's Motion to Clarify is ripe, because whether the rule 410 waiver is enforceable if Christy withdraws his guilty plea is important information for Christy to make his meaningful decision; and (ii) the rule 410 waiver will bind Christy if he withdraws his guilty plea and the United States prosecutes the Plea Agreement's lone child pornography charge.

**I.  THE ISSUE IS RIPE, BECAUSE WHETHER THE RULE 410 WAIVER IS ENFORCEABLE IS A QUESTION FIT FOR JUDICIAL CONSIDERATION, <u>AND THE PARTIES FACE A DIRECT AND IMMEDIATE DILEMMA</u>.**

The Tenth Circuit applies a two-factor test to determine whether an issue is ripe:

(i) whether the issue is fit for judicial resolution; and (ii) whether the parties' will face hardship if the court withholds judicial consideration. See Kansas Judicial Review v. Stout, 519 F.3d at 1116 (10th Cir. 2008). By "fitness," courts mean that "it does not involve uncertain or contingent events that may not occur at all (or may not occur as anticipated)." Chavez ex rel. M.C. v. New Mexico Pub. Educ. Dep't, 621 F.3d 1275, 1281 (10th Cir. 2010)(citing New Mexicans for Bill Richardson v. Gonzales, 64 F.3d 1495, 1499 (10th Cir. 1995)). By "hardship," courts mean "whether the challenged action is a 'direct and immediate dilemma for the parties.'" Chavez ex rel. M.C. v. New Mexico Pub. Educ. Dep't, 621 F.3d at 1281 (quoting New Mexicans for Bill Richardson v. Gonzales, 64 F.3d at 1499).

A.    WHETHER THE RULE 410 WAIVER IS ENFORCEABLE IS A QUESTION FIT FOR JUDICIAL CONSIDERATION EVEN THOUGH CHRISTY HAS NOT YET WITHDRAWN FROM THE PLEA AGREEMENT BECAUSE THE COURT'S DECISION WILL HAVE FORCE NO MATTER WHAT CHRISTY DECIDES.

The issue is fit for judicial consideration even though Christy has not yet withdrawn from the plea agreement, because the question bears directly on the decision that the Court has expressly directed Christy to make. The Court need not, and should not, wait to see if Christy withdraws from the agreement before taking up the question, because the answer is so vital to Christy's decision that waiting would deprive him of any meaningful basis upon which to reach a conclusion. It may be that the Court determines that the rule 410 waiver will remain valid should Christy withdraw his plea, and Christy, in turn, would choose not to withdraw it. That the Court would not have the chance to apply its rule 410 waiver decision in such a scenario does not destroy ripeness, because courts recognize that parties need not expose themselves to the risk of calamity just to find out if such calamity may be in store. Cf. MedImmune, Inc. v. Genentech, Inc., 549 U.S. 118, 134 (2007)("The rule that a plaintiff must destroy a large building, bet the

farm, or . . . risk treble damages and the loss of 80 percent of its business before seeking a declaration of its actively contested legal rights finds no support in Article III."); United States v. Wayne, 591 F.3d 1326, 1329 n.1 (10th Cir. 2010)(finding a ripe controversy in a defendant's appeal of a supervised relief condition, even though the defendant had not yet violated the condition).

The United States also warns that determining the rule 410 waiver's validity pursuant to a motion to clarify would allow Christy to get a pretrial evidence ruling so he can "decide whether or not there should be a trial at all."  Tr. at 12:5-9 (Kastrin).  The United States adds that "I think every defendant would want to know what every ruling would be in deciding to take a plea offer, but that's not how our system works."  Tr. at 12:9-12 (Kastrin).  To whatever extent the United States warns that allowing a defendant to achieve a pretrial evidence ruling long before trial under the guise of a motion to clarify would upset the principles underlying our criminal justice process, that concern is misplaced.  For one, the Federal Rules of Criminal Procedure constrain only how late a pretrial motion can be brought, and not how early.  See, e.g., Fed. R. Civ. P. 12(3)(b) (stating that certain "defenses, objections, and requests" must be made "before trial"). For another, defendants are free to make motions, e.g., motions to suppress evidence, long before trial, when a plea agreement is still possible.  Now, Christy possesses the unilateral choice whether to withdraw his plea agreement based on how the Court rules; the United States must simply wait for Christy to decide.  At first glance, that asymmetry may seem unfair and therefore may represent an outcome that courts should not enable, but given the circumstances, it is not only the appropriate position in which Christy should be, but it is also virtually impossible for a defendant to abuse.  Christy is not deciding whether to accept a plea offer, after all; he already entered a plea agreement, and, thanks to the Supreme Court of New Mexico effectively

invalidating one of his two convictions in that deal -- a development that neither Christy nor any other defendant could ever purposefully contrive -- the Court has determined Christy must decide whether to withdraw.

The Court does not see how deciding the Motion to Clarify is much different from other pretrial motions in limine it does before criminal trials. See Luce v. United States, 469 U.S. 38, 41 (1984)("Although the Federal Rules of Evidence do not explicitly authorize *in limine* rulings, the practice has developed pursuant to the district court's inherent authority to manage the course of trials."). The Court often advises the parties regarding evidence admissibility: if one party does this, then the other side gets to do that. Trial judges sometimes have to respond in the middle of trial. In any case, district courts must decide certain motions in advance of trial, and those ruling can determine how a defendant will proceed. See Crist v. Bretz, 437 U.S. 28, 49-50 (1978)("Defendants may, and sometimes must . . . move for various rulings on the indictment and the admissibility of evidence before trial. These motions, in practical terms, may decide the defendant's case."). Cf. Fed. R. Crim. P. 12(b)(3)(B)(iii) (requiring defendants to make motions alleging that the indictment lacks specificity before trial); Fed. R. Crim. P. 12(b)(3)(C) (stating that motions to suppress evidence must be made before trial); Fed. R. Crim. P. 12(d) ("The court must decide every pretrial motion before trial unless it finds good cause to defer a ruling."). This Motion for Clarification is unusual, but it fits comfortably within the scope of requests that district courts routinely decide.

**B.**     **THERE IS HARDSHIP, BECAUSE CHRISTY FACES A DIRECT AND IMMEDIATE DILEMMA IN DECIDING WHETHER TO WITHDRAW FROM THE PLEA AGREEMENT.**

The second ripeness factor is whether the parties face hardship -- i.e., "whether the challenged action is a 'direct and immediate dilemma for the parties.'" Chavez ex rel. M.C. v.

New Mexico Pub. Educ. Dep't, 621 F.3d at 1281 (quoting New Mexicans for Bill Richardson v. Gonzales, 64 F.3d at 1499). Here, the parties face a direct and immediate dilemma, because the way the Court rules on the rule 410 waiver's validity will profoundly impact this case's outcome. If the waiver is valid even if Christy withdraws, the United States would not be barred, in prosecuting Christy for child pornography charges, from introducing Christy's plea agreement statements into evidence.[3] With so much at stake, the Court concludes that the question over rule 410 waiver's validity poses a direct and immediate dilemma for the parties.

## II. IF CHRISTY WITHDRAWS HIS GUILTY PLEA, THE 410 WAIVER WILL BIND CHRISTY IF THE UNITED STATES STANDS BY ITS PLEA AGREEMENT OBLIGATION TO NOT REVIVE DISMISSED CHARGES.

In the 2255 Order, the Court gives Christy a choice to withdraw his guilty plea for his one remaining conviction. See 2255 Order at 19-20. The Court states that, if Christy withdraws his guilty plea, the United States may revive charges it dismissed pursuant to the plea agreement. See 2255 Order at 16. The Court concludes that, if Christy withdraws his guilty plea, and the United States chooses to be discharged of its Plea Agreement duties to revive the dismissed counts, the 410 waiver will not bind Christy. If, however, Christy withdraws his guilty plea, and the United States abides by its Plea Agreement duties and prosecutes the lone child pornography

---

[3]For instance, in the Plea Agreement, Christy asserts:

I . . . knowingly possessed a matter containing any visual depiction that had been shipped and transported in interstate and foreign commerce and which was produced suing materials which had been so shipped and transported, by any means, including by computer, the production of which involved the use of a minor engaging in sexually explicit conduct and is of such conduct. I possessed depictions of minors engaged in sexually explicit conduct on my Hewlett Packard HDX 16 16 Laptop, Serial Number CNF9241L65, with an internal Toshiba Hard Drive MK3255GSX, Serial Number 6981F9ZNS. I knew it was illegal for me to possess such images.

Plea Agreement ¶ 12, at 10.

charge to which Christy pleaded guilty, the Plea Agreement endures, and the 410 waiver binds Christy.[4]

### A. IF CHRISTY WITHDRAWS HIS GUILTY PLEA, AND THE UNITED STATES CHOOSES TO BE DISCHARGED OF ITS PLEA AGREEMENT OBLIGATIONS, CHRISTY MAY CHOOSE TO BE DISCHARGED OF HIS PLEA AGREEMENT OBLIGATIONS, INCLUDING THE RULE 410 WAIVER.

The Court, in its 2255 Order, determined that, if Christy withdraws his guilty plea, the United States may choose to be discharged of its plea agreement obligations, because the purpose for which it entered the plea agreement would be frustrated. See 2255 Order at 16 (citing Bunner, 134 F.3d at 1005). The same frustration of purpose principles apply to free Christy from his plea agreement obligations if the United States revives dismissed charges.

The Tenth Circuit applies contract principles to plea agreement interpretation, including the frustration-of-purpose doctrine. See Bunner, 134 F.3d at 1004 (stating that a party may be discharged of its plea agreement obligations under the frustration-of-purpose doctrine if, for an unforeseen reason, the benefit for which the party entered the agreement has become worthless);

---

[4]For this analysis, the Court applies principles from Bunner and Benard. In Bunner, the Tenth Circuit determined that, when a defendant's lone conviction is vacated, the United States may reinstate dismissed charges because the United States' purpose for entering the plea agreement has been frustrated. See Bunner, 134 F.3d at 1005. In Benard, the Tenth Circuit determined that, where the district court erred in denying the defendant's motion to suppress evidence for one of two charges to which the defendant pled guilty, the defendant may withdraw his guilty pleas for both convictions, because a defendant's decision to enter a multi-count plea agreement depends on the "aggregate strength of the incriminating evidence" for all charges against him or her. Benard, 680 F.3d at 1214-15 (quoting People v. Miller, 658 P.2d 1320, 1326 (Cal. 1983)). Synthesizing these holdings, the Court determines that, where a defendant pleads guilty to two charges, and one conviction is vacated, the defendant may withdraw his guilty plea to the other, non-vacated conviction, because the defendant's decision to enter the plea agreement "was not made in a vacuum independent of evidence" for the other count, see Benard, 680 F.3d at 1214-15; if the defendant withdraws his guilty plea, the United States may reinstate charges it dismissed pursuant to the plea agreement, because the United States' purpose for entering the plea agreement is frustrated, see Bunner, 134 F.3d at 1005. Determining whether Christy may discharge his 410 waiver obligation depends on whether the United States has frustrated the purpose for which Christy entered the Plea Agreement.

Restatement (Second) of Contracts § 265 (1981)("Where . . . a party's principal purpose is substantially frustrated without his fault by the occurrence of an event the non-occurrence of which was a basic assumption on which the contract was made, his remaining duties to render performance are discharged."). In Bunner, the defendant faced multiple counts and pled guilty to one. See Bunner, 134 F.3d at 1002. Later, the Supreme Court of the United States determined that the factual basis for the conviction was not actually a crime. See Bunner, 134 F.3d at 1005 ("Subsequent to entering the agreement, an intervening change in the law destroyed the factual basis supporting Defendant's conviction."); id. at 1002 ("After Defendant served approximately three years, the Supreme Court decided . . . [that] Defendant's actions no longer constituted a § 924(c) violation." (citing Bailey v. United States, 516 U.S. 137 (1995)). When the United States subsequently prosecuted the defendant on other charges, the defendant entered a conditional guilty plea and appealed, challenging the United States' right to revive counts it dismissed pursuant to the original plea agreement. See Bunner, 134 F.3d at 1005. The Tenth Circuit stated:

> For a party's contractual obligations to be discharged under the frustration of purpose doctrine, several elements must be present. First, the frustrated purpose must have been "so completely the basis of the contract that, as both parties understand, without it the transaction would make little sense." Restatement 2d Contracts § 265 cmt. a. Second, the frustration must be such that the intervening event cannot fairly be regarded as within the risks the frustrated party assumed under the contract. *Id.* Finally, "the non-occurrence of the frustrating event must have been a basic assumption on which the contract was made." *Id.*

Bunner, 134 F.3d at 1004. The Tenth Circuit determined:

> Defendant and the government entered the plea agreement to avoid the uncertainty of a jury verdict [and] subvert the risk that a jury would convict him on all four counts with which he was charged. The government . . . entered the agreement to ensure that Defendant served time for violating § 924(c). A basic assumption underlying the parties' purposes was their belief that the conduct Defendant pled guilty to amounted to a violation of § 924(c). Absent this assumption, neither party would have entered into the . . . plea agreement.

Subsequent to entering the agreement, an intervening change in the law destroyed the factual basis supporting Defendant's conviction.

Bunner, 134 F.3d at 1004-05. The Tenth Circuit concluded:

> The district court's decision [to grant the § 2255 motion] ultimately resulted in Defendant being relieved of his obligations under the plea agreement. Therefore, although the parties were technically able to perform according to the letter of the agreement, Defendant's performance, for all practical purposes, became worthless to the government. This resulted in the underlying purpose of the agreement being frustrated and the basis of the government's bargain being destroyed. Thus, under the frustration of purpose doctrine, the government's plea agreement obligations became dischargeable.

134 F.3d at 1005. The United States was, therefore, free to revive the charges which it dismissed. See 134 F.3d at 1005.

Christy withdrawing his plea would produce a similar result. The United States entered the plea agreement to secure Christy's guilty pleas on both counts. With one conviction discharged and the other withdrawn, the United States' purpose would be frustrated, and the United States could, therefore, be discharged of its plea agreement obligations, including its promise to not revive dismissed charges. See Plea Agreement ¶ 23(b), at 15 (stating that the United States agrees to "not bring additional criminal charges against the Defendant arising out of the facts forming the basis of the present information").

The frustration-of-purpose analysis would not end there, however. The United States reviving the dismissed charges would destroy the basis for which Christy entered the plea agreement. See Bunner, 134 F.3d at 1004 ("[T]he frustrated purpose must have been 'so completely the basis of the contract that, as both parties understand, without it the transaction would make little sense.'" (quoting Restatement 2d Contracts § 265 cmt. a)). Christy entered the plea agreement to manage his criminal liability by precluding additional charges. See Bunner, 134 F.3d at 1004 ("Defendant . . . entered the Plea Agreement to avoid the uncertainty of a jury verdict [and] subvert the risk that a jury would convict him on all four counts with which he was

charged."). If the United States is free to revive charges it dismissed pursuant to the Plea Agreement, the purpose for which Christy entered the Plea Agreement would be destroyed. Just as Christy's plea withdraw would permit the United States to be discharged of its plea agreement duties, the United States reviving dismissed charges would permit Christy to be discharged of his plea agreement duties -- namely, his duty to honor the rule 410 waiver. See Plea Agreement ¶ 12(b), at 11.

The United States argues that, if Christy withdraws his guilty plea, the Court should still enforce the rule 410 waiver, because that waiver exists precisely for instances where a defendant enters a plea agreement, but does not follow through on his or her promise to plead guilty to certain charges. See Response at 7-8. Essentially, the United States argues that Christy's situation is no different than the defendant's situation in United States v. Jim, in which the Court enforced a plea agreement's 410 waiver applied after Jim withdrew his guilty plea. See United States v. Jim, 839 F. Supp. 2d at 1180. United States v. Jim is distinguishable. In that case, the Court allowed Jim to withdraw his guilty plea pursuant to rule 11(d)(2)(B) of the federal rules of civil procedure. See United States v. Jim, 2011 WL 6013093, at *9. The Court later determined that the plea agreement's 410 waiver remained valid despite the plea's withdrawal, because Jim could not meet his burden to show that he entered the plea agreement unknowingly and involuntarily. See United States v. Jim, 839 F. Supp. 2d at 1180. The Tenth Circuit affirmed the Court's decision, explaining:

> Jim does not contend that his Rule 410 waiver was not enforceable for the reason that the district court permitted him to withdraw his guilty plea. Indeed, it would make no sense to deny the efficacy of the Rule 410 waiver just because the guilty plea was withdrawn because that would render the waiver largely meaningless and deprive the Government of the benefit of its bargain. The clearly contemplated situation where the Rule 410 waiver would have any usefulness to the Government is in precisely this situation -- where the defendant failed to carry out his side of the bargain to plead guilty and thereby forced the Government to

trial.

United States v. Jim, 786 F.3d at 809.  In other words, Jim entered a plea agreement in which he agreed to plead guilty to certain counts, and he later decided he wished to withdraw that plea, because, he argued, he did not fully understand the plea agreement's implications when he agreed to it.  See United States v. Jim, 2011 WL 6013093, at *9.

By contrast, in this case, Christy pled guilty to two charges; subsequent developments in law demonstrate that Christy's actions do not support one of the two convictions; and the Court granted his § 2255 motion to vacate that conviction.  See 2255 Order at 14.  Although the 2255 Order vacates only one of Christy's two convictions in the plea agreement, the Court recognizes that defendants' decisions to enter plea agreements are "not made in a vacuum" and are based on the "'aggregate strength of all the incriminating evidence' against the defendant."  2255 Order (quoting Benard, 680 F.3d at 1214).  Rather than resentencing Christy on the one surviving conviction, the Court gives Christy the option -- the same option that the Tenth Circuit gave the defendant in Benard, see 680 F.3d at 1214 -- to withdraw his guilty plea.  See 2255 Order at 21. It is difficult for the Court to imagine that this situation is one that Christy and the United States "clearly contemplated" when they entered the Plea Agreement.  Response at 9 (arguing that, if Christy withdraws his guilty plea, he creates a situation that he and the United States "clearly contemplated" when entering into their Plea Agreement (quoting United States v. Jim, 786 F.3d at 809)).

### B.      IF CHRISTY WITHDRAWS HIS GUILTY PLEA, AND THE UNITED STATES PURSUES THE CHILD PORNOGRAPHY CHARGE, THE 410 WAIVER WILL BIND CHRISTY.

The Court previously determined that, if Christy elects to withdraw his guilty plea, the United States may choose either to prosecute the plea agreement's single child pornography charge, or to reinstate indictment charges.  See PFRD at 24; 2255 Order at 20.  If the United

States then chooses to stand by the plea agreement and prosecute the single child pornography charge to which Christy previously pled guilty, then the 410 waiver will bind Christy, because the purpose for which Christy entered the plea agreement will not be frustrated, and he may not be discharged of that obligation.

**IT IS ORDERED** that Defendant's Motion to Clarify Order Allowing Mr. Christy to Withdraw his Plea to Child Pornography Charge, filed June 15, 2017 (Doc. 308), is granted.  The rule 410 waiver will bind Christy if he withdraws his guilty plea and the United States prosecutes the Plea Agreement's lone child pornography charge.

_____
UNITED STATES DISTRICT JUDGE

*Counsel:*

James S. Tierney
  Acting United States Attorney
Holland S. Kastrin
  Assistant United States Attorney
United States Attorney's Office
Albuquerque, New Mexico

     *Attorneys for the Plaintiff*

Todd A. Coberly
Coberly & Martinez, LLLP
Santa Fe, New Mexico

     *Attorneys for the Defendant*