IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

        Plaintiff,

Vs.                                            No. CR 10-1534 JB

EDWARD CHRISTY,

        Defendant.

## MEMORANDUM OPINION AND ORDER

On February 2, 2018 the United States filed a motion seeking to detain Defendant Edward Christy pending disposition of his criminal case.[1] Defendant opposed this motion and the matter was fully briefed.[2] The Court held a hearing on March 14, 2018 that continued on March 15, 2018. Assistant United States Attorneys Holland Kastrin and Sarah Mease appeared on behalf of the United States. Attorney Todd Coberly appeared on behalf of Defendant Edward Christy, who was also present. After considering the parties' briefs, arguments, and evidence the Court determined there are no conditions of release that will reasonably assure community safety if Defendant were to be released and ordered that Defendant be detained pending his trial. This Memorandum Opinion and Order details the Court's reasons for its pretrial detention determination.

---

[1] *See* United States' Opposed Motion to Detain Pending Trial (Motion) (Doc. 324).
[2] *See* Defendant's Response to United States' Motion to Detain Pending Trial (Response) (Doc. 330); United States' Reply in Support of the Opposed Motion to Detain Pending Trial (Reply) (Doc. 331).

**BACKGROUND**

United States District Court Judge James O. Browning set forth the relevant facts of this case in previous memorandum opinions and orders and the Court will not repeat them here.[3] In summary, on April 26, 2011, a federal grand jury returned a Superseding Indictment (Doc. 94) charging Defendant with one count of transportation with intent to engage in criminal sexual activity under 18 U.S.C. § 2423(a) (Count 1), and three counts of possession of matter containing visual depictions of minors engaged in sexually explicit conduct (hereinafter, "Possession of Child Pornography"), under 18 U.S.C. §§ 2252(a)(4)(B), 2252(b)(2), and 2256 (Counts 2 through 4). These charges related to Defendant's actions with a sixteen-year-old Jane Doe described by Magistrate Judge Lourdes A. Martinez in the Proposed Findings and Recommended Disposition, filed May 5, 2016 (Doc. 265) and adopted by Judge Browning on June 30, 2016. *See* Memorandum Opinion and Order Adopting Magistrate Judge's Proposed Findings and Recommended Disposition (Doc. 269). On September 30, 2011, the United States filed an Information that charged Defendant with one count of Coercion and Enticement contrary to 18 U.S.C. § 2422(a) (Count 1), and one count of Possession of Child Pornography contrary to 18 U.S.C. §§ 2252(a)(4)(B), 2252(b)(2), and 2256 (Count 2). *See* Information (Doc. 193). In accordance with a Plea Agreement, Defendant pleaded guilty to both charges of the Information, and Judge Browning subsequently dismissed the Superseding Indictment. *See* Order of Dismissal (Doc. 214); Plea Agreement (Doc. 195). On May 23, 2012, Judge Browning entered final judgment against Defendant on both Counts of the Information and imposed a term of incarceration of 108 months for each of Counts 1 and 2 to run concurrently. *See* Judgment (Doc. 226). Judge Browning further imposed a life term of supervised release for each of the two counts also to run concurrently. *See id*.

---

[3] *See, e.g,* Memorandum Opinion and Order, Case No. 10-cr-1534-JB (D.N.M. June 28, 2010) (Doc. 21); Memorandum Opinion and Order, Case No. 10-cr-1534-JB (D.N.M. Aug. 2, 2012) (Doc. 221); *see also* Magistrate Judge Lourdes Martinez's Proposed Findings and Recommended Disposition (Doc. 265), adopted by the Court in its Memorandum Opinion and Order filed June 30, 2016, (Doc. 269).

On October 1, 2015, Defendant filed a Motion to Vacate, Set Aside, or Correct Sentence under 18 U.S.C. § 2255. (Doc. 250). Based on a change in New Mexico case law applied retroactively to Defendant's case, Magistrate Judge Lourdes Martinez recommended vacating Defendant's Coercion and Enticement conviction. Judge Browning adopted Judge Martinez's proposed findings and recommended disposition. (Doc. 269). On June 30, 2016, Judge Browning vacated Defendant's Coercion and Enticement (Count 1) conviction, but left Defendant's conviction and sentence for Possession of Child Pornography (Count 2) intact. Despite concluding that the Plea Agreement was not rendered invalid based on the vacatur of the Coercion and Enticement conviction, Judge Browning afforded Defendant the option to (A) stand by his Plea Agreement as to the remaining conviction for Possession of Child Pornography (Count 2), or (B) withdraw his plea, understanding that if he chose to do so, the Government could reinstate the Possession of Child Pornography charges contained in the dismissed Superseding Indictment. *See* Memorandum Opinion and Order Adopting Magistrate Judge's Proposed Findings and Recommended Disposition (Doc. 269). On January 19, 2018, Judge Browning issued a Memorandum Opinion and Order (Doc. 321) clarifying that the United States may enforce the Rule 410 waiver contained in Defendant's Plea Agreement only if the United States reinstated just the single Possession of Child Pornography charge in Count 2 of the Information to which Defendant had pleaded guilty.

In the meantime, on September 22, 2017, Defendant was released from Bureau of Prisons (BOP) custody after nine years and began his term of lifetime supervision with four months of transitional assistance at Diersen Charities Residential Reentry Center in Albuquerque, New Mexico. Defendant completed his four-month term at Diersen on January 21, 2018 and began residing in the community, first at a motel, and later at a leased apartment. *See* Exhibit B to Def. Resp. to U.S. Mot. to Detain, Doc. 330-2. Defendant also secured employment with the National

3

Opinion Research Center where he has been working 28 hours a week since February 8, 2018. *See* Exhibit A to Def. Resp. to U.S. Mot. to Detain, Doc. 330-1.

On January 29, 2018, in accordance with Judge Browning's Memorandum Opinion and Order Adopting Magistrate Judge's Proposed Findings and Recommended Disposition (Doc. 269) which addressed Defendant's 18 U.S.C. § 2255 Motion, the parties filed a joint motion to set a hearing with the express purpose of allowing Defendant to formally withdraw his guilty plea to Count 2, Possession of Child Pornography. *See* Joint Motion for Hearing (Doc. 323). On March 14, 2018, the Court held a hearing on the parties' motion, and found that Defendant knowingly, voluntarily, and intelligently agreed to withdraw his plea of guilty to one count of Possession of Child Pornography as charged in Count 2 of the Information. The Court then accepted Defendant's plea withdrawal. On oral motion by the United States, and in accordance with Judge Browning's prior ruling on Defendant's § 2255 Motion, the Court reinstated Count 2 of the Superseding Indictment (Doc. 94), which is equivalent to Count 2 of the Information. The Court memorialized its rulings in an Order Reinstating Count 2 of the Superseding Indictment and Clarifying the Charges (Doc. 336). As a result, Defendant is currently charged with only one count of Possession of Child Pornography in violation of 18 U.S.C. § 2252(a)(4)(b).

On March 14, 2018 and continued onto March 15, 2018, the Court held a hearing addressing the United States' motion to detain Defendant pending trial. In preparation for the hearing the Court reviewed evidence already in the record relevant to a pretrial detention determination, including the transcript and evidence presented at the June 16, 2010 detention hearing before Judge Browning. The Court also heard testimony and statements from Federal Bureau of Investigations (FBI) Special Agent Victoria Vaughan, U.S. Probation and Pretrial Services Officers Erick Newton and John Lovato, and from Defendant Edward Christy. The

Court reviewed a number of reports and documents to include: a pretrial services report, a BOP Progress Report dated August 8, 2016, a Mental Health Treatment Termination Report from Counseling World dated September 26, 2017, a BOP Sex Offender Discharge Summary from Relevancy Inc. dated August 24, 2017, a Sex Offense Specific Evaluation authored by Dr. Bobby Sykes dated June 25, 2017, a Biopsychosocial Summary from the Evolution Group dated October 3, 2017, and a number of documents pertaining to an incident that occurred on July 6, 2017 including a written statement by Relevancy counselor Patrick Downing, two FBI Forms FD-302 reporting interviews conducted by FBI Agent Victoria Vaughan, and an email chain between BOP employees and staff at Diersen Charities. The Court also considered the parties' briefs and exhibits, and heard argument from both parties. On March 15, 2018, the Court issued an oral order to detain Defendant, to be followed by a written Memorandum Opinion and Order detailing the Court's reasoning for its decision.

## **DISCUSSION**

"In our society liberty is the norm, and detention prior to trial or without trial is the carefully limited exception." *U.S. v. Salerno*, 481 U.S. 739, 755 (1987). But a defendant may be detained pending trial if a "judicial officer finds that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community." 18 U.S.C. § 3142(e). The United States contends that Defendant should be detained because he poses a risk to the community and a risk of nonappearance. *See generally* Motion. In this case, the charge against Defendant does not give rise to a rebuttable presumption of detention, *see* § 3142(e)(3). Consequently, the United States bears the burden of demonstrating risk of flight by a preponderance of the evidence, and the burden of proving

dangerousness by clear-and-convincing evidence. *See United States v. Cisneros*, 328 F.3d 610, 616 (10th Cir. 2003).

The Bail Reform Act, 18 U.S.C. § 3142(g), sets forth the framework for evaluating whether pretrial detention is appropriate. It requires a judicial officer to consider four factors when making a pretrial detention determination: (1) the nature and circumstances of the offense charged; (2) the weight of the evidence; (3) the defendant's history and characteristics; and (4) the nature and seriousness of the danger to any person or the community that would be posed by the defendant's release. *See* 18 U.S.C. § 3142(g). Importantly, "[t]he concept of safety of the community under § 3142(e) is not limited to the danger of physical violence, but rather 'refers to the danger that the defendant might engage in criminal activity to the detriment of the community.'" *United States v. Boy*, 322 Fed. Appx. 598, 600 (10th Cir. 2009) (quoting *United States v. Cook*, 880 F.2d 1158, 1161 (10th Cir. 1989)). After considering the § 3142(g) factors, the Court finds by clear-and-convincing evidence that the Court cannot fashion conditions to mitigate Defendant's danger to the community.

**A. Nature and Circumstances of the Offense Charged**

The first factor, the nature and circumstances of the charged offense, favors detention. Defendant is charged with Possession of Child Pornography, contrary to 18 U.S.C. § 2252(a)(4)(b), an offense that involves minor victims, *see* 18 U.S.C. § 3142(g)(1), and is statutorily a crime of violence. *See* 18 U.S.C. § 3156(a)(4)(C) (defining "crime of violence" to cover any felony violation of Chapter 110 of Title 18, including 18 U.S.C. § 2252(a)(4)(B)).

In *United States v. Crisman*, Judge Browning noted that "Congress stressed that the mere 'existence of and traffic in child pornographic images creates the potential for many types of harm in the community and presents a clear and present danger to all children.'" No. CR 11-

2281-JB, 2011 WL 5822731*16 (D.N.M. Nov. 15, 2011) (quoting Child Pornography Prevention Act of 1996, Pub. L. No. 104-208, § 121, 110 Stat. at 3009-27). Indeed, the United States Supreme Court recently reaffirmed the "devastating harm caused by child pornography," noting that the demand for child pornography harms children in part because it drives production, which involves abuse to children, but also because "child pornography is a permanent record of the depicted child's abuse, and the harm to the child is exacerbated by [its] circulation." *Paroline v. United States, et al.*, 134 S. Ct. 1710, 1716-17 (2014) (internal quotation marks and citation omitted); *see also United States v. Rosenschein*, No. 16-CR-4571, 2017 WL 3600739 * 7 (D.N.M. Jan. 6, 2017) ("Even if the Court considers only the possession [of child pornography] charge, being a 'consumer' of child pornography involving prepubescent children encourages others to sexually abuse young children to create pornography."). As the Supreme Court pointed out, the internet has allowed for ease in trading of child pornography, causing "'the number of still images and videos memorializing the sexual assault and other sexual exploitation of children, many very young in age, [to] grow() exponentially.'" *Paroline*. 134 S.Ct. at 1717 (quoting United States Sentencing Comm'n, P. Saris et al., Federal Child Pornography Offenses 3 (2012)).

The evidence in this case indicates that the search of Defendant's home produced over 700 images of child pornography, more than 300 of which were located on the laptop computer cited in the sole charge against Defendant, and approximately ten child pornography videos. *See* Transcript, Doc. 33, 13:24-14:14. Moreover, some of the images found in Defendant's possession were from a series of images attributable to a specific individual victim. *See* Memorandum Opinion and Order, Doc. 221, at 1-2; Sentencing Transcript, Doc. 238, 40:16-25;

Plea Agreement, Doc. 195, at ¶ 7b. Defendant has admitted to the elements of the charged offense. *See* Plea Agreement (Doc. 195). [4]

## B. Weight of the Evidence Against the Defendant

The weight of the United States' evidence against Defendant, if admissible, is very strong. Its case against Defendant is supported by chat transcripts, evidence in the form of electronic devices owned by Defendant containing child pornography images and videos, and Defendant's own admissions under his Plea Agreement (Doc. 195) and in open court during Defendant's plea hearing. Moreover, the computer and computer-related media seized from Defendant's residence produced over 700 images of child pornography and approximately ten child pornography videos. *See* Transcript, Doc. 33, 13:24-14:14.

## C. Defendant's History and Characteristics

While the Court recognizes that Defendant had no criminal history prior to the incidents at issue here, has a college degree, recently obtained an apartment, is currently employed, and reports regular contact with at least one of his siblings, Defendant's past and recent behavior are cause for concern. In June of 2010, Judge Browning conducted a pretrial detention hearing and concluded, based on the evidence presented at that hearing that "[Defendant] is a person who has an ongoing sexual interest in children and is willing to act on such interest. The degree of harm and the length of time over which [Defendant] has engaged in such behaviors renders him a danger to the community." *See* Memorandum Opinion and Order, Case No. CR-10-1534-JB (D.N.M. June 28, 2010) (Doc 21 at 13). This Court agrees.

---

[4] Judge Browning issued a Memorandum Opinion and Order (Doc. 321) clarifying that if the United States reinstated the single Possession of Child Pornography charge in Count 2 of the Information to which Defendant had initially pleaded guilty, but for which the plea was later withdrawn, the United States could enforce Defendant's waiver of his rights under Federal Rule of Criminal Procedure 11(f) and Federal Rule of Evidence 410 allowing the United States to use the facts Defendant admitted in conjunction with his plea agreement against him in a subsequent proceeding. *See* Plea Agreement (Doc. 195) at 11.

The Court will not repeat all of the relevant evidence of great concern presented in that hearing before Judge Browning, which is available through the record transcripts of the hearing and admitted exhibits, and is discussed in detail by Judge Browning in his June 28, 2010 Memorandum Opinion and Order (Doc. 21). But the evidence reflects a significant chat history dating as far back as 2003 between Defendant and others, including some individuals who identify as minors, in which Defendant makes statements about his sexual interest in children. *See* Transcript, Doc. 33, 20:12- 29:24. Defendant expresses in one chat that were he to have a family of his own, "I'd want all of us to sleep in one bed with no barriers. Daddy's cock should be pacifying to his kids. They should feel safe and secure and loved sucking him fall asleep with his cock in their mouth." *See* Transcript, Doc. 33, 25:7-11. And in some of the chats presented to the Court, Defendant admitted to having engaged in sexual contact with minor children. *See* Transcript, Doc. 33, 25:21-26:9; 26:17-27:1. Referencing these chats in his Memorandum Opinion and Order, Judge Browning notes that Defendant suggested much of his chat involved fantasy, and while that may be a proper characterization for some statements, Defendant "has not denied that he has had sex with multiple under-aged children." (Doc. 21 at 14). This Court agrees with Judge Browning that these uncontested admissions demonstrate a significant threat to the community.

The Court recognizes that nearly eight years have passed since the June 2010 detention hearing held by Judge Browning, and that for most of the interim years Defendant has been in BOP custody. Defendant's recent behavior bolsters the Court's concerns that Defendant poses a significant continued threat to community safety. Defendant's treatment providers while he was in BOP custody note as recently as August 24, 2017 that Defendant has poor impulse control, that his prognosis for rehabilitation was poor, and that his current level of risk for violence and

re-offense is high. *See* BOP Sex Offender Discharge Summary. Dr. Bobby Sykes conducted a Sex Offense Specific Evaluation of Defendant and issued a report on June 25, 2017. In that report, Dr. Sykes also determined Defendant's prognosis to be "poor." *See* Sykes Report. Specifically, Dr. Sykes reported that his assessment revealed Defendant exhibited characteristics of grandiosity, lack of remorse, and his lack of empathy. *See id*. Defendant's responses on one assessment instrument "suggest that [Defendant] will give distorted views of himself to others in an attempt to be seen in a more positive light." *See id.* Dr. Sykes noted that "[Defendant] does not appear to have a moral compass: natural feelings that help determine ethical behavior," that Defendant has an "impaired ability to judge right from wrong," and that Defendant "is in total denial regarding the inappropriateness of his conduct." *See id*. Dr. Sykes concluded, "This client should be closely monitored as he has demonstrated inadequate internal controls."

Defendant's diminished capacity for impulse control and inability to assess appropriateness is perhaps best demonstrated by an incident that occurred on July 6, 2017 while Defendant was still in BOP custody at Diersen Charities, a Residential Reentry Center. At that time Defendant was mandated to abide by a condition in a Resident Behavior Contract signed by him that read in relevant part: "Shall not reside with any child under the age of 18 or have contact with any child under the age of 18 without prior approval of the Bureau of Prisons." Additionally, Defendant was required to attend sessions at Relevancy, Inc., a community treatment agency. According to a statement from Patrick Downing, a counselor at Relevancy, Inc., Mr. Downing was riding a city bus on his way to work at Relevancy, Inc. when a woman with two young girls boarded the bus, followed shortly thereafter by Defendant. *See* July 6, 2017 Written Statement of Patrick Downing, LMHC. Mr. Downing wrote that Defendant sat in the seat in front of the woman and the two girls. Defendant then turned around and initiated contact

by engaging and talking with the two children, though Defendant never touched the two girls. *Id.* In a series of emails between staff at Diersen Charities and the BOP, the initial recommendation from the Residential Reentry Specialist was to keep Defendant "in jail" until his release date. However, after further investigation, on July 10, 2017, the BOP, without further action, merely advised Defendant to stop talking to minors. *See* July 6, 2017-July 10, 2017 Email Communications. FBI Special Agent Victoria Vaughan conducted an interview with Shane Johnson, Supervising U.S. Probation Officer, and Diersen Director Cynthia Jacobsen-Wolfe, and testified regarding those interviews at the March 14, 2018 hearing. The Court acknowledges that the July 2017 bus incident is the only disciplinary report filed against Defendant during Defendant's time at Diersen. *See* FBI Forms FD-302. However, the Resident Behavior Contract that Defendant signed clearly and specifically prohibited Defendant from having contact with any child under the age of 18. And at the March 2018 detention hearing, Defendant recounted a version of events that differed remarkably from the written account provided by Mr. Downing. Despite a clear mandate that Defendant have no contact with minor children, Defendant indicated that he engaged with the two young girls to avoid being rude or discourteous. This is extremely concerning to the Court. Defendant's calculated attempt to justify his actions merely affirms statements by treatment providers. The concerns expressed by United States Probation and Pretrial Services Officers at the March 15, 2018 hearing regarding the level of threat Defendant poses to the community, and their recommendation that Defendant be detained, also bear heavy on the Court.

Defendant's history and characteristics therefore weigh in favor of detention. His personal history demonstrates clearly and convincingly that he is sexually attracted to minor children, in particular young females. Defendant admits to acting on some of these attractions,

and he has poor impulse control to refrain from acting on his sexual interests and fantasies, as further detailed below.

### D. Nature and Seriousness of Danger to Any Person or the Community if Defendant is Released

The fourth and final factor also weighs in favor of detention. The Court believes that the United States has shown by clear-and-convincing evidence that the potential danger Defendant Edward Christy poses to the community is great if he is released. As noted above, the Supreme Court has characterized child pornography as causing "devastating harm." *Paroline*, 134 S. Ct. at 1717. By Defendant's own admission during the hearing, communications even without physical contact can cause harm to minor children, and Defendant has a demonstrated history of using the internet and internet chats to entice children and engage in harmful sexually explicit communication with some minors. Defendant is a resourceful, intelligent man with an engineering background. It would be nearly impossible to ensure that he will never have access to electronic devices with which he could continue to obtain child pornography and/or continue to engage in internet chats with minors for the purpose of sharing his sexual interest in children or to groom minors for the purpose of acting on these sexual interests. The risk that Defendant will possess child pornography and engage in harmful internet chats is extremely high.

There is also a very real danger that Defendant will attempt to act on his sexual interests and fantasies with a minor. Evidence in the record suggests that Defendant is an educated and intelligent man who understands how to groom children to gain their trust. The events that eventually gave rise to the current charge against Defendant demonstrate this. Defendant admitted that he met sixteen-year-old Jane Doe on the internet and started to build a rapport with her, stating that Jane Doe expressed having a difficult time at home. *See* Transcript, Doc. 33, 9:6-12. Despite knowing her age, Defendant engaged in sexual conversations with her and they

exchanged nude images. *See* Plea Agreement, Doc. 195, ¶ 10. Defendant travelled from his home in Albuquerque, New Mexico to California to retrieve Jane Doe and bring her back to New Mexico without her parents' permission or knowledge. *See id*. Defendant admitted to law enforcement officials that he had sexual intercourse with Jane Doe at a motel on the way to New Mexico and again at his home in Albuquerque. *See id.*, *see also* Transcript, Doc. 33, 10:2-19. During a missing persons investigation, law enforcement officials were able to link Jane Doe to Defendant and ultimately found her at Defendant's residence in Albuquerque. *See* Transcript, Doc. 33 at 6:15-7:5. Law enforcement officials also found sex toys and used condoms containing DNA from both Jane Doe and Defendant as well as computers and computer-related media containing child pornography. *See* Plea Agreement, Doc. 195 at ¶ 10; Transcript, Doc. 33, 13:5-14:22. Officials also located a list of detailed instructions that Defendant sent to Jane Doe to avoid detection, which included blocking a telephone number, cancelling her "agematch.com" account, removing her hard drive from her computer, and creating a cover story. *See* Transcript, Doc. 33, 16:10-17:21.

Although Jane Doe was above the age of consent in New Mexico, and thus some of Defendant's actions were ultimately deemed noncriminal in that state,[5] she was below the age of consent in California. Nevertheless, Defendant's actions with regards to Jane Doe demonstrate his grooming behaviors, his ability to prey on the vulnerabilities of young females, and his propensity to act on his sexual impulses. The fact that Defendant drove to California to retrieve this young woman and carefully planned his actions to avoid being caught, are relevant to the Court's determination of dangerousness. *See United States v. Rosenschein*, Case No. 16-cr-4571, 2017 WL3600739 *9 (D. N.M. Jan. 6, 2017) (considering as relevant to a pretrial detention

---

[5] In fact the Court later vacated the Coercion and Enticement conviction related to this incident following Defendant's § 2255 Motion and based on a change in New Mexico law.

determination the defendant's actions with regards to a sixteen year old boy above the age of consent in New Mexico, but below the age of consent in California). Indeed, in June of 2010, Detective Proctor testified that "it's apparent in talking with [Defendant] and going through, basically, all of these chats that he is a bright, articulate, manipulative and, I think most frighteningly, a calculated person." *See* Transcript, Doc. 33, 34:2-6. Recent reports from the BOP, Dr. Sykes, and U.S. Probation and Pretrial Services suggest that Defendant still exhibits these same concerning characteristics, with inadequate internal controls, and an overall poor prognosis for rehabilitation. During Defendant's testimony, the Court witnessed Defendant's articulate ability to reconstruct, in a light more favorable to him, the bus incident when he initiated contact with the two young girls despite a clear mandate that he have no contact at all with children under 18 years of age. Accordingly, the nature and seriousness of the danger Defendant poses to another person or the community weigh heavily in favor of detention.

## CONCLUSION

The Court finds by clear and convincing evidence that all four of the factors listed in 18 U.S.C. § 3142(g) support the detention of Defendant. The Court also finds that no conditions of release, including those suggested by Defendant, would reasonably assure the safety of another person or the community. The Court concludes that Defendant must be detained pending his trial.

IT IS THEREFORE ORDERED that Defendant Edward Christy will be detained during the pendency of his trial.

_____
SENIOR UNITED STATES DISTRICT JUDGE